UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————x
                                                    :
IN RE MUSHROOM DIRECT                      :      Master File No. 06-0620
PURCHASER ANTITRUST LITIGATION  :
                                                    :
THIS DOCUMENT RELATES TO:            :      Nos.   06-0638; 06-0657;
                                                    :                 06-0677; 06-0861;
All Actions.                                       :                 06-0932; 06-1464;
                                                    :                 06-1854
                                                    :
———————————————————————
                                                    :
WM. ROSENSTEIN & SONS CO.             :      COMPLAINT – CLASS ACTION
950 North Keyser Avenue                       :
Scranton, PA 18504-9774,                       :
                                                    :
DIVERSIFIED FOODS & SEASONINGS,  :
INC.                                                  :
109 Hwy. 1085                                     :
Madisonville, LA 70447,                         :
                                                    :
ROBERT ALTMAN, AS TRUSTEE            :
FOR THE BANKRUPTCY ESTATE OF     :
STEPHEN LEE MCCUE D/B/A JOHN       :
MANNING CO.                                      :
P.O. Box, 922                                       :
Palatka, Fla. 32178-0922                         :
                                                    :
MEIJER, INC. and                                 :
MEIJER DISTRIBUTION, INC.               :
2929 Walker Ave., N.W.                          :
Grand Rapids, MI 4955                           :
                                                    :
M.L. ROBERT, II, L.L.C.                         :
5016 West Esplanade                              :
Metairie, LA 70066                                :
                                                    :
M. ROBERT ENTERPRISES, INC.          :
5016 West Esplanade                              :
Metairie, LA 70066                                :
                                                    :

MARKET FAIR, INC.                         :
1215 Burgandy St.                         :
New Orleans, LA  70116,                   :
                                          :
ALL AMERICAN MUSHROOM, INC.               :
711 Potter Drive                          :
Kennett Square, PA 19348                  :
                                          :
ASSOCIATED GROCERS, INC.                  :
8600 Anselmo Lane                         :
Baton Rouge, LA  70826-1748               :
                                          :
                Plaintiffs,               :
                                          :
        v.                                :
                                          :
EASTERN MUSHROOM MARKETING                :
COOPERATIVE, INC.                         :
649 West South St.                        :
Kennett Square, PA  19348                 :
                                          :
ROBERT A. FERANTO, JR t/a                 :
BELLA MUSHROOM FARMS                      :
330 Landenberg Rd                         :
Landenberg, PA 19350                      :
                                          :
BROWNSTONE MUSHROOM FARMS,                :
INC.                                      :
974 Penn Green Road                       :
Avondale, PA 17340                        :
                                          :
TO-JO FRESH MUSHROOMS, INC.               :
974 Penn Green Rd.                        :
Avondale, PA 19311                        :
                                          :
CARDILE MUSHROOMS, INC.                   :
540 Church Rd.                            :
Avondale, PA  19311                       :
                                          :
CARDILE BROS. MUSHROOMS                   :
PACKAGING                                 :
8790 Gap Newport Rd.                      :
Avondale, PA  19311                       :
                                          :

COUNTRY FRESH MUSHROOM CO.          :
Highway 41 S                        :
Avondale, PA 19311                  :
                                    :
FOREST MUSHROOM INC.                :
14715 County Road 51                :
Saint Joseph, MN 56374              :
                                    :
FRANKLIN FARMS, INC.                :
931 Rte. 32                         :
North Franklin, CT  06254           :
                                    :
GINO GASPARI & SONS, INC.           :
GASPARI BROS. INC.                  :
2103 Georgia Rd.                    :
Temple, PA  19560                   :
                                    :
GIORGI MUSHROOM COMPANY             :
GIORGIO FOODS, INC.                 :
1813 Hilltop Rd.                    :
Temple, PA  19560                   :
                                    :
KAOLIN MUSHROOM FARMS, INC.         :
649 West South St.                  :
Kennett Square, PA  19348           :
                                    :
SOUTH MILL MUSHROOM SALES, INC. :
649 West South St.                  :
Kennett Square, PA  19348           :
                                    :
LRP MUSHROOMS INC                   :
LRP-M MUSHROOMS LLC                 :
LEONE PIZZINI AND SON, INC.         :
740 Penn Green Rd                   :
PO Box 366                          :
Landenberg, PA 19350                :
                                    :
MODERN MUSHROOM FARMS, INC.         :
1330 Newark Rd.                     :
Toughkenamon, PA  19374             :
                                    :
SHER-ROCKEE MUSHROOM FARM           :
170 SherRockee Ln.                  :
Lincoln University, PA  19352       :

C & C CARRIAGE MUSHROOM CO.　　　:
1340 Newark Rd.　　　　　　　　　　　:
Toughkenamon, PA  19374　　　　　　　:
　　　　　　　　　　　　　　　　　　:
OAKSHIRE MUSHROOM FARM, INC.　　　:
295 Thompson Rd.　　　　　　　　　　　:
Kennett Square, PA  19348　　　　　　　:
　　　　　　　　　　　　　　　　　　:
PHILLIPS MUSHROOM FARMS, INC.　　　:
124 Old Kennett Rd.　　　　　　　　　　:
Kennett Square, PA  19348　　　　　　　:
　　　　　　　　　　　　　　　　　　:
HARVEST FRESH FARMS, INC.　　　　　:
865 Shoemakersville Rd　　　　　　　　　:
PO Box 297　　　　　　　　　　　　　　:
Shoemakersville, PA 19555　　　　　　　:
　　　　　　　　　　　　　　　　　　:
LOUIS M. MARSON, JR., INC.　　　　　　:
459 Greenwood Rd　　　　　　　　　　　:
Kennett Square, PA 19348　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
MARIO CUTONE MUSHROOM CO.,　　　:
INC.　　　　　　　　　　　　　　　　:
Rts 1 & 41　　　　　　　　　　　　　　:
Avondale, PA 19311　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
M.D. BASCIANI & SONS, INC.　　　　　　:
8874 Gap Newport Pike　　　　　　　　　:
Avondale, PA 19311　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
MONTEREY MUSHROOMS, INC.　　　　:
260 Westgate Dr.　　　　　　　　　　　:
Watsonville, CA  95076　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
MASHA & TOTO, INC. t/a　　　　　　　　:
M & T MUSHROOMS　　　　　　　　　:
519 Hillendale Rd　　　　　　　　　　　:
Avondale, PA 19311　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
W & P MUSHROOM INC.　　　　　　　　:
4300 Barnsley Chrome Rd　　　　　　　　:
Oxford, PA 19363　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:

4

MUSHROOM ALLIANCE, INC.                :
c/o CT Corporation System              :
520 Pike St.                           :
Seattle, WA                            :
                                       :
QUINCY FARMS                           :
190 Mannie Gunn Rd                     :
Quincy, FL 32351                       :
                                       :
CREEKSIDE MUSHROOMS LTD.               :
One Moonlight Dr.                      :
Worthington, PA  16262-9730            :
                                       :
KITCHEN PRIDE MUSHROOMS                :
County Rd 348                          :
Gonzales, TX 78629                     :
                                       :
JM FARMS, INC.                         :
7001 S. 580 Road                       :
Miami, OK 74354                        :
                                       :
UNITED MUSHROOM FARMS                  :
COOPERATIVE, INC.                      :
101 New Garden Rd                      :
Avondale, PA 19311                     :
                                       :
JOHN PIA                               :
649 West South St.                     :
Kennett Square, PA  19348              :
                                       :
MICHAEL PIA                            :
649 West South St.                     :
Kennett Square, PA  19348              :
                                       :
And JOHN DOES 1-100,                   :
                                       :
        Defendants.                    :
_____x


## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs bring this class action on behalf of themselves and all others similarly situated and aver as follows, based on the investigation of Plaintiffs' counsel, which included, *inter alia*, a review of the December 2004 antitrust complaint filed by the United States Department of Justice, the Department of Justice's Competitive Impact Statement, and the Final Judgment regarding the Justice Department's allegations, to which the Eastern Mushroom Marketing Cooperative, Inc. (the "EMMC") consented.

## I.    NATURE OF THE ACTION

1.      Plaintiffs, direct purchasers of mushrooms, bring this antitrust class action complaint to recover damages for themselves and other members of the Class defined below, all of whom were caused to pay artificially inflated prices for the mushrooms that they purchased during the Class Period due to the illegal scheme and conspiracy by the EMMC and its members.

2.      As alleged below, each year American consumers spend over $800 million on mushrooms, the vast majority of which are fresh Agaricus mushrooms, the common table variety. During the Class Period, the EMMC members controlled over 60 percent of all Agaricus mushrooms grown in the United States and approximately 90 percent of all Agaricus mushrooms grown in the eastern United States.

3.      Starting in January 2001, the EMMC and its members undertook a wide-ranging scheme to inflate the average prices for Agaricus mushrooms by at least 8 percent around the country. As part of this overarching scheme, in May 2001, the EMMC and its members began to collectively conduct a "Supply Control" campaign to impede and forestall competition from independent, non-EMMC farmers, thereby eliminating the restraints on inflated prices that result from unfettered competition. The EMMC and its members implemented their scheme through a

number of different acts, including the elimination of a significant amount of the supply from competing mushroom growers. Starting in May 2001, the EMMC, acting as an agent of its members, bought four mushroom farms with an annual combined growing capacity of approximately 29 million pounds. The EMMC, acting as an agent of its members, then resold the four properties at a combined total loss of over $1.2 million and placed permanent deed restrictions on the properties at the time of each resale. The deed restrictions all prohibited the conduct of any business related to the growing of mushrooms. For example, one deed restriction read:

> This property shall never be used for the cultivation, growing, marketing, sale or distribution of fresh mushrooms, canned and/or processed mushrooms or related endeavors.

4.      Similarly, in February and August 2002, the EMMC, acting as an agent of its members, purchased lease options, at a cost of over $1 million, on two additional mushroom farms with a combined annual growing capacity of approximately 14 million pounds. The lease options allowed the EMMC to file deed restrictions on the two properties prohibiting the use of the properties for any business related to growing mushrooms for a period of 10 years. The EMMC never entered into leases on these farms, but did file the deed restrictions. No mushrooms have been grown on the properties that the EMMC bought and leased since the deed restrictions were imposed by the EMMC. The EMMC and its members also bought one or more mushroom farms in Texas to remove the mushroom supply from those farms.

5.      By imposing deed restrictions on the properties described above, the EMMC and its members were able to substantially reduce the amount of land that was available in the United States for mushroom production. Indeed, the EMMC touted the success of the Supply Control

campaign to its membership, claiming that it had "[a]nnually taken over 50 million pounds out of production from facilities which could have easily been purchased and remained in production." By reducing the amount of the land and facilities that were available to produce mushrooms in the United States, the EMMC and its members were able to maintain artificial price increases for mushrooms of at least 8%.

6.      In addition to the property transactions and deed restrictions to restrain mushroom supply, the EMMC members supported and reinforced their scheme by: (a) collectively interfering with any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by the EMMC; and (b) using collective and conspiratorial acts to pressure independent growers to join the EMMC and Defendants' anticompetitive scheme.

7.      The agreement among the EMMC members to restrict, forestall, and exclude competition from nonmember farmers was an illegal restraint of trade that violated Sections 1 and 2 of the Sherman Act as well as Section 7 of the Clayton Act.  The purpose and effect of the scheme by the EMMC and its members was to: (a) artificially reduce the supply of fresh mushrooms for American consumers, and (b) maintain artificially-inflated mushroom prices. The anticompetitive effects from the scheme by the EMMC members (in terms of reduced mushroom supply and artificially-inflated mushroom prices) continue to date.

## II.      <u>JURISDICTION AND VENUE</u>

8.      Plaintiffs bring this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, to recover treble damages, equitable relief, costs of suit and reasonable attorneys' fees for the Defendants' violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 and Section 7 of the Clayton Act, 15 U.S.C. § 18.  Subject matter jurisdiction is

proper pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. §§ 1331, 1337 and 1345.

9.       The Defendants are an agricultural cooperative and its members, who are engaged in the production and sale of fresh market mushrooms in interstate commerce.  The EMMC members' activities in the production and sale of mushrooms substantially affect interstate commerce.  The EMMC members grow and sell mushrooms in both the Eastern and Western parts of the United States and ship mushroom between states.

10.      Venue is proper in this judicial district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b) and (c) because during the Class Period many of the Defendants resided, transacted business, were found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

## III.    THE PARTIES

11.      Plaintiff Wm. Rosenstein & Sons Co. is located at 950 N Keyser Avenue, in Scranton, Pennsylvania.  During the Class Period defined below, Wm. Rosenstein & Sons Co. purchased Agaricus mushrooms directly from one or more Defendants during the Class period defined below.

12.      Plaintiff Diversified Foods & Seasonings, Inc. is located at 109 Hwy. 1085, in Madisonville, Louisiana.  During the Class Period defined below, Diversified Foods & Seasonings, Inc. purchased Agaricus mushrooms directly from one or more Defendants during the Class Period defined below.

13.    Plaintiff Robert Altman, P.O. Box, 922, Palatka, Fla. 32178-0922, brings this action as trustee for the bankruptcy estate of Stephen Lee McCue d/b/a/ John Manning Co. Stephen Lee McCue was an officer and director of John Manning Co. ("Manning"). Manning was a dealer and commission merchant engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities in interstate commerce. Included among the commodities that were bought and sold by Manning were mushrooms. Manning directly purchased mushrooms from many different sources including from Cardile Bros. Mushrooms Packaging ("Cardile") and Monterey Mushrooms, Inc. ("Monterey"). Both Cardile and Monterey are and have been members of the EMMC. Manning specifically purchased mushrooms from Cardile during the Class Period. On November 4, 2003, McCue d/b/a Manning filed for Chapter 7 bankruptcy protection. Mr. Altman was appointed as the Chapter 7 trustee for the bankruptcy estate of McCue, including his equity and interest in Manning.

14.    Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. (collectively "Meijer") are corporations organized under the laws of the State of Michigan, with their principal places of business at 2929 Walker Avenue, N.W., Grand Rapids, Michigan 49544. Meijer purchased Agaricus mushrooms directly from one or more Defendants during the Class Period defined below.

15.    Plaintiffs M.L. Robert, II, L.L.C., 5016 West Esplanade, Metairie, LA 70066, M. Robert Enterprises, Inc., 5016 West Esplanade, Metairie, LA 70066, and Market Fair, Inc., 1215 Burgandy St., New Orleans, LA 70116 (the "Robert Plaintiffs"), have received an assignment of claims related to the mushrooms that they purchased from Associated Grocers, Inc., which purchased Agaricus mushrooms directly from one or more Defendants during the Class Period

defined below.  As a result of the assignments, the Robert Plaintiffs are suing as direct purchasers.

16.     Plaintiff All American Mushroom, Inc., 711 Potter Drive, Kennett Square, PA, is a Pennsylvania corporation.  During the Class Period, as defined below, All American Mushroom, Inc. purchased Agaricus mushrooms directly from one or more Defendants during the Class Period defined below.

17.     Associated Grocers, Inc., 8600 Anselmo Lane, Baton Rouge, LA  70826-1748, purchased Agaricus mushrooms directly from on or more Defendants during the Class Period defined below.

18.     Defendant Eastern Mushroom Marketing Cooperative (the "EMMC") began operations in January 2001, and is the largest mushroom cooperative in the United States.  The EMMC is incorporated in the Commonwealth of Pennsylvania and is headquartered in Kennett Square, Pennsylvania.  The EMMC is made up of entities that grow, buy, package, and ship mushrooms to retail and food service outlets across the United States.  During the 2001-2002 growing season, the EMMC had approximately 19 members with control of more than 500 million pounds of mushrooms which are valued in excess of $425 million.  On information and belief based on the reasonable investigation of their counsel, Plaintiffs have identified the members of the EMMC described below.  During the Class Period, the EMMC members controlled over 60 percent of all Agaricus mushrooms grown in the United States and approximately 90 percent of all Agaricus mushrooms grown in the eastern United States.  The EMMC sets the minimum prices at which its members sell their mushrooms to customers in various geographic regions throughout the United States and publishes those prices regularly.

19.      Defendant Robert A. Ferranto, Jr. is an individual trading as Bella Mushroom Farms ("Bella Mushroom").  The principal office of Bella Mushroom is located in Landenberg, Pennsylvania.  Bella Mushroom was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

20.      Defendant Brownstone Mushroom Farms ("Brownstone") has its principal office in Avondale, Pennsylvania.  Brownstone was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

21.      Defendant To-Jo Mushrooms, Inc. ("To-Jo") is related to and controlled by Brownstone.  To-Jo distributes mushrooms grown by Brownstone.  Upon information and belief, To-Jo participated in the improper conduct alleged herein.

22.      Defendant Cardile Mushrooms, Inc. is a mushroom grower with its principal offices in Avondale, Pennsylvania.  Defendant Cardile Brothers Mushroom Packaging, Inc. is a packager, seller and distributor of mushrooms with its principal offices in Avondale, Pennsylvania.  Both Cardile Mushrooms, Inc. and Cardile Brothers Mushroom Packaging, Inc. (collectively "Cardile") are owned and operated by Michael P. Cardile Sr. and Charles Cardile. Cardile was an EMMC member during the Class Period and during the time that the EMMC was implementing the Supply Control campaign.  It participated in the improper conduct alleged herein.

23.      Defendant Country Fresh Mushroom Co. ("Country Fresh") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal office is located in Avondale, Pennsylvania.  Country Fresh was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

24.     Defendant Forest Mushroom Inc. ("Forest") is a corporation whose principal office is located in Saint Joseph, Minnesota.  Forest was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

25.     Defendant Franklin Farms, Inc. ("Franklin") is a mushroom grower with its principal offices in North Franklin, Connecticut.  Franklin is the nation's largest grower and harvester of certified organic mushrooms, and one of the largest agricultural businesses in New England.  Franklin was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

26.     Defendants Gino Gaspari & Sons, Inc. and Gaspari Bros. Inc. are located in Temple, Pennsylvania.  One or both of them were EMMC members during the Class Period and during the time that the EMMC was implementing the Supply Control campaign.  On information and belief, both of them participated in the improper conduct alleged herein.

27.     Defendants Giorgi Mushroom Company and Giorgio Foods, Inc. are located in Temple, Pennsylvania.  One or both of them was an EMMC member during the Class Period and during the time that the EMMC was implementing the Supply Control campaign.  On information and belief, both of them participated in the improper conduct alleged herein.

28.     Defendant Kaolin Mushroom Farms, Inc. ("Kaolin") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal office is located in Kennett Square, Pennsylvania.  Kaolin -- which was an EMMC member during the Class Period -- operates one of the largest mushroom farms in Pennsylvania and transacts business in this district.  During the Class Period, Kaolin sold mushrooms to retail, wholesale,

food service and commercial processors, under the South Mill label.  Kaolin participated in the improper conduct alleged herein.

29.     Defendant South Mill Mushroom Sales, Inc. is located in Kennett Square, Pennsylvania, and is related through common ownership to Kaolin.  On information and belief, it participated with Kaolin in the improper conduct alleged herein.

30.     Defendants LRP Mushrooms Inc., LRP-M Mushrooms LLC, and Leone Pizzini and Son, Inc. are all related through common ownership.  Some or all of them were members of the EMMC during the time that the EMMC was implementing the Supply control campaign.  On information and belief, all of them participated in the improper conduct alleged herein.

31.     Defendant Modern Mushroom Farms, Inc. ("Modern") is a mushroom grower with its principal offices in Toughkenamon, Pennsylvania.  Modern was an EMMC member during the Class Period and participated in the improper conduct alleged herein.  Modern grows and sells Agaricus mushrooms under the Modern Mushroom Farms label.

32.     Defendant Sher-Rockee Mushroom Farm is located in Lincoln University, Pennsylvania, and is related through common ownership to Modern.  On information and belief, it participated with Modern in the improper conduct alleged herein.

33.     Defendant C & C Carriage Mushroom Co. is located in Toughkenamon, Pennsylvania, and is related through common ownership to Modern. On information and belief, it participated with Modern in the improper conduct alleged herein.

34.     Defendant Oakshire Mushroom Farm, Inc. is located in Kennett Square, Pennsylvania, and was an EMMC member during the Class Period and during the time that the

EMMC was implementing the Supply Control campaign.  Oakshire participated in the improper conduct alleged herein.

35.     Defendant Phillips Mushroom Farms, LP. ("Phillips") is a mushroom grower with its principal offices located in Kennett Square, Pennsylvania.   As of December 2002, Phillips was the largest supplier of specialty mushrooms in the United States, selling 35 million pounds of mushrooms annually.  Phillips distributed mushrooms throughout the eastern United States. Phillips was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

36.     Defendant Harvest Fresh Farms, Inc. ("Harvest Fresh") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal place of business is located in Shoemakersville, Pennsylvania.  Harvest Fresh was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

37.     Defendant Louis M. Marson, Jr., Inc. ("Marson") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal place of business is located in Kennett Square, Pennsylvania.  Marson was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

38.     Defendant Mario Cutone Mushroom Co., Inc. ("Mario Cutone") is a corporation with a place of business in Avondale, Pennsylvania.  Mario Cutone was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

39.     Defendant M.D. Basciani & Sons, Inc. ("Basciani") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal place of

business is located in Avondale, Pennsylvania. Basciani was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

40.     Defendant Monterey Mushrooms, Inc. ("Monterey") has its principal offices in Watsonville, California and was an EMMC member during the Class Period and during the time that the EMMC was implementing the Supply Control campaign. Monterey is a national grower and shipper of mushrooms with a full line of fresh domestic and specialty mushrooms which it sells to supermarkets, foodservice and ingredient manufacture operations, and for preparation of processed, canned, and frozen mushroom products. Monterey is the largest grower/shipper and marketer of fresh mushrooms in the United States, with farms in Florida, Illinois, California, Texas, Tennessee, and Pennsylvania. In addition, Monterey also sells processed mushrooms that are canned, frozen and glass-jarred, which it processes at facilities and plants in Missouri, California, Pennsylvania, Indiana and Texas. Monterey participated in the improper conduct alleged herein.

41.     Defendant Masha & Toto, Inc. is a corporation trading as M & T Mushrooms ("M & T"). Its principal place of business is located in Avondale, Pennsylvania. M & T was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

42.     Defendant W & P Mushroom, Inc. ("W & P") is a corporation with its principal place of business in Oxford, Pennsylvania. W & P was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

43.     Defendant Mushroom Alliance, Inc. is an agricultural cooperative incorporated in Washington. Its designated registered agent is CT Corporation System, 520 Pike St., Seattle,

WA 98101. The Mushroom Alliance was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

44.     Defendant Quincy Farms ("Quincy") is a member of the Mushroom Alliance. Its principal place of business is in Quincy, Florida. Upon information and belief, it participated through the Mushroom Alliance in the improper conduct alleged herein.

45.     Defendant Creekside Mushrooms Ltd. is a member of the Mushroom Alliance. Its principal place of business is in Worthington, Pennsylvania. Upon information and belief, it participated through the Mushroom Alliance in the improper conduct alleged herein.

46.     Defendant Kitchen Pride Mushrooms ("Kitchen Pride") was an EMMC member during the Class Period and is a member of the Mushroom Alliance. Its principal place of business is in Gonzales, Texas. Kitchen Pride was an EMMC member during the Class Period and participated in the improper conduct alleged herein. Upon information and belief, it also participated through the Mushroom Alliance in the improper conduct.

47.     Defendant JM Farms is a member of the Mushroom Alliance. Its principal place of business is in Miami, Oklahoma. Upon information and belief, it participated through the Mushroom Alliance in the improper conduct alleged herein.

48.     Defendant United Mushroom Farms Cooperative, Inc. ("United Mushroom") is a Pennsylvania agricultural cooperative with its principal place of business in Avondale, Pennsylvania. United Mushroom was an EMMC member during the Class Period, and with its members, participated in the improper conduct herein.

49.     Defendant John Pia was one of the founders and president of the EMMC, and is the Chief Executive Officer of defendant Kaolin, which is one of the EMMC's members.

50.      Defendant Michael Pia was an officer of EMMC, and is the President of defendant Kaolin.

51.      Defendants JOHN DOES 1-100 are unidentified individuals and/or entities that were members of the EMMC and/or co-conspirators of the Defendants during the Class Period.

52.      Upon information and belief, each of the EMMC members identified herein actively participated in the unlawful conduct alleged herein.

## IV.    CLASS ACTION ALLEGATIONS

53.      Plaintiffs bring this action as a class action pursuant to the Federal Rules of Civil Procedure 23(a) and (b)(3), on their own behalf and as representative of the following class of persons and entities ("the Class"):

> All persons and entities who purchased Agaricus mushrooms directly from an EMMC member or one of its co-conspirators or its owned or controlled affiliates, agents, or subsidiaries at any time during the period January 1, 2001 through the present (the "Class Period"). The Class excludes the EMMC, its members and their parents, subsidiaries and affiliates.

54.      Joinder of all Class members is impracticable. While the size of the Class is not yet known with certainty, based on the nature of the trade and commerce involved, Plaintiffs reasonably believe that the Class numbers potentially in the hundreds, if not thousands. Class members are geographically dispersed throughout the United States.

55.      Questions of law and fact are common to the Class, including but not limited to:

a.   whether the Defendants and others engaged in agreements, contracts, combinations, and conspiracies, which had the purpose and/or effect of unreasonably restraining competition and limiting purchaser access to Agaricus mushrooms during the Class Period;

b.   whether the Defendants possess monopoly power or whether they have a dangerous possibility of acquiring monopoly power;

c. whether Defendants' unreasonably anticompetitive contracts, combinations, and conspiracies have caused Plaintiffs and the other members of the Class to suffer antitrust injury in the nature of overcharges;

d. whether Defendants' unlawful conduct caused Plaintiffs and other Class members to pay more for Agaricus mushrooms than they otherwise would have paid; and

e. the appropriate Class-wide measure of damages.

56.    Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the other Class members are direct purchasers of the Agaricus mushrooms during the Class Period and were overcharged and thus injured by the same wrongful conduct of Defendants. Defendants' violation of the antitrust laws, the effects of such violations, and the relief sought are all issues or questions that are common to Plaintiffs and the other Class members.

57.    Plaintiffs will fairly and adequately represent the interests of all Class members. Their interests are coincident with, and not antagonistic to, the interests of the other Class members, and they have engaged counsel experienced and competent in antitrust and class litigation.

58.    The questions of law and fact that are common to the members of the Class predominate over any questions affecting only individual Class members. Whatever possible difficulties may exist in the management of the class action are greatly outweighed by the advantages of the class action procedure. Those advantages include, but are not limited to, providing Class members with a method for redress of claims that might otherwise not warrant individual litigation.

59.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of

similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. A class action enables injured persons or entities to obtain redress on claims that might not be practicable to pursue individually. Class treatment also eliminates the potential for inconsistent adjudications.

## V.   TRADE AND COMMERCE

60.     In 2002, domestic sales of all mushrooms were over $800 million, with the vast majority being the common table mushroom, called the Agaricus or "white button" mushroom (agaricus bisporus). According to the United States Department of Agriculture ("USDA"), in 1995, the Agaricus mushroom accounted for 99% of all mushrooms grown in the U.S. Agaricus mushrooms are sold to fresh market retailers such as grocery store chains and food distributors, and also to canneries. The Agaricus mushrooms grown by EMMC members were sold to both the fresh market retailers and canneries in various states, and the EMMC members shipped mushrooms between states.

61.     The relevant antitrust product market for this action is fresh Agaricus mushrooms. The relevant geographic market for this antitrust action is the United States, or alternatively, the eastern United States.

## VI.   DEFENDANTS' ANTICOMPETITIVE SCHEME

62.     In January 2001, shortly after its formation, the EMMC and its members agreed to set increased minimum prices at which they would sell fresh mushrooms in six different geographic regions, covering the entire continental United States. The minimum prices that they agreed to were higher, on average, than the prices prevailing in those regions prior to the EMMC's formation. The price increases averaged at least 8% nationwide.

63.     In order to support and maintain the artificial price increases, the Defendants eliminated competing mushroom supply, which could otherwise force down the artificially-increased prices.  Within three months of instituting the price increases, the Defendants launched a campaign to control the mushroom supply by acquiring and subsequently dismantling non-EMMC mushroom growing operations.  These actions did not serve, or intend to serve, any legitimate or lawful purpose.

64.     Mushrooms are grown on farms, usually in one-story windowless cinder block buildings called "doubles."  Doubles are kept cool and dark at an optimum ground temperature of 64 degrees year round.  Mushrooms are grown in stacks of beds, usually six beds to a stack and 24 beds to a double.  Once harvested, mushrooms are usually kept in refrigerated storage on the farms until packaged and shipped in refrigerated trucks to customers.

65.     Depending on the size and location, building a new mushroom growing and production facility costs millions of dollars and generally requires zoning approval.  Building a new facility takes much longer to generate any revenue than purchasing or leasing an existing growing operation.  By eliminating the existing available productive capacity, the Defendants substantially reduced and impeded the existence of current competition and substantially forestalled and delayed the entry of new competitors and/or the expansion of existing competitors.

66.     Through membership dues and a "Supply Control Assessment" the EMMC collected approximately $6 million from its members during 2001-2002.  EMMC, acting as an agent of its members, then spent approximately $3 million to purchase four mushroom farms and to acquire lease options on two additional mushroom farms in the eastern United States for the

purpose of shutting them down and reducing the mushroom production capacity available for nonmembers to grow mushrooms in competition with the Defendants.

67.     In May 2001, the EMMC purchased a farm in Dublin, Georgia at a bankruptcy auction. The Dublin farm had an annual mushroom production capacity of approximately eight million pounds. At the auction, the EMMC outbid a non-EMMC mushroom grower based in Colorado that was attempting to enter mushroom farming in the eastern United States in competition with EMMC. Three months later, the EMMC entered into a land exchange with a land developer not connected to the mushroom industry, in which the EMMC exchanged the Dublin farm for another mushroom farm consisting of two parcels in Evansville, Pennsylvania, plus cash. As part of the exchange, the EMMC placed a permanent deed restriction on the Dublin farm prohibiting the conduct of any business related to the growing of mushrooms, The EMMC lost approximately $525,000 on the Dublin farm purchase and exchange transactions.

68.     Within three months of the Dublin farm/Evansville land exchange, the EMMC sold the largest parcel of the Evansville, Pennsylvania farm to a third party, with a permanent deed restriction prohibiting the conduct of any business related to the growing of mushrooms. Less than a year later, the EMMC sold the second parcel with the same permanent deed restriction. The two parcels making up the Evansville, Pennsylvania farm, with an annual mushroom growing capacity of 15 million pounds, were sold at a collective loss of $137,000.

69.     In January 2002, the EMMC purchased Gallo's Mushroom Farm ("Gallo's"), in Berks County, Pennsylvania. Gallo's had an annual mushroom growing capacity of two million pounds. Less than four months later, the EMMC sold Gallo's at a loss of $77,500 with a

permanent deed restriction prohibiting the conduct of any business related to the growing of mushrooms.

70.     In February 2002, the EMMC agreed to pay $1 million to the owners of Ohio Valley Mushroom Farms for, among other things, a non-compete agreement, a right of first refusal to lease the mushroom growing operations, a right of first refusal to purchase the properties, and the right to record a deed restriction prohibiting the conduct of any business related to mushroom growing on the property for ten years. The EMMC did not lease or purchase the property, but filed the deed restriction on the Ohio Valley Farm, which had operated as a mushroom growing concern with annual capacity of nine million pounds.

71.     In March, 2002, the EMMC purchased the La Conca D'Oro mushroom farm in Berks County, Pennsylvania. The La Conca D'Oro farm had an annual production capacity of approximately five million pounds. The EMMC sold the farm and the mushroom-growing equipment on the farm approximately three months later at a loss of $500,000. Like the other EMMC acquired properties, this land was sold with a deed restriction prohibiting anyone from conducting any business related to the growing of mushrooms on the property.

72.     In August 2002, the EMMC purchased a ten-year lease option on the Amadio Farm in Berks County, Pennsylvania for $230,000. The Amadio Farm had an annual mushroom production capacity of approximately five million pounds. The owner of the property agreed with the EMMC to the filing of a deed restriction on the property prohibiting anyone other than the EMMC from conducting any business related to the growing of mushrooms for ten years. EMMC never entered into a lease on the property.

73.     As a result of the deed restrictions placed by the EMMC on these six mushroom farms in the eastern United States, the EMMC removed more than 42 million pounds of annual growing capacity from that region, or approximately 8% of the total capacity in the eastern United States.

74.     In addition to the farms in Pennsylvania, Georgia and Ohio, the Defendants also implemented the Supply Control campaign to buy mushroom farms to restrict mushroom production in other states.  For example, as part of its Supply Control program, the EMMC acquired a farm in Hillsborough, Texas, which the EMMC purchased to reduce and forestall the threat of a competitor (Stuart Thomas) from producing mushrooms in Texas.  As a result of the EMMC's actions in various states, the EMMC eliminated at least 50 million pounds of mushroom supply, if not more.  The Defendants admitted that the campaign as a whole had "[a]nnually taken over 50 million pounds out of production from facilities which could have easily been purchased and remained in production."

75.     The Defendants' purpose in entering into the purchase and lease transactions was to reduce or eliminate the Agaricus mushroom growing capacity available to potential independent competitors in the United States, thereby improving Defendants' ability to maintain the artificially-inflated price increases to which they had agreed.  Moreover, these land purchases and lease/option agreements did not, nor were they intended to, serve any legitimate or lawful purpose under the Capper-Volstead Act, such as the promotion of growing or marketing the Defendants' mushrooms.

76.     In addition to the property transactions and deed restrictions to restrain mushroom supply alleged above, the EMMC members supported and reinforced their scheme by:

24

(a) collectively interfering with any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by the EMMC; and (b) using collective and conspiratorial acts to pressure independent growers to join the EMMC and the Defendants' anticompetitive scheme.  Plaintiffs have yet to uncover all other actions taken by EMMC to restrict competition.

77.     In the mushroom-growing industry, growers frequently sell fresh mushrooms to each other to fill daily needs.  Because the EMMC members control over 60% of the national mushroom supply, and approximately 90% of the mushroom supply in the eastern United States, the EMMC members were able to use their collective strength to place pressure on non-EMMC members to force independent growers to join the EMMC cooperative (and thus the anticompetitive scheme) or to refrain from selling mushrooms at lower prices that would undermine the scheme.  The EMMC members applied such pressure and coercion through various means, including but not limited to threatening and/or implementing a group boycott in which they would not sell mushrooms to other growers who needed them to meet short term supply needs and/or selling mushrooms to such independent growers at inflated levels.

78.     Through the collective boycotts and other collective efforts to penalize non-EMMC members that threatened to undermine the Defendants' anticompetitive scheme, the Defendants caused the artificial inflation of prices for not only the fresh Agaricus mushrooms that the Defendants sold, but also for the fresh Agaricus mushrooms sold by non-EMMC growers.

79.     As a result of Defendants' illegal, anticompetitive conduct, on December 16, 2004, the United States Department of Justice filed a complaint against the EMMC, styled

*United States* of America *v. Eastern Mushroom Marketing Cooperative, Inc.,* Civil Case No. 2: 04-C V-S 829 (the "DOJ Complaint"). With the DOJ Complaint, the United States and the EMMC filed an agreed-upon proposed Final Judgment that requires the EMMC to eliminate the deed restrictions from all the properties it shut down. That Final Judgment was subsequently entered on September 9, 2005. Pursuant to 15 U.S.C. § 16(a), entry of that Final Judgment does not in any way impair this action.

80.     All conditions precedent to this action have been performed or have occurred.

## VII.    FRAUDULENT CONCEALMENT

81.     Throughout the relevant period, Defendants affirmatively concealed their unlawful conduct from Plaintiffs and the other members of the Class. Plaintiffs and the other members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until approximately December 2004, when the Justice Department announced that it had filed a civil complaint against the EMMC and that EMMC had consented to entry of a final judgment against it. Nor could Plaintiffs and the other members of the Class have discovered the violations earlier than that time because Defendants and their co-conspirators conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, attempted to confine information concerning the identities of the combination and conspiracy's membership and concealed from public scrutiny their activities through various other means and methods designed to avoid detection.

82.     Defendants and their co-conspirators affirmatively concealed the existence of the violations alleged through the following actions, among others:

a. Conducting non-public meetings and communications in which the Defendants agreed upon and implemented the scheme alleged herein;

b. Avoiding references or discussion in public documents of the identities of the EMMC's membership and the anticompetitive scheme and acts alleged herein;

c. Participating in non-public meetings and conversations to monitor and enforce adherence to the conspiracy; and

d. Falsely representing that EMMC members' prices were fair and competitive.

83.    As a result of Defendants' concealment, Plaintiffs and the Class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiffs and the members of the Class. Plaintiffs exercised due diligence to learn of their legal rights, and, despite the exercise of due diligence, did not discover and could not have discovered the antitrust violations alleged above at the time they occurred.

84.    As a result of Defendants' continuing violations of federal antitrust laws and the speculative nature of the damages to Plaintiffs and the Class, Plaintiffs assert the tolling of the applicable statute of limitations with respect to any claims and rights of action that Plaintiffs and other Class members have as a result of the unlawful contract, combination and conspiracy alleged in this Complaint.

## VIII.   CAUSES OF ACTION

### COUNT I

### Violation of Sherman Act § 1 - Anticompetitive Conspiracy

85.      Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth at length.

86.      The Supply Control campaign adopted and implemented by the EMMC constitutes a conspiracy between and among EMMC members in unreasonable restraint of trade to prevent, forestall and restrict competition from independent mushroom producers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

87.      To effectuate the Supply Control campaign, the EMMC entered into anticompetitive and/or restrictive agreements with non-member entities, including but not limited to the purchase and lease/option agreements described above, in unreasonable restraint of trade to prevent, forestall and restrict competition from independent mushroom producers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

88.      To form and effectuate this conspiracy, the Defendants performed multiple acts, including but not limited to the following:

     a.  collectively funding the Supply Control campaign;

     b.  buying multiple properties which were resold at a loss with permanent deed restrictions forbidding the conduct of any business related to the production of mushrooms;

     c.  entering into agreements with nonmembers to place deed restrictions on properties for which the cooperative purchased lease options;

     d.  filing deed restrictions on the lease-optioned properties prohibiting the conduct of any business related to the production of mushrooms for ten years; and

e.  supporting and reinforcing the scheme by: (i) collectively interfering
with, penalizing and retaliating against any non-EMMC growers that
sought to sell at prices that were below the artificially-inflated prices
set by the EMMC; and (ii) using collective and conspiratorial acts to
pressure independent growers to join the EMMC and the Defendants'
anticompetitive scheme.

89.      As set forth herein, Defendants have used their illegal conspiracy and unlawful

market power to suppress competition and harm Plaintiffs and other members of the Class by

enacting an overarching, illegal scheme to affect, fix, raise, maintain and/or stabilize at artificial

and non-competitive levels, the prices of Agaricus mushrooms that were sold, distributed or

obtained in the United States.  Through this illegal conduct, Defendants have violated section 1

of the Sherman Act.

90.      These illegal practices of Defendants have resulted in continuing and

accumulating harm to Plaintiffs and other members of the Class by allowing Defendants to

affect, fix, raise, maintain and/or stabilize at artificial and non-competitive levels the prices at

which Agaricus mushrooms were sold, distributed or obtained in the United States.  The

continuing and accumulating harm suffered by Plaintiffs and the Class specifically includes being

overcharged for Agaricus mushrooms as a result of Defendants' conspiracy.

91.      The Supply Control campaign and the other unlawful conduct alleged herein are

not joint activities that are protected by the exemption from the antitrust laws created by the

Capper-Volstead Act, 7 U.S.C. § 291, et seq.  Under the Capper-Volstead Act, farm cooperatives

are not immune from antitrust liability when a member or members of the cooperative are not

"farmers" within the meaning of the Capper-Volstead Act.  One or some of the EMMC members

are not "farmers" within the meaning of the Capper-Volstead Act.  Additionally, under the

Capper-Volstead Act, farm cooperatives are not immune from antitrust liability when they engage in exclusionary practices, monopolize trade or suppress competition with non-members, which is what Defendants did here. By eliminating mushroom supply from non-EMMC members, and/or using collective efforts to penalize non-EMMC members that charged lower prices, the Defendants suppressed competition from growers that were not members of the cooperative.

92.     There was no legitimate business justification for the scheme and conspiracy among Defendants. Moreover, the land purchases and lease/option agreements did not, nor were they intended to, serve any legitimate or lawful purpose under the Capper-Volstead Act, such as the promotion of growing or marketing the Defendants' mushrooms. Defendants' scheme, collusion, agreements and conspiracy alleged herein have enabled Defendants to maintain prices for Agaricus mushrooms at artificially high levels.

93.     As a direct and proximate result of the Defendants' illegal, overarching scheme, Plaintiffs and other members of the Class were injured in their business or property by the collusion and conspiracy alleged above which substantially foreclosed and excluded competition in the relevant markets. Without limiting the generality of the foregoing, Plaintiffs and the other members of the Class have been forced to pay higher prices for Agaricus mushrooms in the relevant market than they would have paid in the absence of Defendants' unlawful conduct.

## COUNT II

### Violation of Sherman Act § 2 - Monopolization or Attempted Monopolization

94.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth at length.

95.     At all relevant times, Defendants possessed or attempted to acquire monopoly

power in the relevant market -- i.e., the market for Agaricus mushrooms in the United States

and/or the market for Agaricus mushrooms in the eastern United States.

96.     During the relevant period, Defendants violated section 2 of the Sherman Act, 15

U.S.C. § 2, by willfully and unlawfully acquiring, maintaining, and/or attempting to acquire or

maintain monopoly power by, inter alia:

    a.   conducting the Supply Control campaign;

    b.   buying multiple properties and reselling them at a loss with
permanent deed restrictions forbidding the conduct of any business
related to the production of mushrooms;

    c.   entering into agreements with nonmembers to place deed restrictions
on properties for which the cooperative purchased lease options;

    d.   filing deed restrictions on the lease-optioned properties prohibiting
the conduct of any business related to the production of mushrooms
for ten years; and

    e.   supporting and reinforcing the scheme by: (i) collectively interfering
with, penalizing and retaliating against any non-EMMC growers that
sought to sell at prices that were below the artificially-inflated prices
set by the EMMC; and (ii) using collective and conspiratorial acts to
pressure independent growers to join the EMMC and the Defendants'
anticompetitive scheme.

97.     As set forth herein, Defendants have used their illegal monopoly power to

suppress competition and harm Plaintiffs and other members of the Class by enacting an

overarching, illegal scheme to affect, fix, raise, maintain and/or stabilize at artificial and non-

competitive levels, the prices of Agaricus mushrooms that were sold, distributed or obtained in

the United States.  Alternatively, if it is determined that defendants have not yet secured

monopoly power, their conduct constitutes attempted monopolization which has harmed

Plaintiffs and poses a dangerous possibility of success.  Through this illegal conduct, Defendants have violated section 2 of the Sherman Act.

98.     These illegal practices of Defendants have resulted in continuing and accumulating harm to Plaintiffs and other members of the Class by allowing Defendants to affect, fix, raise, maintain and/or stabilize at artificial and non-competitive levels the prices at which Agaricus mushrooms were sold, distributed or obtained in the United States.  The continuing and accumulating harm suffered by Plaintiffs and the Class specifically includes being overcharged for Agaricus mushrooms as a result of Defendants' monopoly or attempted monopoly.

99.     Acts of monopolization or attempted monopolization such as those of Defendants are not activities that are protected by the exemption from the antitrust laws created by the Capper Volstead Act, 7 U.S.C. § 291, et seq.  Under the Capper-Volstead Act, farm cooperatives are not immune from antitrust liability when a member or members of the cooperative are not "farmers" within the meaning of the Capper-Volstead Act.  One or some of the EMMC members are not "farmers" within the meaning of the Capper-Volstead Act.  Additionally, under the Capper-Volstead Act, farm cooperatives are not immune from antitrust liability when they engage in exclusionary practices, monopolize trade or suppress competition with non-members, which is what Defendants did here.  By eliminating mushroom supply from non-EMMC members, and/or using collective efforts to penalize non-EMMC members that charged lower prices, the Defendants suppressed competition from growers that were not members of the cooperative.

100.     There was no legitimate business justification for the willful acquisition, maintenance, and/or attempted acquisition or maintenance of monopoly power by Defendants. Defendants' scheme, collusion, agreement and conspiracy alleged herein has enabled Defendants to maintain prices for Agaricus mushrooms at artificially high levels.

101.     As a direct and proximate result of the Defendants' willful acquisition, maintenance, and/or attempted acquisition or maintenance of monopoly power, Plaintiffs and other members of the Class were injured in their business or property because competition in the relevant markets was substantially foreclosed.  Without limiting the generality of the foregoing, Plaintiffs and the other members of the Class have been forced to pay higher prices for Agaricus mushrooms in the relevant market than they would have paid in the absence of Defendants' unlawful conduct.

**COUNT III**

**Violation of Clayton Act  § 7 - Unlawful Acquisition**

102.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth at length.

103.     Defendants unlawfully acquired the assets of their direct competitors, as detailed above, thereby substantially lessening competition in a relevant market -- i.e., the market for Agaricus mushrooms in the United States and/or the market for Agaricus mushrooms grown in the eastern United States.  This acquisition violated Section 7 of the Clayton Act, 15 U.S.C. § 18.

104.     By reason of the antitrust violations of Defendants alleged herein, the prices of the mushrooms purchased were higher than they would have been but for Defendants' violation of antitrust laws.

105.     Defendants' acquisition and holding of competitor mushroom farms violated Section 7 of the Clayton Act.

106.     As a direct and proximate result of the Defendants' acquisition of their competitors, Plaintiffs and other members of the Class were injured in their business or property by the substantial lessening of competition in the relevant markets.  Without limiting the generality of the foregoing, Plaintiffs and the other members of the Class have been forced to pay higher prices for Agaricus mushrooms in the relevant market than they would have paid in the absence of Defendants' unlawful conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that the Court:

(i)      determine that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23, be given to the Class;

(ii)     rule the acts alleged herein be adjudged and decreed unlawful acts in violation of Section 1 of the Sherman Act;

(iii)    rule that the acts alleged herein be adjudged and decreed unlawful acts in violation of Section 2 of the Sherman Act;

(iv)    rule the acts alleged herein be adjudged and decreed unlawful acts in violation of Section 7 of the Clayton Act;

(v)     award each member of the Class three-fold the damages determined to have been sustained by each of them, and enter judgment against Defendants in favor of the Class;

(vi)    require Defendants to take affirmative steps to dissipate the continuing effects of their unlawful conduct; and

(vii)    award the Class its costs of suit, including reasonable attorney's fees and costs as provided by law.

## **JURY DEMAND**

Plaintiffs hereby demands a trial by jury on all issues so triable.

Dated: June 26, 2006

/s Barry L. Refsin
Barry L. Refsin (Pa. ID No. 62526)
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square, 27th Floor
Philadelphia, PA  19103-6933
Tel:  (215) 568-6200
Fax:  (215) 568-0300

Steve D. Shadowen (Pa. ID No. 41953)
HANGLEY ARONCHICK SEGAL & PUDLIN
20 North Third Street
Suite 700
Harrisburg, PA  17101-1701
Tel:  (717) 364-1030
Fax:  (717) 364-1020

Bruce E. Gerstein
Noah H. Silverman
Kevin Landau
GARWIN, GERSTEIN & FISHER, L.L.P.
1501 Broadway, Suite 1416
New York, NY  10036
Tel:  (212) 398-0055
Fax:  (212) 764-6620
*Lead Counsel for Direct Purchaser Class*

David P. Smith
W. Ross Foote
PERCY, SMITH & FOOTE, L.L.P.
720 Murray Street
P. O. Box 1632
Alexandria, LA  71309
Tel:  (318) 445-4480
Fax:  (318) 487-1741

Brent B. Barriere
David Patrón
Susie Morgan
PHELPS DUNBAR, L.L.P.
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA  70130
Tel:  (504) 584-9210
Fax:  (504) 568-9130

Robert T. Kelly, Jr.
MYERS, BRIER & KELLY, LLP
425 Spruce Street - Suite 200
P.O. Box 551
Scranton, PA 18501-0551
Tel: (570) 342-6100
Fax: (570) 342-6147

Adam Moskowitz (FBN 984280)
Tucker Ronzetti (FBN 965723)
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce De Leon, 9th Floor
Coral Gables, Florida 33134
Tel.: (305) 372-1800
Fax: (305) 372-3508

John Gregory Odom
Stuart E. Des Roches
ODOM & DES ROCHES, L.L.P.
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078

Robert A. Kutcher
CHOPIN, WAGAR, RICHARD & KUTCHER
3850 N. Causeway Blvd., Suite 900
Metairie, LA  70002
Tel:  (504) 830-3838
Fax:  (504) 836-9540

Alfred G. Yates
LAW OFFICE OF ALFRED G. YATES JR PC
519 Allegheny
Building 429 Forbes Avenue
Pittsburgh, PA 15219
Telephone: (412) 391-5164
Fax: (412) 471-1033

***Attorneys for Plaintiffs Wm. Rosenstein & Sons,
Diversified Foods & Seasonings, Inc.,  Robert Altman,
M.L. Robert, II, L.L.C., M. Robert Enterprises, Inc.,
Market Fair, Inc., and Associated Grocers, Inc.***

Anthony J. Bolognese (AJB 3935)
Joshua H. Grabar (JHG 1707)
BOLOGNESE & ASSOCIATES, LLC
One Penn Center Plaza
1617 JFK Blvd., Suite 650
Philadelphia, PA 19103
Telephone: (215) 814-6750
Facsimile:  (215) 814-6764

Michael D. Hausfeld
Brian A. Ratner
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4669

Linda P. Nussbaum
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
150 East 52nd Street, Thirtieth Floor
New York, NY  10022
Telephone:  (212) 838-7797
Facsimile:   (212) 838-7745

Paul E. Slater
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3300
Chicago, IL 60603
Telephone:  (312) 641-3200
Facsimile:  (312) 641-6492

***Attorneys for Plaintiffs Meijer, Inc. and Meijer
Distribution, Inc.***

Eugene A. Spector (Pa I.D. No. 13616)
Jeffrey L. Kodroff (Pa I.D. No. 55780)
Jeffrey J. Corigan
Jay S. Cohen (Pa I.D. No. 19333)
SPECTOR ROSEMAN & KODROFF
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611

Nathan Neuman
LAW OFFICES OF NATHAN NEUMAN
700 Lake Drive
Ambler, PA 19002
Telephone:  (215) 646-9520
Facsimile:  (215) 646-9521

***Attorneys for Plaintiff All American Mushroom, Inc.***

## CERTIFICATE OF SERVICE

I, Barry L. Refsin, hereby certify that this 26th day of June 2006, I caused a true and

correct copy of the foregoing Consolidated Amended Class Action Complaint to be served via e-

mail and first-class mail, postage pre-paid, upon each of the following attorneys who have

entered appearances in these consolidated cases:

| | |
|---|---|
| Bruce E. Gerstein, Esq.<br>Noah H. Silverman, Esq.<br>Kevin S. Landau, Esq.<br>Garwin, Gerstein & Fisher, L.L.P.<br>1501 Broadway, Suite 1416<br>New York, NY 10036<br>(212) 398-0055  Fax (212) 764-6620<br>bgerstein@garwingerstein.com<br>nsilverman@garwingerstein.com<br>klandau@garwingerstein.com | David P. Smith, Esq.<br>Percy, Smith & Foote, L.L.P.<br>720 Murray Street<br>P.O. Box 1632<br>Alexandria, LA 71300<br>(318) 445-4480  Fax (318) 487-1741<br>DPSmith@psfllp.com |
| Brent B. Barriere, Esq.<br>Phelps Dunbar LLP<br>Canal Place<br>365 Canal Street, Suite 2000<br>New Orleans, LA 70130-6534<br>(504) 584-9210  Fax (504) 568-9130<br>BarriereB@phelps.com | Robert A. Kutcher, Esq.<br>Chopin, Wagner, Richard & Kutcher<br>3850 North Causeway Boulevard, Suite 900<br>Metairie, LA 70002<br>(504) 830-3838  Fax (504) 836-9540<br>rKutcher@chopin.com |
| Robert T. Kelly, Jr., Esq.<br>Myers, Brier & Kelly, L.L.P.<br>425 Spruce Street, Suite 200<br>P.O. Box 551<br>Scranton, PA 18501-0551<br>(570) 342-6100  Fax (570) 342- 6147<br>rKelly@mbklaw.com | Adam Moskowitz, Esq.<br>Tucker Ronzetti, Esq.<br>Kozyak Tropin & Throckmorton, P.A.<br>2525 Ponce DeLeon, 9th Floor<br>Coral Gables, FL 33134<br>(305) 372-1800  Fax (305) 372-3508<br>AMM@kttlaw.com<br>TR@kttlaw.com |
| John Gregory Odom, Esq.<br>Stuart E. Des Roches, Esq.<br>Odom & Des Roches, L.L.P.<br>Poydras Center, Suite 2020<br>650 Poydras Street<br>New Orleans, LA 70130<br>(504) 522-0077  Fax (504) 522-0078<br>jodom@odrlaw.com<br>stuart@odrlaw.com | Barbara T. Sicalides, Esq.<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Eighteenth & Arch Streets<br>Philadelphia, PA 19103-2799<br>(215) 981-4000  Fax (215) 981-4750<br>sicalidesb@pepperlaw.com |

| | |
|---|---|
| Anthony J. Bolognese, Esq.<br>One Penn Center Plaza<br>1617 JFK Blvd., Suite 650<br>Philadelphia, PA 19103<br>(215) 814-6750  Fax (215) 814-6764<br>ABolognese@bolognese-law.com | Michael D. Hausfeld, Esq.<br>Brian Ratner, Esq.<br>Cohen, Milstein, Hausfeld & Toll, P.L.L.C.<br>1100 New York Avenue, N.W.<br>West Tower, Suite 500<br>Washington, D.C. 20005-3964<br>(202) 408-4600  Fax (202) 408-4699<br>mhausfeld@cmht.com<br>bratner@cmht.com |
| Linda P. Nussbaum, Esq.<br>Cohen Milstein Hausfeld & Toll P.L.L.C.<br>150 East 52nd Street, 30th Floor<br>New York, New York 10022-7519<br>(212) 838-7797 Fax (212) 838-7745<br>lnussbaum@cmht.com | Paul E. Slater, Esq.<br>Sperling & Slater, P.C.<br>55 West Monroe Street, Suite 3300<br>Chicago, IL 60603<br>(312) 641-3200 Fax (312) 641-6492<br>pes@sperling-law.com |
| Ira Neil Richards, Esq.<br>Kathryn C. Harr<br>Trujillo Rodriguez & Richards, LLC<br>1717 Arch Street, Suite 3838<br>Philadelphia, PA 19103<br>(215) 731-9004  Fax (215) 731-9044<br>ira@trrlaw.com<br>Kharr@trrlaw.com | Alfred G. Yates, Esq.<br>Law Office of Alfred G. Yates, Jr., P.C.<br>519 Allegheny Building<br>429 Forbes Avenue<br>Pittsburgh, PA 15219<br>(412) 391-5164  Fax (412) 471-1033<br>yateslaw@aol.com |
| William A. DeStefano, Esq.<br>Buchanan Ingersoll, P.C.<br>1835 Market Street, 14th Floor<br>Philadelphia, PA 19103<br>(215) 665-8700   Fax (215) 665-8760<br>destefanowa@bipc.com | H. Laddie Montague, Jr., Esq.<br>Berger & Montague, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103-6365<br>(215) 875-3010   Fax (215) 875-4671<br>hlmontague@bm.net |
| Abraham C. Reich, Esq.<br>Fox, Rothschild LLP<br>2000 Market Street, Tenth Floor<br>Philadelphia, PA 19103-3291<br>(215) 299-2000   Fax (215) 299-2150<br>areich@foxrothschild.com | Jay Cohen, Esq.<br>Spector, Roseman & Kodroff<br>1818 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>(215) 496-0300 Fax (215) 496-6611<br>jcohen@srk-law.com |
| Patricia M. Hamill, Esq.<br>Conrad O'Brien Gellman & Rohn<br>1515 Market Street, 16th Floor<br>Philadelphia, PA 19102<br>phamill@cogr.com | Leslie E. John, Esq.<br>Ballard Spahr Andrews & Ingersoll<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>johnl@ballardspahr.com |

| Francis P. Newell, Esq.<br>Harkins Cunningham LLP<br>2800 One Commerce Square<br>2005 Market Street<br>Philadelphia, PA 19103<br>fnewell@harkinscunningham.com | |

In addition, the foregoing Consolidated Amended Class Action Complaint will be served

by hand delivery with the initial service of process of the Complaint of Associated Grocers, Inc.

in Case No. 2:06-cv-01854-TON on each of the following Defendants who have not yet received

initial service of process in any of the individual cases consolidated in the Mushroom Direct

Purchaser Antitrust Litigation:

| MASHA & TOTO, INC. t/a<br>M & T MUSHROOMS<br>519 Hillendale Rd<br>Avondale, PA 19311 | W & P MUSHROOM INC.<br>4300 Barnsley Chrome Rd<br>Oxford, PA 19363 |
|---|---|
| MUSHROOM ALLIANCE, INC.<br>c/o CT Corporation System<br>520 Pike St.<br>Seattle, WA 98101 | QUINCY FARMS<br>190 Mannie Gunn Rd<br>Quincy, FL 32351 |
| JM FARMS, INC.<br>7001 S. 580 Road<br>Miami, OK 74354 | |

/s Barry L. Refsin
Barry L. Refsin