UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

—————————————————— x
:
IN RE MUSHROOM DIRECT            :        Master File No. 06-0620
PURCHASER ANTITRUST LITIGATION :
:
THIS DOCUMENT RELATES TO:         :        Nos.    06-0638; 06-0657;
:                06-0677; 06-0861;
All Actions.                     :                06-0932; 06-1464;
:                06-1854, 06-4829
—————————————————— :
:
WM. ROSENSTEIN & SONS CO.        :        COMPLAINT – CLASS ACTION
950 North Keyser Avenue           :
Scranton, PA 18504-9774,          :
:
DIVERSIFIED FOODS & SEASONINGS, :
INC.                             :
109 Hwy. 1085                     :
Madisonville, LA 70447,           :
:
ROBERT ALTMAN, AS TRUSTEE        :
FOR THE BANKRUPTCY ESTATE OF     :
STEPHEN LEE MCCUE D/B/A JOHN     :
MANNING CO.                      :
P.O. Box, 922                     :
Palatka, Fla. 32178-0922          :
:
MEIJER, INC. and                  :
MEIJER DISTRIBUTION, INC.         :
2929 Walker Ave., N.W.            :
Grand Rapids, MI 4955             :
:
M.L. ROBERT, II, L.L.C.           :
5016 West Esplanade               :
Metairie, LA 70066                :
:
M. ROBERT ENTERPRISES, INC.       :
5016 West Esplanade               :
Metairie, LA 70066                :

MARKET FAIR, INC.                          :
1215 Burgandy St.                          :
New Orleans, LA  70116,                    :
                                           :
ALL AMERICAN MUSHROOM, INC.                :
711 Potter Drive                           :
Kennett Square, PA 19348                   :
                                           :
ASSOCIATED GROCERS, INC.                   :
8600 Anselmo Lane                          :
Baton Rouge, LA  70826-1748                :
                                           :
THEODORE J. KATSIROUBAS AND                :
SONS, INC. d/b/a KATSIROUBAS               :
BROTHERS WHOLESALE FRUIT                   :
AND PRODUCE                                :
40 Newmarket Square                        :
Boston, MA 02118                           :
                                           :
NATIVE MAINE PRODUCE AND                   :
SPECIALTY FOODS, LLC                       :
75 Industrial Way                          :
Portland, ME 04103,                        :
                                           :
                    Plaintiffs,            :
                                           :
            v.                             :
                                           :
EASTERN MUSHROOM MARKETING                 :
COOPERATIVE, INC.                          :
649 West South St.                         :
Kennett Square, PA  19348                  :
                                           :
ROBERT A. FERANTO, JR t/a                  :
BELLA MUSHROOM FARMS                       :
330 Landenberg Rd                          :
Landenberg, PA 19350                       :
                                           :
BROWNSTONE MUSHROOM FARMS,                 :
INC.                                       :
974 Penn Green Road                        :
Avondale, PA 17340                         :
                                           :

TO-JO FRESH MUSHROOMS, INC.    :
974 Penn Green Rd.    :
Avondale, PA 19311    :
    :
CARDILE MUSHROOMS, INC.    :
540 Church Rd.    :
Avondale, PA  19311    :
    :
CARDILE BROS. MUSHROOMS    :
PACKAGING    :
8790 Gap Newport Rd.    :
Avondale, PA  19311    :
    :
COUNTRY FRESH MUSHROOM CO.    :
Highway 41 S    :
Avondale, PA 19311    :
    :
FOREST MUSHROOM INC.    :
14715 County Road 51    :
Saint Joseph, MN 56374    :
    :
FRANKLIN FARMS, INC.    :
931 Rte. 32    :
North Franklin, CT  06254    :
    :
GINO GASPARI & SONS, INC.    :
GASPARI BROS. INC.    :
2103 Georgia Rd.    :
Temple, PA  19560    :
    :
GIORGI MUSHROOM COMPANY    :
GIORGIO FOODS, INC.    :
1813 Hilltop Rd.    :
Temple, PA  19560    :
    :
KAOLIN MUSHROOM FARMS, INC.    :
649 West South St.    :
Kennett Square, PA  19348    :
    :
SOUTH MILL MUSHROOM SALES, INC.:
649 West South St.    :
Kennett Square, PA  19348    :

3

LRP MUSHROOMS INC                        :
LRP-M MUSHROOMS LLC                       :
LEONE PIZZINI AND SON, INC.              :
740 Penn Green Rd                        :
PO Box 366                               :
Landenberg, PA 19350                     :
                                         :
MODERN MUSHROOM FARMS, INC.              :
1330 Newark Rd.                          :
Toughkenamon, PA  19374                  :
                                         :
SHER-ROCKEE MUSHROOM FARM                :
170 SherRockee Ln.                       :
Lincoln University, PA  19352            :
                                         :
C & C CARRIAGE MUSHROOM CO.              :
1340 Newark Rd.                          :
Toughkenamon, PA  19374                  :
                                         :
OAKSHIRE MUSHROOM FARM, INC.             :
295 Thompson Rd.                         :
Kennett Square, PA  19348                :
                                         :
PHILLIPS MUSHROOM FARMS, INC.            :
124 Old Kennett Rd.                      :
Kennett Square, PA  19348                :
                                         :
HARVEST FRESH FARMS, INC.                :
865 Shoemakersville Rd                   :
PO Box 297                               :
Shoemakersville, PA 19555                :
                                         :
LOUIS M. MARSON, JR., INC.               :
459 Greenwood Rd                         :
Kennett Square, PA 19348                 :
                                         :
MARIO CUTONE MUSHROOM CO.,               :
INC.                                     :
Rts 1 & 41                               :
Avondale, PA 19311                       :
                                         :
M.D. BASCIANI & SONS, INC.               :
8874 Gap Newport Pike                    :
Avondale, PA 19311                       :
                                         :
MONTEREY MUSHROOMS, INC.                 :

4

260 Westgate Dr.                          :
Watsonville, CA  95076                    :
                                          :
MASHA & TOTO, INC. t/a                    :
M & T MUSHROOMS                           :
519 Hillendale Rd                         :
Avondale, PA 19311                        :
                                          :
W & P MUSHROOM INC.                       :
4300 Barnsley Chrome Rd                   :
Oxford, PA 19363                          :
                                          :
MUSHROOM ALLIANCE, INC.                   :
c/o CT Corporation System                 :
520 Pike St.                              :
Seattle, WA                               :
                                          :
QUINCY FARMS                              :
190 Mannie Gunn Rd                        :
Quincy, FL 32351                          :
                                          :
CREEKSIDE MUSHROOMS LTD.                  :
One Moonlight Dr.                         :
Worthington, PA  16262-9730               :
                                          :
KITCHEN PRIDE MUSHROOMS                   :
County Rd 348                             :
Gonzales, TX 78629                        :
                                          :
JM FARMS, INC.                            :
7001 S. 580 Road                          :
Miami, OK 74354                           :
                                          :
UNITED MUSHROOM FARMS                     :
COOPERATIVE, INC.                         :
101 New Garden Rd                         :
Avondale, PA 19311                        :
                                          :
JOHN PIA                                  :
649 West South St.                        :
Kennett Square, PA  19348                 :

MICHAEL PIA                              :
649 West South St.                       :
Kennett Square, PA  19348                :
                                         :
And JOHN DOES 1-100,                     :
                                         :
          Defendants.                    :
_____x

## REVISED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT[1]

Plaintiffs bring this class action on behalf of themselves and all others similarly situated and aver as follows, based on the investigation of Plaintiffs' counsel, which included, *inter alia*, a review of the December 2004 antitrust complaint filed by the United States Department of Justice, the Department of Justice's Competitive Impact Statement, and the Final Judgment regarding the Justice Department's allegations, to which the Eastern Mushroom Marketing Cooperative, Inc. ("EMMC") consented.

### I.        NATURE OF THE ACTION

1.        Plaintiffs, direct purchasers of mushrooms, bring this antitrust class action complaint to recover damages for themselves and other members of the Class defined below, all of whom were caused to pay artificially-inflated prices for the mushrooms they purchased during the Class Period due to the illegal price-fixing scheme and conspiracy by EMMC and its members, with the participation of various nonmember third-parties.

2.        As alleged below, each year American consumers spend over $800 million on mushrooms, the vast majority of which are fresh Agaricus mushrooms, the common table

---

[1] The allegations of this Complaint are identical to those of the Complaint originally filed in Case No. 06-4829, except that all named plaintiffs in the consolidated class actions have been identified.

variety. During the Class Period, EMMC members controlled over 60 percent of all Agaricus mushrooms grown in the United States and approximately 90 percent of all Agaricus mushrooms grown in the eastern United States.

3.      Starting in January 2001, various individuals and entities formed the EMMC solely as a front and pretext for a naked price-fixing and anticompetitive supply control scheme. The actions of EMMC, its members, and co-conspirators inflated the average prices for Agaricus mushrooms by at least 8 percent around the country.

4.      EMMC members: (a) formed EMMC as a front in order to engage in naked price-fixing; (b) collectively fixed artificially-inflated prices at which its members would sell their products and conspired with nonmember third-parties to increase prices and restrict supply; (c) implemented a supply control scheme in support thereof; (d) concealed the membership and activities of EMMC; (e) collectively interfered with any non-EMMC growers who sought to sell at prices that were below the artificially-inflated prices set by EMMC; and (f) used collective and conspiratorial acts to pressure independent growers to join EMMC and Defendants' anticompetitive scheme.

5.      The conspiracy among EMMC members and nonmember third-parties to fix prices, and to restrict, forestall, and exclude competition from non-EMMC farmers, was a per se illegal restraint of trade that violated Sections 1 and 2 of the Sherman Act as well as Section 7 of the Clayton Act. EMMC was created simply as a pretext and front for naked price-fixing. EMMC did not engage in collective processing, preparing for market, handling, or marketing the products of its members. Its primary function was to set the prices at which its members individually sold their products. EMMC's actions provided no market efficiencies or other legitimate business value to its members or consumers.

7

6.      As part of this overarching scheme, beginning in May 2001, EMMC, its members, and nonmember third-parties collectively undertook a "Supply Control" campaign to impede and forestall competition from independent, non-EMMC farmers, thereby eliminating the restraints on inflated prices that naturally result from competition. EMMC and its members implemented their scheme through a number of different acts, including entering into agreements to eliminate a significant amount of the supply from competing mushroom growers. Starting in May 2001, EMMC, acting as an agent of its members, purchased four mushroom farms with an annual combined growing capacity of approximately 29 million pounds. EMMC, acting as an agent of its members, then sold the four properties to nonmember purchasers (at a combined total loss of over $1.2 million). The non-member purchasers agreed with EMMC to place permanent deed restrictions on the properties. The deed restrictions prohibited the conduct of any business related to the growing of mushrooms. For example, one deed restriction read:

> This property shall never be used for the cultivation, growing, marketing, sale or distribution of fresh mushrooms, canned and/or processed mushrooms or related endeavors.

7.      Similarly, in February and August 2002, EMMC, acting as an agent of its members, entered into lease options at a cost of over $1 million, on two additional mushroom farms with a combined annual growing capacity of approximately 14 million pounds. Under the lease options, nonmember third-parties allowed EMMC to file deed restrictions on the two farms prohibiting the use of the properties for any business related to growing mushrooms for a period of 10 years. EMMC never entered into leases on these farms, but did file the deed restrictions. No mushrooms have been grown on the properties EMMC bought or had under lease option since the deed restrictions were imposed by EMMC. EMMC and its members also bought one

or more mushroom farms in Texas to remove the mushroom supply of those farms from the market.

8.      By entering into agreements with nonmember third parties to impose deed restrictions on the properties described above, EMMC and its members were able to substantially reduce the amount of land available in the United States for mushroom production.  Indeed, EMMC touted the success of the Supply Control campaign to its membership, claiming that it had "[a]nnually taken over 50 million pounds out of production from facilities which could have easily been purchased and remained in production."  By reducing the amount of the land and facilities available to produce mushrooms in the United States, EMMC and its members were able to maintain artificial price increases for mushrooms of at least 8%.  The anticompetitive effects of the price-fixing and Supply Control scheme (in terms of reduced mushroom supply and artificially-inflated mushroom prices) continue to date.

## II.      JURISDICTION AND VENUE

9.      Plaintiffs bring this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, to recover treble damages, equitable relief, costs of suit and reasonable attorneys' fees for the Defendants' violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 and Section 7 of the Clayton Act, 15 U.S.C. § 18.  Subject matter jurisdiction is proper pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. §§ 1331, 1337, and 1345.

10.      The Defendants are a purported agricultural cooperative, its members, and co-conspirators.  These entities are involved in the production, processing, and/or sale of fresh market mushrooms in interstate commerce.  The Defendants' activities in the production, processing, and/or sale of mushrooms substantially affect interstate commerce.  The Defendants

grow, process, and/or sell mushrooms in both the Eastern and Western parts of the United States and ship mushroom between states.

11.     Venue is proper in this judicial district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b) and (c) because during the Class Period many of the Defendants resided, transacted business, were found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

### III.     THE PARTIES

12.     Plaintiff Wm. Rosenstein & Sons Co. is located at 950 N Keyser Avenue, in Scranton, Pennsylvania. During the Class Period defined below, Wm. Rosenstein & Sons Co. purchased Agaricus mushrooms directly from one or more Defendants during the Class period defined below.

13.     Plaintiff Diversified Foods & Seasonings, Inc. is located at 109 Hwy. 1085, in Madisonville, Louisiana. During the Class Period defined below, Diversified Foods & Seasonings, Inc. purchased Agaricus mushrooms directly from one or more Defendants during the Class Period defined below.

14.     Plaintiff Robert Altman, P.O. Box, 922, Palatka, Fla. 32178-0922, brings this action as trustee for the bankruptcy estate of Stephen Lee McCue d/b/a/ John Manning Co. Stephen Lee McCue was an officer and director of John Manning Co. ("Manning"). Manning was a dealer and commission merchant engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities in interstate commerce. Included among the commodities that were bought and sold by Manning were mushrooms. Manning directly

purchased mushrooms from many different sources including from Cardile Bros. Mushrooms Packaging ("Cardile") and Monterey Mushrooms, Inc. ("Monterey"). Both Cardile and Monterey are and have been members of the EMMC. Manning specifically purchased mushrooms from Cardile during the Class Period. On November 4, 2003, McCue d/b/a Manning filed for Chapter 7 bankruptcy protection. Mr. Altman was appointed as the Chapter 7 trustee for the bankruptcy estate of McCue, including his equity and interest in Manning.

15.    Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. (collectively "Meijer") are corporations organized under the laws of the State of Michigan, with their principal places of business at 2929 Walker Avenue, N.W., Grand Rapids, Michigan 49544. Meijer purchased Agaricus mushrooms directly from one or more Defendants during the Class Period defined below.

16.    Plaintiffs M.L. Robert, II, L.L.C., 5016 West Esplanade, Metairie, LA 70066, M. Robert Enterprises, Inc., 5016 West Esplanade, Metairie, LA 70066, and Market Fair, Inc., 1215 Burgandy St., New Orleans, LA 70116 (the "Robert Plaintiffs"), have received an assignment of claims related to the mushrooms that they purchased from Associated Grocers, Inc., which purchased Agaricus mushrooms directly from one or more Defendants during the Class Period defined below. As a result of the assignments, the Robert Plaintiffs are suing as direct purchasers.

17.    Plaintiff All American Mushroom, Inc., 711 Potter Drive, Kennett Square, PA, is a Pennsylvania corporation. During the Class Period, as defined below, All American Mushroom, Inc. purchased Agaricus mushrooms directly from one or more Defendants during the Class Period defined below.

18.     Plaintiff Associated Grocers, Inc., 8600 Anselmo Lane, Baton Rouge, LA 70826-1748, purchased Agaricus mushrooms directly from one or more Defendants during the Class Period defined below.

19.     Plaintiff Theodore J. Katsiroubas and Sons, Inc., doing business as Katsiroubas Brothers Wholesale Fruit and Produce ("Katsiroubas Brothers"), is a corporation organized under the laws of the State of Massachusetts, with its principal place of business at 40 Newmarket Square, Boston, MA 02118.  During the Class Period, as defined below, Katsiroubas Brothers purchased Agaricus mushrooms directly from one or more Defendants.

20.     Plaintiff Native Maine Produce and Specialty Foods, LLC ("Native Maine") is a limited liability company organized under the laws of the State of Maine, with its principal place of business at 75 Industrial Way, Portland, ME 04103.  During the Class Period, as defined below, Native Maine purchased Agaricus mushrooms directly from one or more Defendants.

21.     Defendant Eastern Mushroom Marketing Cooperative began operations in January 2001, and purports to be the largest mushroom cooperative in the United States.  EMMC is incorporated in the Commonwealth of Pennsylvania and is headquartered in Kennett Square, Pennsylvania.  EMMC is made up of entities that grow, buy, package, and/or ship mushrooms to retail and food service outlets across the United States.  EMMC concealed the identity of its members by refusing to publish or make publicly available a list of its members.  On information and belief, based upon reasonable investigation by Plaintiffs' counsel and information provided by counsel for the Defendants, Plaintiffs have identified the members of EMMC and gathered information regarding their activities detailed below.

22.     EMMC was not formed to process, prepare for market, handle, or market the mushrooms of its members.  Rather, as demonstrated herein, EMMC was formed solely as a

pretext for naked price-fixing by its members. EMMC set the minimum prices at which its members and nonmembers sold their mushrooms to customers in various geographic regions throughout the United States. At least two members of EMMC did not grow any mushrooms. Furthermore, several members of EMMC were large, vertically-integrated agri-businesses that have extensive processing, distribution and sales operations. During the 2001-2002 growing season, EMMC had approximately 19 members with control of more than 500 million pounds of mushrooms valued in excess of $425 million. During the Class Period, EMMC members controlled over 60 percent of all Agaricus mushrooms grown in the United States and approximately 90 percent of all Agaricus mushrooms grown in the eastern United States.

23.    Defendant Robert A. Ferranto, Jr. is an individual trading as Bella Mushroom Farms ("Bella Mushroom"). The principal office of Bella Mushroom is located in Landenberg, Pennsylvania. Bella Mushroom was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

24.    Defendant Brownstone Mushroom Farms ("Brownstone") has its principal office in Avondale, Pennsylvania. Brownstone was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

25.    Defendant To-Jo Mushrooms, Inc. ("To-Jo") is related to and controlled by Brownstone. To-Jo processes, packs, and ships mushrooms on behalf of Brownstone. To-Jo has a large fleet of refrigerator trucks that deliver mushrooms directly to retail outlets and consumers throughout New England. Upon information and belief, To-Jo was not an EMMC member but participated in the improper conduct alleged herein.

26.    Defendant Cardile Mushrooms, Inc. has its principal offices in Avondale, Pennsylvania. Cardile Mushrooms, Inc. was an EMMC member during the Class Period.

Defendant Cardile Brothers Mushroom Packaging, Inc. does not grow mushrooms and is not a member of EMMC. It is a packager, seller, and distributor with its principal offices in Avondale, Pennsylvania. Both Cardile Mushrooms, Inc. and Cardile Brothers Mushroom Packaging, Inc. are owned and operated by Michael P. Cardile Sr. and Charles Cardile. Both entities participated in the improper conduct alleged herein.

27.    Defendant Country Fresh Mushroom Co. ("Country Fresh") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal office is located in Avondale, Pennsylvania. Country Fresh is a packing and distribution company owned in its entirety by its directors and officers, Edward A. Leo, Mickey Brosius, and Peter Alonzo. Country Fresh does not grow mushrooms. Nevertheless, Country Fresh was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

28.    Defendant Forest Mushroom Inc. ("Forest") is a vertically-integrated mushroom producer that has its principal offices in Saint Joseph, Minnesota. Forest engages in the research, cultivation, and distribution of mushrooms, has its own packaging facility, and delivers its mushrooms directly to consumers by refrigerator truck. Forest was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

29.    Defendant Franklin Farms, Inc. ("Franklin") is a vertically-integrated mushroom producer that has its principal offices in North Franklin, Connecticut. Franklin has over 500 employees, is the nation's largest grower and harvester of certified organic mushrooms, and one of the largest agricultural businesses in New England. It processes and distributes its products throughout the eastern United States. Franklin was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

14

30.     Defendants Gino Gaspari & Sons, Inc. and Gaspari Bros. Inc. are located in Temple, Pennsylvania.  Gaspari Bros. Inc. does not grow mushrooms.  One or both entities was an EMMC member during the Class Period.   On information and belief, both entities participated in the improper conduct alleged herein.

31.     Defendant Giorgi Mushroom Company is located in Temple, Pennsylvania. Giorgi Mushroom Company was an EMMC member during the Class Period.  The company's website advertises that it is "a fully integrated grower, processor, and distributor of the finest fresh, frozen, canned, jarred, and value-added mushroom products."  Defendant Giorgio Foods, Inc. is also located in Temple, Pennsylvania and does not grow mushrooms, operating instead as a cannery and supplier of frozen foods.  Giorgio Foods, Inc. is not a member of EMMC.  On information and belief, both Giorgi Mushroom Company and Giorgio Foods, Inc. participated in the improper conduct alleged herein.

32.     Defendant Kaolin Mushroom Farms, Inc. ("Kaolin") is a vertically-integrated mushroom producer organized and existing under the laws of the Commonwealth of Pennsylvania whose principal office is located in Kennett Square, Pennsylvania.  Kaolin was an EMMC member during the Class Period and operates one of the largest mushroom farms in Pennsylvania, claiming to employ over 400 employees.  Kaolin transacts business in this district. During the Class Period, Kaolin sold mushrooms to retail, wholesale, food service, and commercial processors, under the South Mill label.  Kaolin participated in the improper conduct alleged herein.

33.     Defendant South Mill Mushroom Sales, Inc. ("South Mill") is located in Kennett Square, Pennsylvania, and is related through common ownership to Kaolin.  South Mill is a "vertically integrated company"  engaged throughout the production, transportation, marketing,

and distribution process. South Mill has satellite offices and distribution centers in Louisiana, Texas, and Georgia. South Mill claims that "[a]s a result of vertical integration we maintain total control over supply and quality of our product." On information and belief, South Mill does not grow mushrooms and is not an EMMC member but participated in the improper conduct alleged herein.

34. Leone Pizzini and Son, Inc. ("Leone Pizzini") is located in Landenberg, Pennsylvania. On information and belief it is entirely owned by its officers, Leone Pizzini Sr. and Linda Pizzini-Johnson. Leone Pizzini is a wholesaler of fruit and vegetables and is not a grower of mushrooms. Nevertheless, Leone Pizzini was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

35. Defendants LRP Mushrooms Inc. and LRP-M Mushrooms LLC are located in Landenberg, Pennsylvania. One or both entities was an EMMC member during the Class Period. On information and belief, both entities participated in the improper conduct alleged herein.

36. Defendant Modern Mushroom Farms, Inc. ("Modern") is a vertically-integrated mushroom producer with principal offices in Toughkenamon, Pennsylvania. In addition to growing and processing mushrooms, Modern manufactures canned vegetables, fruits, and jellies. Modern sells its products to food brokers, pizza chains, and supermarkets throughout the eastern half of the United States. Modern was an EMMC member during the Class Period and participated in the improper conduct alleged herein. Modern sells Agaricus mushrooms under the Modern Mushroom Farms label.

37. Defendant Sher-Rockee Mushroom Farm is located in Lincoln University, Pennsylvania, was not a member of EMMC during the Class Period, but is related through

common ownership to Modern. On information and belief, it participated in the improper conduct alleged herein.

38.    Defendant C & C Carriage Mushroom Co. ("C & C") is located in Toughkenamon, Pennsylvania, was not a member of EMMC during the Class Period, but is related through common ownership to Modern. C & C operates as a mushroom packager and broker. On information and belief it participated with Modern in the improper conduct alleged herein.

39.    Defendant Oakshire Mushroom Farm, Inc. ("Oakshire") is a vertically-integrated mushroom producer located in Kennett Square, Pennsylvania. Oakshire is a nationwide marketer and distributor, operating growing, packing, cooling, office, and warehouse facilities. Oakshire was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

40.    Defendant Phillips Mushroom Farms, Inc. ("Phillips") is a vertically-integrated mushroom producer with its principal offices located in Kennett Square, Pennsylvania. As of December 2002, Phillips was the largest supplier of specialty mushrooms in the United States, selling 35 million pounds of mushrooms annually. Phillips distributes mushrooms throughout the eastern United States. Phillips was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

41.    Defendant Harvest Fresh Farms, Inc. ("Harvest Fresh") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal place of business is located in Shoemakersville, Pennsylvania. Harvest Fresh was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

42.     Defendant Louis M. Marson, Jr., Inc. ("Marson") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal place of business is located in Kennett Square, Pennsylvania.  Marson was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

43.     Defendant Mario Cutone Mushroom Co., Inc. ("Mario Cutone") is a corporation with a place of business in Avondale, Pennsylvania.  Mario Cutone was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

44.     Defendant M.D. Basciani & Sons, Inc. ("Basciani") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal place of business is located in Avondale, Pennsylvania.  Basciani was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

45.     Defendant Monterey Mushrooms, Inc. ("Monterey") is a vertically-integrated mushroom producer with its principal offices in Watsonville, California.  Monterey was an EMMC member during the Class Period.  Monterey is a grower, processor, and shipper of mushrooms with a full line of fresh domestic and specialty mushrooms which it sells to supermarkets, foodservices, and ingredient manufacturing operations.  Monterey is the largest grower/shipper and marketer of fresh mushrooms in the United States.  Monterey boasts a workforce of approximately 3,000 employees and does nearly $300 million in annual sales. Monterey has farms in Florida, Illinois, California, Texas, Tennessee, and Pennsylvania.  In addition, Monterey also sells processed mushrooms that are canned, frozen and glass-jarred, which it processes at facilities and plants in Missouri, California, Pennsylvania, and Texas. Monterey participated in the improper conduct alleged herein.

46.    Defendant Masha & Toto, Inc. is a corporation trading as M & T Mushrooms ("M & T"). Its principal place of business is located in Avondale, Pennsylvania. M & T was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

47.    Defendant W & P Mushroom, Inc. ("W & P") is a corporation with its principal place of business in Oxford, Pennsylvania. W & P was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

48.    Defendant Mushroom Alliance, Inc. ("Mushroom Alliance") is an agricultural cooperative incorporated in Washington. Its designated registered agent is CT Corporation System, 520 Pike St., Seattle, WA 98101. The Mushroom Alliance was an EMMC member during the Class Period and participated in the improper conduct alleged herein.

49.    Defendant Creekside Mushrooms Ltd. ("Creekside") is a vertically-integrated mushroom producer and member of the Mushroom Alliance. Its principal place of business is in Worthington, Pennsylvania. Creekside grows, processes, and ships its own mushrooms to retailers and directly to consumers. Upon information and belief, Creekside participated in the improper conduct alleged herein.

50.    Defendant Kitchen Pride Mushrooms ("Kitchen Pride") has its principal place of business in Gonzales, Texas. Kitchen Pride was a member of the Mushroom Alliance when the Mushroom Alliance was a member of EMMC during the Class Period. Kitchen Pride was also itself an EMMC member during the Class Period. Kitchen Pride participated in the improper conduct alleged herein as a member of the Mushroom Alliance and as a member of the EMMC.

51.    Defendant JM Farms, Inc. ("JM Farms") is a member of the Mushroom Alliance. Its principal place of business is in Miami, Oklahoma. Upon information and belief, JM Farms participated in the improper conduct alleged herein.

52.     Defendant United Mushroom Farms Cooperative, Inc. ("United Mushroom") is a Pennsylvania agricultural cooperative with its principal place of business in Avondale, Pennsylvania. United Mushroom was an EMMC member during the Class Period, and with its members, participated in the improper conduct alleged herein.

53.     Defendant John Pia was one of the founders and president of EMMC, and is the Chief Executive Officer of defendant Kaolin, one of EMMC's members. On information and belief, John Pia participated in the improper conduct alleged herein.

54.     Defendant Michael Pia was an officer of EMMC, and is the President of defendant Kaolin, one of EMMC's members. On information and belief, Michael Pia participated in the improper conduct alleged herein.

55.     Defendants JOHN DOES 1-100 are unidentified individuals and/or entities that were members of EMMC and/or co-conspirators of the Defendants during the Class Period.

56.     Upon information and belief, each of EMMC members and nonmember third-parties identified herein actively participated in the unlawful conduct alleged herein.

## IV.     CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action as a class action pursuant to the Federal Rules of Civil Procedure 23(a) and (b)(3), on their own behalf and as representative of the following class of persons and entities ("the Class"):

> All persons and entities who purchased Agaricus mushrooms directly from an EMMC member or one of its co-conspirators or its owned or controlled affiliates, agents, or subsidiaries at any time during the period January 1, 2001 through the present (the "Class Period"). The Class excludes EMMC, its members and their parents, subsidiaries and affiliates.

58.     Joinder of all Class members is impracticable. While the size of the Class is not yet known with certainty, based on the nature of the trade and commerce involved, Plaintiffs

reasonably believe that the Class numbers potentially in the hundreds, if not thousands. Class

members are geographically dispersed throughout the United States.

59.    Questions of law and fact are common to the Class, including but not limited to:

    a.    whether the Defendants and others engaged in agreements, contracts, combinations, and conspiracies, which had the purpose and/or effect of fixing prices, unreasonably restraining competition, and limiting purchaser access to Agaricus mushrooms during the Class Period;

    b.    whether the Defendants possess monopoly power or whether they have a dangerous possibility of acquiring monopoly power;

    c.    whether Defendants' unreasonably anticompetitive agreements, contracts, combinations, and conspiracies have caused Plaintiffs and the other members of the Class to suffer antitrust injury in the nature of overcharges;

    d.    whether Defendants' unlawful conduct caused Plaintiffs and other Class members to pay more for Agaricus mushrooms than they otherwise would have paid; and

    e.    the appropriate Class-wide measure of damages.

60.    Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the other Class members are direct purchasers of the Agaricus mushrooms during the Class Period and were overcharged and thus injured by the same wrongful conduct of Defendants. Defendants' violation of the antitrust laws, the effects of such violations, and the relief sought are all issues or questions that are common to Plaintiffs and the other Class members.

61.    Plaintiffs will fairly and adequately represent the interests of all Class members. Their interests are coincident with, and not antagonistic to, the interests of the other Class members, and they have engaged counsel experienced and competent in antitrust and class litigation.

62.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual Class members. Whatever possible difficulties may

exist in the management of the class action are greatly outweighed by the advantages of the class action procedure. Those advantages include, but are not limited to, providing Class members with a method for redress of claims that might otherwise not warrant individual litigation.

63.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. A class action enables injured persons or entities to obtain redress on claims that might not be practicable to pursue individually. Class treatment also eliminates the potential for inconsistent adjudications.

## V.     TRADE AND COMMERCE

64.     In 2002, domestic sales of all mushrooms were over $800 million, with the vast majority being the common table mushroom, called the Agaricus or "white button" mushroom (agaricus bisporus). According to the United States Department of Agriculture ("USDA"), from 2001-2005, the Agaricus mushroom accounted for 98% of all mushrooms grown in the U.S. Agaricus mushrooms are sold to fresh market retailers such as grocery store chains and food distributors, and also to canneries. The Agaricus mushrooms grown by EMMC members and nonmembers were sold to both the fresh market retailers and canneries in various states, and EMMC members and nonmembers shipped mushrooms between states.

65.     The relevant antitrust product market for this antitrust action is fresh Agaricus mushrooms. The relevant geographic market for this antitrust action is the United States, or alternatively, the eastern United States.

## VI.    DEFENDANTS' ANTICOMPETIT1VE SCHEME

66.    In January 2001 several entities involved in the production, processing, and/or distribution of mushrooms formed EMMC as a pretext for a naked price-fixing and an anticompetitive supply control scheme. Shortly after its formation, EMMC's members agreed to set increased minimum prices at which its members and nonmembers would sell fresh mushrooms in six different geographic regions, covering the entire continental United States. The minimum prices that EMMC members and nonmembers agreed to charge were higher, on average, than the prices prevailing in those regions prior to EMMC's formation. The price increases averaged at least 8 percent nationwide. Various nonmembers of EMMC participated in the conspiracy to increase mushroom prices. Nonmember distributors agreed to sell at prices set by EMMC. Nonmembers involved in the land or lease option transactions agreed to deed restrictions prohibiting the use of certain properties as mushroom farms.

67.    The naked price-fixing activities of EMMC, its members, and nonmember co-conspirators were anticompetitive and predatory. EMMC performed no activities that promoted market-efficiency and had no legitimate business justification for its existence. EMMC did not collectively process, prepare for market, handle, or market any of the products of its members. EMMC existed solely for the purpose of carrying out a per se illegal naked price-fixing scheme.

68.    During the applicable Class Period, EMMC had at least two nongrower members and several members that are vertically-integrated agri-businesses. These entities were not "farmers" under the Capper-Volstead Act and their membership in EMMC forecloses any antitrust immunity under the Capper-Volstead Act for EMMC and its members individually.

69.    In order to support and maintain the artificial price increases created by their price-fixing scheme, the Defendants eliminated competing mushroom supply, which could

otherwise force down the artificially-increased prices. Within three months of instituting the price increases, the Defendants launched a campaign to control the mushroom supply by acquiring and subsequently dismantling non-EMMC mushroom growing operations. These actions did not serve, nor were they intended to serve, any legitimate or lawful purpose.

70.      Mushrooms are grown on farms, usually in one-story windowless cinder block buildings called "doubles." Doubles are kept cool and dark at an optimum ground temperature of 64 degrees year round. Mushrooms are grown in stacks of beds, usually six beds to a stack and 24 beds to a double. Once harvested, mushrooms are usually kept in refrigerated storage on the farms until packaged and shipped in refrigerated trucks to customers.

71.      Depending on the size and location, building a new mushroom growing and production facility costs millions of dollars and generally requires zoning approval. Building a new facility takes much longer to generate any revenue than purchasing or leasing an existing growing operation. By eliminating the existing available productive capacity, the Defendants substantially reduced and impeded the existence of current competition and substantially forestalled and delayed the entry of new competitors and/or the expansion of existing competitors.

72.      Through membership dues and a "Supply Control Assessment," EMMC collected approximately $6 million from its members during 2001-2002. EMMC, acting as an agent of its members, then spent approximately $3 million to purchase four mushroom farms and to acquire lease options on two additional mushroom farms in the eastern United States for the purpose of shutting them down and reducing the mushroom production capacity available for nonmember non-conspirators to grow mushrooms in competition with the Defendants.

73.      In May 2001, EMMC purchased a farm in Dublin, Georgia at a bankruptcy auction. The Dublin farm had an annual mushroom production capacity of approximately eight million pounds. At the auction, EMMC outbid a non-EMMC mushroom grower based in Colorado attempting to enter mushroom farming in the eastern United States in competition with EMMC. Three months later, EMMC entered into a land exchange with a land developer not connected to the mushroom industry, in which EMMC exchanged the Dublin farm for another mushroom farm consisting of two parcels in Evansville, Pennsylvania, plus cash. As part of the exchange, the developer agreed with EMMC to place a permanent deed restriction on the Dublin farm prohibiting the conduct of any business related to the growing of mushrooms. EMMC lost approximately $525,000 on the Dublin farm purchase and exchange transactions.

74.      Within three months of the Dublin farm/Evansville land exchange, EMMC sold the largest parcel of the Evansville, Pennsylvania farm to a third-party who agreed with EMMC to place a permanent deed restriction on the property prohibiting the conduct of any business related to the growing of mushrooms. Less than a year later, EMMC sold the second parcel to a third-party who agreed to the same permanent deed restriction. The two parcels making up the Evansville, Pennsylvania farm, with an annual mushroom growing capacity of 15 million pounds, were sold at a collective loss of $137,000.

75.      In January 2002, EMMC purchased Gallo's Mushroom Farm ("Gallo's"), in Berks County, Pennsylvania. Gallo's had an annual mushroom-growing capacity of two million pounds. Less than four months later, EMMC sold Gallo's to a third-party at a loss of $77,500. The third-party purchaser agreed with EMMC to a permanent deed restriction prohibiting the conduct of any business related to the growing of mushrooms.

25

76.     In February 2002, EMMC agreed to pay $1 million to the owners of Ohio Valley Mushroom Farms for, among other things, a non-compete agreement, a right of first refusal to lease the mushroom growing operations, a right of first refusal to purchase the properties, and the right to record a deed restriction prohibiting the conduct of any business related to mushroom growing on the property for ten years.  EMMC did not lease or purchase the property, but did file the deed restriction on the Ohio Valley Farm, which had operated as a mushroom-growing concern with annual capacity of nine million pounds.

77.     In March 2002, EMMC purchased the La Conca D'Oro mushroom farm in Berks County, Pennsylvania.  The La Conca D'Oro farm had an annual production capacity of approximately five million pounds.  EMMC sold the farm and the mushroom-growing equipment on the farm at a loss of $500,000.  The third-party purchaser agreed with EMMC to a deed restriction prohibiting anyone from conducting any business related to the growing of mushrooms on the property.

78.     In August 2002, EMMC purchased a ten-year lease option on the Amadio Farm in Berks County, Pennsylvania for $230,000.  The Amadio Farm had an annual mushroom production capacity of approximately five million pounds.  The owner of the property agreed with EMMC to the filing of a deed restriction on the property prohibiting anyone other than EMMC from conducting any business related to the growing of mushrooms for ten years. EMMC never entered into a lease on the property.

79.     As a result of the agreements between third-parties and EMMC, as an agent for its members, the deed restrictions on these six mushroom farms in the eastern United States, permitted EMMC to remove more than 42 million pounds of annual growing capacity from that region, or approximately 8 percent of the total capacity in the eastern United States.

26

80.     In addition to the farms in Pennsylvania, Georgia, and Ohio, the Defendants also implemented the Supply Control campaign to buy mushroom farms to restrict mushroom production in other states. For example, as part of its Supply Control program, EMMC acquired a farm in Hillsborough, Texas, which EMMC purchased to reduce and forestall the threat of a competitor (Stuart Thomas) from producing mushrooms in Texas. As a result of EMMC's actions in various states, EMMC eliminated at least 50 million pounds of mushroom supply, if not more. The Defendants boasted that the campaign as a whole had "[a]nnually taken over 50 million pounds out of production from facilities which could have easily been purchased and remained in production."

81.     The Defendants and non-EMMC third-parties' purpose in entering into the purchase and lease transactions was to reduce or eliminate the Agaricus mushroom growing capacity available to potential independent competitors in the United States. Eliminating or reducing growing capacity improved Defendants' ability to perpetuate its naked price-fixing scheme and maintain the artificially-inflated price increases to which they and nonmember distributors had agreed. Moreover, these land purchases and lease/option agreements did not, nor were they intended to, serve any legitimate or lawful purpose under the Capper-Volstead Act, such as the promotion of growing or marketing the Defendants' mushrooms.

82.     In addition to the property transactions and deed restrictions to restrain mushroom supply alleged above, EMMC members supported and reinforced their scheme by: (a) collectively interfering with any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by EMMC; and (b) using collective and conspiratorial acts to pressure independent growers to join EMMC and cooperate in the Defendants'

anticompetitive scheme.  Plaintiffs have yet to uncover all other actions taken by EMMC to restrict competition.

83.    In the mushroom-growing industry, growers frequently sell fresh mushrooms to each other to fill daily needs.  Because EMMC members and co-conspirators control over 60 percent of the national mushroom supply, and approximately 90 percent of the mushroom supply in the eastern United States, EMMC members were able to use their collective strength to place pressure on non-EMMC members to force independent growers to join EMMC (and thus the anticompetitive scheme) or to refrain from selling mushrooms at lower prices that would undermine the scheme.  EMMC members applied such pressure and coercion through various means, including but not limited to threatening and/or implementing a group boycott in which they would not sell mushrooms to other growers who needed them to meet short-term supply needs and/or selling mushrooms to such independent growers at inflated levels.

84.    Through the collective boycotts and other collective efforts to penalize non-EMMC members that threatened to undermine the Defendants' anticompetitive scheme, the Defendants caused the artificial inflation of prices for not only the fresh Agaricus mushrooms that the Defendants sold, but also for the fresh Agaricus mushrooms sold by non-EMMC growers.

85.    As a result of Defendants' illegal, anticompetitive conduct, on December 16, 2004, the United States Department of Justice filed a complaint against EMMC, styled *United States of America v. Eastern Mushroom Marketing Cooperative, Inc.,* Civil Case No. 2: 04-CV-S 829 (the "DOJ Complaint").  With the DOJ Complaint, the United States and EMMC filed an agreed-upon proposed Final Judgment that required EMMC to eliminate the deed restrictions from all the properties it shut down.  That Final Judgment was subsequently entered on

28

September 9, 2005. None of the documents filed by the DOJ in support of the Final Judgment identify any of the members of EMMC or consider whether they are growers. The only basis the DOJ appears to have considered for abrogating the immunity of EMMC was the predatory conduct of EMMC in buying nonmember farms and selling them to third parties who agreed to deed restrictions limiting the use of the properties for mushroom production. There is no evidence that the DOJ considered whether the members and the conduct of EMMC would otherwise be entitled to immunity. Pursuant to 15 U.S.C. § 16(a), entry of that Final Judgment does not in any way impair this action.

86.     All conditions precedent to this action have been performed or have occurred.

## VII.    FRAUDULENT CONCEALMENT

87.     Throughout the relevant period, Defendants affirmatively concealed their unlawful conduct from Plaintiffs and the other members of the Class. Plaintiffs and the other members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until approximately December 2004, when the Justice Department announced that it had filed a civil complaint against EMMC and that EMMC had consented to entry of a final judgment against it. Nor could Plaintiffs and the other members of the Class have discovered the violations earlier than that time because Defendants and their co-conspirators concealed the identity of EMMC's members, conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and attempted to conceal from public scrutiny their activities through various other means and methods designed to avoid detection. Attorneys for Plaintiffs learned the identity of EMMC's members only after filing other related and now consolidated lawsuits against EMMC.

88.     Defendants and their co-conspirators affirmatively and fraudulently concealed the existence of the violations alleged through the following actions, among others:

    a.  Concealing the identity of EMMC members, some of whom are not mushroom growers, and avoiding references or discussion in public documents of the identities of EMMC's membership and the anticompetitive scheme and acts alleged herein;

    b.  Concealing the fact that EMMC was formed solely as a pretext for naked price-fixing and that EMMC provided no market efficiencies or legitimate business value to its members or consumers;

    c.  Conducting non-public meetings and communications in which the Defendants agreed upon and implemented the scheme alleged herein;

    d.  Participating in non-public meetings and conversations to monitor and enforce adherence to the conspiracy; and

    e.  Falsely representing that EMMC members' prices were fair and competitive.

89.     As a result of Defendants' concealment, Plaintiffs and the Class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiffs and the members of the Class.  Plaintiffs exercised due diligence to learn of their legal rights, and, despite the exercise of due diligence, did not discover and could not have discovered the antitrust violations alleged above at the time they occurred.

90.     As a result of Defendants' continuing violations of federal antitrust laws and the nature of the damages to Plaintiffs and the Class, Plaintiffs assert the tolling of the applicable statute of limitations with respect to any claims and rights of action that Plaintiffs and other Class members have as a result of the unlawful contract, combination, and conspiracy alleged in this Complaint.

## VIII.    CAUSES OF ACTION

### COUNT I

### Violation of Sherman Act § 1 - Anticompetitive Conspiracy

91.      Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth at length.

92.      Defendants have used their illegal conspiracy and unlawfully-gained market power to suppress competition and harm Plaintiffs and other members of the Class by enacting an overarching, predatory, and illegal scheme to affect, fix, raise, maintain and/or stabilize at artificial and non-competitive levels, the prices of Agaricus mushrooms that were sold, distributed, or obtained in the United States.

93.      Defendants engaged in naked-price fixing.  They conspired among themselves and in conjunction with nonmember distributors to set artificially-inflated prices.  Defendants and their co-conspirators sought to exclude and penalize independent mushroom growers who failed to abide by EMMC's price dictates.  Defendants' actions constitute a conspiracy in unreasonable restraint of trade in violation Section 1 of the Sherman Act, 15 U.S.C. § 1.

94.      To form and effectuate this conspiracy, the Defendants performed multiple acts, including but not limited to the following:

    a.   meeting and agreeing to fix the price of Agaricus mushrooms;

    b.   collectively funding the Supply Control campaign;

    c.   buying multiple properties which were resold at a loss with
         permanent deed restrictions forbidding the conduct of any business
         related to the production of mushrooms;

    d.   entering into agreements with nonmembers to place deed restrictions
         on properties for which the cooperative purchased lease options;

31

    e.   filing deed restrictions on the lease-optioned properties prohibiting the conduct of any business related to the production of mushrooms for ten years; and

    f.   supporting and reinforcing the price-fixing scheme by: (i) collectively interfering with, penalizing and retaliating against any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by EMMC; and (ii) using collective and conspiratorial acts to pressure independent growers to join EMMC and the Defendants' anticompetitive scheme.

95.      In addition, the Supply Control campaign adopted and implemented by EMMC in and of itself constitutes a conspiracy between and among EMMC members and nonmember co-conspirators in unreasonable restraint of trade to prevent, forestall, and restrict competition from independent mushroom producers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

96.      EMMC was an agricultural cooperative in name only. EMMC operated as a pretext for naked price-fixing by Defendants. EMMC never engaged in collectively processing, preparing for market, handling, or marketing products of its members as envisioned by the Capper-Volstead Act, 7 U.S.C. § 291, et seq. Consequently, Defendants are not entitled to claim immunity pursuant to the Capper-Volstead Act.

97.      In addition, under the Capper-Volstead Act, farm cooperatives lose immunity from antitrust liability when they engage in exclusionary practices, monopolize trade, or suppress competition in concert with nonmembers, which is what Defendants did here. EMMC and its members conspired with nonmember distributors to engage in naked price-fixing, conspired with nonmember third-parties to eliminate mushroom supply from non-EMMC members, and/or used collective efforts to exclude and penalize non-EMMC members that charged lower prices. These actions did not, nor were they intended to, serve any legitimate or lawful purpose under the Capper-Volstead Act, such as the promotion of growing or marketing

the Defendants' mushrooms. They were predatory actions for which no immunity is available under the Capper-Volstead Act.

98.     Furthermore, under the Capper-Volstead Act, farm cooperatives are not immune from antitrust liability when even one member of the cooperative is not a "farmer" within the meaning of the Capper-Volstead Act. At least two EMMC members are not "farmers," i.e. they do not grow mushrooms. Many others are vertically-integrated agri-businesses that do not qualify as "farmers" within the meaning of the Capper-Volstead Act.

99.     The above-described illegal practices of Defendants have resulted in continuing and accumulating harm to Plaintiffs and other members of the Class by allowing Defendants to affect, fix, raise, maintain, and/or stabilize at artificial and non-competitive levels the prices at which Agaricus mushrooms were sold, distributed, or obtained in the United States. The continuing and accumulating harm suffered by Plaintiffs and the Class specifically includes being overcharged for Agaricus mushrooms as a result of Defendants' conspiracy.

100.     As a direct and proximate result of the Defendants' illegal, overarching price-fixing scheme, Plaintiffs and other members of the Class were injured in their business or property by the collusion and conspiracy alleged above which substantially foreclosed and excluded competition in the relevant markets. Without limiting the generality of the foregoing, Plaintiffs and the other members of the Class have been forced to pay higher prices for Agaricus mushrooms in the relevant market than they would have paid in the absence of Defendants' unlawful conduct.

**COUNT II**

**Violation of Sherman Act § 2 – Conspiracy to Monopolize, Monopolization, or Attempted Monopolization**

101.      Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth at length.

102.      At all relevant times, Defendants conspired to possess, possessed, or attempted to acquire monopoly power in the relevant market -- i.e., the market for Agaricus mushrooms in the United States and/or the market for Agaricus mushrooms in the eastern United States.

103.      During the relevant period, Defendants violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by willfully and unlawfully conspiring to acquire or maintain, acquiring or maintaining, and/or attempting to acquire or maintain monopoly power by, inter alia:

    a.  setting artificially-inflated prices at which mushrooms could be sold by conspiring with nonmember distributors to enact their naked price-fixing scheme;

    b.  seeking to punish and exclude independent mushroom producers who did not sell at the dictated price and/or otherwise cooperate in their anticompetitive scheme;

    c.  conducting the Supply Control campaign;

    d.  buying multiple properties and reselling them at a loss with permanent deed restrictions forbidding the conduct of any business related to the production of mushrooms;

    e.  entering into agreements with nonmembers to place deed restrictions on properties for which the cooperative purchased lease options;

    f.  filing deed restrictions on the lease-optioned properties prohibiting the conduct of any business related to the production of mushrooms; and

    g.  supporting and reinforcing the scheme by: (i) collectively interfering with, penalizing, and retaliating against any non-EMMC growers that sought to sell at prices below the artificially-inflated prices set by EMMC; and (ii) using collective and conspiratorial acts to

> pressure independent growers to join EMMC and the Defendants'
> anticompetitive scheme.

104.    As set forth herein, Defendants have used their illegal monopoly power to suppress competition and harm Plaintiffs and other members of the Class by enacting an overarching, illegal, and predatory scheme to affect, fix, raise, maintain, and/or stabilize at artificial and non-competitive levels, the prices of Agaricus mushrooms that were sold, distributed, or obtained in the United States. Alternatively, if it is determined that defendants have not yet secured monopoly power, their conduct constitutes attempted monopolization which has harmed Plaintiffs and poses a dangerous possibility of success. Through this illegal conduct, Defendants have violated Section 2 of the Sherman Act.

105.    These illegal practices of Defendants have resulted in continuing and accumulating harm to Plaintiffs and other members of the Class by allowing Defendants to affect, fix, raise, maintain, and/or stabilize at artificial and non-competitive levels the prices at which Agaricus mushrooms were sold, distributed, or obtained in the United States. The continuing and accumulating harm suffered by Plaintiffs and the Class specifically includes being overcharged for Agaricus mushrooms as a result of Defendants' monopoly or attempted monopoly.

106.    Acts of monopolization or attempted monopolization such as those of Defendants are not activities protected by the limited exemption from the antitrust laws created by the Capper Volstead Act, 7 U.S.C. § 291, et seq. Further, as discussed in greater detail in Count I, EMMC has lost any claim to immunity by allowing membership by non-grower entities, and engaging in exclusionary and anticompetitive practices with nonmember third-parties. EMMC served as a pretext for the illegal actions of the Defendants. There was no legitimate business justification for the willful conspiracy to acquire or maintain, acquisition or maintenance, and/or

35

attempted acquisition or maintenance of monopoly power by Defendants. EMMC and its actions provided no market efficiencies or other legitimate business value to members or consumers.

107.    As a direct and proximate result of the Defendants' willful conspiracy to acquire or maintain, acquisition or maintenance, and/or attempted acquisition or maintenance of monopoly power, Plaintiffs and other members of the Class were injured in their business or property because competition in the relevant markets was substantially foreclosed. Without limiting the generality of the foregoing, Plaintiffs and the other members of the Class have been forced to pay higher prices for Agaricus mushrooms in the relevant market than they would have paid in the absence of Defendants' unlawful conduct.

## COUNT III

### Violation of Clayton Act § 7 - Unlawful Acquisition

108.    Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth at length.

109.    EMMC and its members acting through EMMC, unlawfully acquired the assets of their direct competitors, as detailed above, thereby substantially lessening competition in a relevant market -- i.e., the market for Agaricus mushrooms in the United States and/or the market for Agaricus mushrooms grown in the eastern United States. This acquisition violated Section 7 of the Clayton Act, 15 U.S.C. § 18.

110.    By reason of the antitrust violations of Defendants alleged herein, the prices of the mushrooms purchased were higher than they would have been but for Defendants' violation of antitrust laws.

111.    Defendants' acquisition and holding of competitor mushroom farms violated Section 7 of the Clayton Act.

112.    As a direct and proximate result of the Defendants' acquisition of their competitors, Plaintiffs and other members of the Class were injured in their business or property by the substantial lessening of competition in the relevant markets. Without limiting the generality of the foregoing, Plaintiffs and the other members of the Class have been forced to pay higher prices for Agaricus mushrooms in the relevant market than they would have paid in the absence of Defendants' unlawful conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that the Court:

(i)    determine that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23, be given to the Class;

(ii)    rule the acts alleged herein be adjudged and decreed unlawful acts in violation of Section 1 of the Sherman Act;

(iii)    rule that the acts alleged herein be adjudged and decreed unlawful acts in violation of Section 2 of the Sherman Act;

(iv)    rule the acts alleged herein be adjudged and decreed unlawful acts in violation of Section 7 of the Clayton Act;

(v)    award each member of the Class three-fold the damages determined to have been sustained by each of them, and enter judgment against Defendants in favor of the Class;

(vi)    require Defendants to take affirmative steps to dissipate the continuing effects of their unlawful conduct; and

(vii)    award the Class its costs of suit, including reasonable attorney's fees and costs as provided by law.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: September 25, 2007

/s Barry L. Refsin
Barry L. Refsin (Pa. ID No. 62526)
Steve D. Shadowen (Pa. ID No. 41953)
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square, 27th Floor
Philadelphia, PA  19103-6933
Tel:  (215) 568-6200
Fax:  (215) 568-0300
*Liaison Counsel for Direct Purchaser Class*[2]

Bruce E. Gerstein
Noah H. Silverman
Kevin Landau
GARWIN, GERSTEIN & FISHER, L.L.P.
1501 Broadway, Suite 1416
New York, NY  10036
Tel:  (212) 398-0055
Fax:  (212) 764-6620
*Lead Counsel for Direct Purchaser Class*[2]

David P. Smith
W. Ross Foote
PERCY, SMITH & FOOTE, L.L.P.
720 Murray Street
P. O. Box 1632
Alexandria, LA  71309
Tel:  (318) 445-4480
Fax:  (318) 487-1741

---

[2] Pursuant to Orders dated June 5 and June 27, 2006 in Master File No. 06-0620.

Brent B. Barriere
David Patrón
Susie Morgan
PHELPS DUNBAR, L.L.P.
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Tel: (504) 584-9210
Fax: (504) 568-9130

Robert T. Kelly, Jr.
MYERS, BRIER & KELLY, LLP
425 Spruce Street - Suite 200
P.O. Box 551
Scranton, PA 18501-0551
Tel: (570) 342-6100
Fax: (570) 342-6147

Adam Moskowitz (FBN 984280)
Tucker Ronzetti (FBN 965723)
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce De Leon, 9th Floor
Coral Gables, Florida 33134
Tel.: (305) 372-1800
Fax: (305) 372-3508

John Gregory Odom
Stuart E. Des Roches
ODOM & DES ROCHES, L.L.P.
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078

Robert A. Kutcher
CHOPIN, WAGAR, RICHARD & KUTCHER
3850 N. Causeway Blvd., Suite 900
Metairie, LA 70002
Tel: (504) 830-3838
Fax: (504) 836-9540

Alfred G. Yates
LAW OFFICE OF ALFRED G. YATES JR PC
519 Allegheny
Building 429 Forbes Avenue
Pittsburgh, PA 15219
Tel: (412) 391-5164
Fax: (412) 471-1033

Manuel J. Dominguez (FBN: 0054798)
BERMAN DeVALERIO PEASE TABACCO BURT &
PUCILLO
222 Lakeview Avenue, Suite 900
West Palm Beach, FL 33401
Tel:  (561) 835-9400
Fax:  (561) 835-0322

*Attorneys for Plaintiffs Wm. Rosenstein & Sons,
Diversified Foods & Seasonings, Inc., Robert Altman,
M.L. Robert, II, L.L.C., M. Robert Enterprises, Inc.,
Market Fair, Inc., Associated Grocers, Inc., Theodore J.
Katsiroubas and Sons, Inc. d/b/a Katsiroubas Brothers
Wholesale Fruit and Produce, and Native Maine Produce
and Specialty Foods, LLC*

Anthony J. Bolognese (AJB 3935)
Joshua H. Grabar (JHG 1707)
BOLOGNESE & ASSOCIATES, LLC
One Penn Center Plaza
1617 JFK Blvd., Suite 650
Philadelphia, PA 19103
Tel: (215) 814-6750
Fax: (215) 814-6764

Linda P. Nussbaum
KAPLAN, FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, NY  10022
Tel:  (212) 687-1980
Fax:  (212) 687-7714

Paul E. Slater
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3300
Chicago, IL 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
***Attorneys for Plaintiffs Meijer, Inc. and Meijer
Distribution, Inc.***

Eugene A. Spector (Pa I.D. No. 13616)
Jeffrey L. Kodroff (Pa I.D. No. 55780)
Jeffrey J. Corigan
Jay S. Cohen (Pa I.D. No. 19333)
SPECTOR ROSEMAN & KODROFF
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611

Nathan Neuman
LAW OFFICES OF NATHAN NEUMAN
700 Lake Drive
Ambler, PA 19002
Tel: (215) 646-9520
Fax: (215) 646-9521
***Attorneys for Plaintiff All American Mushroom, Inc.***

41