IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: MUSHROOM DIRECT | : | Master File No. 06-cv-0620 |
| PURCHASER ANTITRUST LITIGATION | : | |
| | : | |
| THIS DOCUMENTS RELATES TO: | : | No. 06-cv-3523 |
| Giant Eagle, Inc., et al. v. EMMC, Inc., | : | |
| et al., No. 06-3523 | : | |

O'NEILL, J.                                                                          MARCH 3 , 2008

## MEMORANDUM

On August 7, 2006 the action of plaintiffs Giant Eagle, Inc. and Topco Associates LLC, originally filed in the United States District Court for the Western District of Pennsylvania, was transferred to this Court. Plaintiffs filed an amended complaint on June 14, 2007, and on June 27, 2007 plaintiffs' action was consolidated with the putative class actions and individual actions pending under Master File No. 06-CV-0620 by my prior Order of June 5, 2006. Before me now is defendant M.D. Basciani & Sons, Inc.'s motion to dismiss plaintiffs' amended complaint, plaintiffs' response, defendant's reply and plaintiff Topco's surreply.

## BACKGROUND

Plaintiff Giant Eagle is a Pennsylvania corporation engaged in the retail grocery supermarket business and by itself and through its subsidiaries owns, operates and licenses over 200 supermarkets in Pennsylvania, Ohio, West Virginia and Maryland. According to plaintiffs' amended complaint, Giant Eagle annually purchases nearly seven million dollars of fresh and canned mushrooms for resale to the public. Plaintiffs allege that most if not all of these mushrooms are purchased from defendants the Eastern Mushroom Marketing Cooperative and its members, including defendant Basciani, through plaintiff Topco. Topco is a Delaware limited

1

liability company and buying cooperative that provides procurement, quality assurance, packaging and other services to its member-owners, including Giant Eagle.  Plaintiffs allege that as a privately-held cooperative Topco distributes substantially all of its earnings to its member-owners based on level of participation and thus has no conflicting profit motive.  Plaintiffs allege that at all times relevant hereto Topco acted on behalf of Giant Eagle and its other members in purchasing mushrooms from defendants.

Plaintiffs' amended complaint alleges claims against all defendants pursuant to Section 1 of the Sherman Act, 15 U.S.C. § 1; Section 7 of the Clayton Act, 15 U.S.C. § 18; and the Ohio Valentine Act, Ohio Revenue Code §§ 1331.01 et seq.  Plaintiffs' amended complaint further alleges a claim against the EMMC pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2.  According to plaintiffs' complaint, the antitrust action arises from defendants' collective implementation of a "supply control" campaign to impede and forestall competition in the market for agaricus mushrooms, thus enabling defendants to maintain artificially inflated prices for agaricus mushrooms in the United States.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiffs' complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief."  Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though

plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Nami, 82 F.3d at 65, citing Scheuer, 416 U.S. at 236.

DISCUSSION

Defendant Basciani moves to dismiss plaintiffs' complaint on two grounds: (1) plaintiff Giant Eagle, as an indirect purchaser, lacks standing to bring claims under the federal antitrust laws and the Ohio Valentine Act; and (2) plaintiffs' complaint fails to state a claim against defendant Basciani upon which relief can be granted. I will discuss defendant's arguments in turn.

I.      Plaintiff Giant Eagle's Standing

To satisfy the constitutional requirements for standing, a plaintiff must allege: (1) injury in fact; (2) a causal nexus between the injury and the challenged conduct; and (3) the likelihood that a favorable judicial decision will redress the injury. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 175 (3d Cir. 2001). These requirements ensure that a plaintiff has a "personal stake" in the outcome of the proceedings. See, e.g., Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38-40 (1976).

In antitrust cases the Supreme Court has noted that "[h]arm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." Alberta Gas Chems. Ltd. v. E.I. Du Pont Denemours & Co., 826 F.2d 1235, 1239 (3d Cir. 1987), quoting Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 535 n.31 (1983).

Defendant Basciani contends that plaintiff Giant Eagle, as an indirect purchaser, lacks standing to bring claims under the federal antitrust laws and the Ohio Valentine Act. Basciani relies upon Illinois Brick Co. v. Illinois, 431 U.S. 720, 744 (1977), for the proposition that only overcharged direct purchasers have standing to bring federal antitrust damages claims pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15. Under Illinois Brick and subsequent cases, there are "two narrowly-defined, exceptional situations" in which indirect purchasers have standing to pursue an antitrust claim: (1) where either the alleged violator or the indirect purchaser owns or exerts control over the intermediary; and (2) where the indirect purchaser has a pre-existing, cost-plus contract for fixed quantities of goods. Fisher v. Wattles, 639 F. Supp. 7, 8 (M.D. Pa. 1985) (citing cases). Plaintiffs argue that both the control and the cost-plus contract exceptions apply to confer standing upon Giant Eagle.

The Court of Appeals has stated that the "'control exception' to Illinois Brick 'might' permit an indirect purchaser to sue an initial seller when the initial seller 'own[s] or control[s]' the direct purchaser." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 424 F.3d 363, 371 (3d Cir. 2005), quoting Illinois Brick, 431 U.S. at 736 n.16. In Hess the Court noted that it has "applied the control exception only when the initial seller owned the direct purchaser." Id.

(citing cases). The Court also recognized that other courts "that have extended the control exception beyond a parent-subsidiary relationship still require 'relationships involving such functional economic or other unity between the direct purchaser and either the defendant or the indirect purchaser that there effectively has been only one sale.'" Id. at 372, quoting Jewish Hosp. Ass'n of Louisville, Ky. v Stewart Mech. Enters., 628 F.2d 971, 975 (6th Cir. 1980); see also Fisher, 639 F. Supp. at 9 (asserting that plaintiffs must show "such significant control" that the two companies are "virtually the same entity" to fall within the control exception).

It is unknown at this time whether plaintiffs can demonstrate that Giant Eagle owned or controlled Topco, or whether there was functional economic or other unity between Topco and Giant Eagle such that there effectively was only one sale. Because plaintiffs' amended complaint sufficiently alleges that Topco acted as Giant Eagle's agent in purchasing mushrooms from defendants and that there existed economic unity among Topco and its "owner-members," I will not grant defendant Basciani's motion to dismiss on standing grounds. Because I find that the control exception may apply to this case and thus defendant's motion to dismiss should not be granted on standing grounds, I need not consider plaintiff's additional arguments with respect to standing.[1]

---

[1]Plaintiffs also argue that they are entitled to offer evidence to support their claim that the cost-plus exception applies. In Illinois Brick the Supreme Court established an exception that confers standing upon companies for indirect purchases made pursuant to a pre-existing, fixed-quantity, cost-plus contract. 431 U.S. at 736 (finding the exception applies where a contract insulates a direct purchaser "from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price"). Plaintiff alleges that Topco, as Giant Eagle's purchasing agent, was insulated from any decrease in sales as a result of attempting to pass on the grower's overcharge, and therefore this exception applies. I need not determine whether the cost-plus exception applies at this stage of the litigation.

Plaintiff Giant Eagle additionally contends that it has standing here because Topco has

II.     Plaintiff's Statement of a Claim

Defendant also asserts that: (1) defendant cannot be sued as a member of the EMMC pursuant to state corporation law; (2) plaintiffs' amended complaint does not state a claim under Section 1 of the Sherman Act and the Ohio Valentine Act; and (3) plaintiffs' amended complaint does not state a claim under Section 7 of the Clayton Act.  I will discuss each of these arguments in turn. I note here that the Court of Appeals has discouraged dismissals of antitrust claims at the pleading stage.  See Brader v. Allegheny Gen. Hosp., 64 F.3d 869, 876 (3d Cir. 1995); see also Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 746 (1976) (holding that in antitrust cases, where "proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly").  However there is no per se rule that antitrust claims are not subject to summary disposition, and courts have not hesitated to dismiss antitrust claims at the pleading stage when proper.  See, e.g., Associated Gen. Contractors of Cal., 459 U.S. at 528 n.17 ("Certainly in a case of this magnitude, a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

A.     State Corporation Law

Defendant first contends that plaintiffs' amended complaint fails to state a claim because state corporate law insulates it from liability.  Under Pennsylvania law, "[a] member of a

---

assigned its interest in all antitrust claims arising from Giant Eagle's purchase of mushrooms through Topco.  Under Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp., express assignments of antitrust claims from a direct purchaser to an indirect purchaser are permissible and do not run afoul of Illinois Brick's standing requirements. 995 F.2d 425, 438-39 (3d Cir. 1993) ("Under controlling federal law . . . antitrust claims are assignable.").  I need not address the validity and the effect of this assignment at this time.

nonprofit corporation shall not be liable, solely by reason of being a member, under an order of a court or in any other manner for a debt, obligation or liability of the corporation of any kind or for the acts of any member or representative of the corporation." Pa. Cons. Stat. § 5552(a).

Contrary to defendant's contention that "the gravamen of the Complaint is the purchase or lease or deed restriction of land to allegedly support a lawful price increase by the EMMC," plaintiffs' amended complaint alleges conspiratorial activities engaged in by the EMMC and member defendants including defendant Basciani. Because plaintiffs seek to impose liability on defendant not solely by reason of its membership, state corporate law is not a basis for dismissing plaintiffs' amended complaint.

B.      Section 1 of the Sherman Act

Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. In their amended complaint plaintiffs allege that the "supply control" campaign adopted and implemented by defendants constitutes a conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. To establish a violation of Section 1 of the Sherman Act, plaintiffs must allege and eventually prove: (1) concerted action by defendants (2) that produced anti-competitive effects within the relevant product and geographic markets (3) and that involved illegal conduct or purpose (4) proximately caused injury to plaintiffs. See Gordon v. Lewistown Hosp., 423 F.3d 184, 207 (3d Cir. 2005); Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 639 (3d Cir. 1996).

The essence of a Section 1 claim is the existence of an agreement. Gordon, 423 F.3d at 207, citing Mathews, 87 F.3d at 639. "Concerted action is established where two or more

distinct entities have agreed to take action against the plaintiff. Accordingly, it requires proof of a causal relationship between pressure from one conspirator and an anticompetitive decision of another conspirator." Id. (citations omitted). "[M]ere unilateral or independent activity, whatever its motivation, cannot give rise to an antitrust violation." Arnold Pontiac-GMC, Inc. v. Gen. Motors Corp., 786 F.2d 564, 572 (3d Cir. 1986). "The officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing different goals." Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769 (1984) ("[I]t is perfectly plain that an internal 'agreement' to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police."). The Supreme Court has determined that agricultural cooperatives, like corporations, do not have the plurality of actors necessary for a Section 1 conspiracy. See Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co. (Sunkist I), 370 U.S. 19, 27-29 (1962) (holding that 12,000 growers organized into three legal entities constituted in practical effect and in the contemplation of the statutory exemption one organization or association incapable of conspiracy under antitrust laws).

Defendant argues that plaintiffs fail to allege concerted action as they bring their claims against a single entity: an agricultural cooperative and its members. Specifically, defendant asserts that "the only way an agricultural cooperative, its members and its officers could be liable for antitrust conspiracy based upon concerted action would be if they conspired with an entity outside of the cooperative." Plaintiffs allege not only that certain members of EMMC were not engaged in agricultural production, but also that defendants entered into multiple agreements with other persons or entities not engaged in agricultural production. I find that plaintiffs should

be given the opportunity to present evidence to support these allegations. At this stage of the litigation I do not consider whether plaintiffs ultimately will satisfy the concerted action requirement but merely conclude that plaintiffs have pled sufficiently concerted action to defeat defendant's motions to dismiss on these grounds. Further, plaintiffs adequately define the relevant product market[2] and the relevant geographic market and state facts from which antitrust injury may be inferred. Plaintiffs allege that defendant's conduct was illegal and proximately caused injuries to plaintiffs' businesses and properties. Because I find that plaintiffs have pled sufficiently all elements of a Section 1 claim, I will deny defendant's motion to dismiss this claim.[3]

C.   Section 7 of the Clayton Act

Plaintiffs allege that defendants unlawfully acquired the assets of their direct competitors, thereby substantially lessening the competition in the market for agaricus mushrooms in the United States and/or the market for agaricus mushrooms in the eastern United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. Section 7 makes it unlawful for a person to acquire the assets of another person where the acquisition may have anticompetitive effects:

> No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share

---

[2] Defendant challenges plaintiffs' definition of the relevant product market in the context of its motion to dismiss plaintiffs' claim pursuant to Section 7 of the Clayton Act. I discuss plaintiffs' allegations regarding the relevant product market below.

[3] The Ohio Valentine Act, Ohio Revenue Code §§ 1331.01 et seq., is modeled after and interpreted in accordance with Section 1 of the Sherman Act. See Care Heating & Cooling, Inc. v. Am. Standard, Inc., 427 F.3d 1008, 1012 n.1 (6th Cir. 2005) ("Ohio's antitrust statute, the Valentine Act, was modeled after the Sherman Act, and the Ohio Supreme Court has interpreted the Valentine Act in light of federal decisions construing the Sherman Act."). Therefore, I likewise will deny defendant's motion to dismiss plaintiffs' claim under the Ohio Valentine Act.

> capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of one or more persons engaged in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of they country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

15 U.S.C. § 18.  In <u>United States v. Columbia Pictures Corp.</u> the Court stated that "[t]he statute imposes no specific method of acquisition.  It is primarily concerned with the end result of a transfer of a sufficient part of the bundle of legal rights and privileges from the transferring person to the acquiring person to give the transfer economic significance and the proscribed adverse 'effect.'"  189 F. Supp. 153, 182 (S.D.N.Y. 1960).

Defendant Basciani argues that the Section 7 claim against defendant EMMC should be dismissed because there is no allegation that defendant acquired the assets of another corporation.  Defendant deems this omission to be fatal to plaintiffs' Section 7 claim against it and argues that as a mere member of a cooperative it cannot be held liable under Section 7 for that cooperative's acquisitions.  I find that it would be premature to dismiss the Section 7 claim against defendant Basciani on this ground.  Despite defendant's contentions, plaintiffs' amended complaint alleges that defendant and its fellow EMMC member defendants engaged in something more than mere membership in the EMMC and that the EMMC, in acquiring the parcels of land at issue, acted "as an agent of its members."  Plaintiffs are entitled to offer evidence to support their allegations and to determine whether the member defendants including defendant Basciani transferred or received any legal rights and privileges as a result of any land transactions at issue in this case.  I will not rely on the dictionary definition of the term "acquire" to dismiss plaintiffs' claim at this stage of the litigation.  Instead, I will allow discovery on the

precise nature of the acquisitions in this case and the corresponding roles of the member defendants including defendant Basciani.

Defendant also contends that plaintiffs' claim under Section 7 of the Clayton Act should be dismissed because their amended complaint fails to identify a relevant product market. Defendant further argues that plaintiffs fail to acknowledge the potential interchangeability of fresh agaricus mushrooms with other mushroom products. A product market is defined as "those commodities reasonably interchangeable by consumers for the same purposes." Tunis Bros. v. Ford Motor Co., 952 F.2d 715, 722 (3d Cir. 1991). The Court of Appeals has noted that "in most cases, proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers." Queen City Pizza, Inc. v. Domino's Pizza, Inc.,124 F.3d 430, 436 (3d Cir. 1997). The outer boundaries of the relevant product market are to be "determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." Id., quoting Brown Shoe Co. v. U.S., 370 U.S. 294, 325 (1962); Tunis Bros., 952 F.2d at 722. In other words, the alleged product market must include all commodities that are reasonably interchangeable by consumers for the same purposes. Eichorn v. AT&T Corp., 248 F.3d 131, 147 (3d Cir. 2001), citing Queen City Pizza, 124 F.3d at 436 ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.").

I find that plaintiffs have defined sufficiently a relevant product market to survive

defendant's motions to dismiss. The relevant product market alleged in plaintiffs' amended complaint is the market for fresh and canned agaricus mushrooms grown in the United States and/or the market for fresh and canned agaricus mushrooms grown in the eastern United States. Plaintiffs' amended complaint asserts that "approximately 66 percent of the domestic agaricus mushrooms grown in the United States are grown in the eastern United States" and that during the 2001-2002 season EMMC members controlled ninety percent of agaricus mushrooms grown in the eastern United States and over sixty percent of agaricus mushrooms grown in the United States as a whole. Plaintiffs' amended complaint alleges that agaricus mushrooms of better quality are sold to fresh market retailers while lesser quality agaricus mushrooms are sold as canned, and further alleges that the majority of agaricus mushrooms grown by EMMC members such as defendant Basciani are sold as fresh. Neither other derivative products nor other mushroom varieties increase or decrease the supply of fresh or canned agaricus mushrooms, and only discovery will reveal whether the commercial realities faced by consumers require their inclusion in the relevant product market.

     An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE MUSHROOM DIRECT PURCHASER ANTITRUST LITIGATION | : : : : | Master File No. 06-cv-0620 |
| THIS DOCUMENT RELATES TO: Giant Eagle, Inc., et al. v. EMMC, Inc., et al., No. 06-cv-3523 | : : : | No. 06-cv-3523 |

ORDER

AND NOW, this 3rd day of March 2008, upon consideration of defendant M.D. Basciani & Sons, Inc.'s motion to dismiss plaintiffs' amended complaint, plaintiffs' response, defendant's reply and plaintiff Topco's surreply. it is ORDERED that defendant's motion is DENIED.

           s/Thomas N. O'Neill, Jr.
           THOMAS N. O'NEILL, JR., J.