**CONFIDENTIAL – FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE MUSHROOM DIRECT PURCHASER ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | : Master File No. 06-0620<br>:<br>: Nos. 06-0638; 0-0657; 06-0677;<br>: 06-0861; 06-0932 (Publix); 06-1464;<br>: 06-1854; 06-3523 (Giant Eagle);<br>: 06-4829<br>:<br>: **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF
THE MUSHROOM ALLIANCE'S MOTION FOR SUMMARY JUDGMENT**

Mushroom Alliance, Inc. (the "Mushroom Alliance"), by its undersigned counsel, submits the following memorandum of law in support of its motion for summary judgment.

**I.     INTRODUCTION**

The Mushroom Alliance is entitled to summary judgment on plaintiffs' conspiracy claims. The Mushroom Alliance joins the Eastern Mushroom Marketing Cooperative, Inc.'s (the "EMMC") motion for summary judgment and incorporates that motion herein. The EMMC is a valid Capper-Volstead agricultural cooperative and is immune from plaintiffs' conspiracy claims.

In addition, the Mushroom Alliance submits this separate motion for summary judgment. As set forth more fully herein, the Mushroom Alliance is also a Capper-Volstead agricultural cooperative. The Mushroom Alliance was, for a short time, a member of the EMMC. However, because members of a cooperative cannot conspire with the cooperative or the other cooperative members, plaintiffs cannot establish their conspiracy claims and the Mushroom Alliance is entitled to summary judgment. Even if plaintiffs were able to establish that the EMMC conspired with some other entity (which it did not), the Mushroom Alliance cannot be liable for the obligations of the EMMC simply based on its membership in the EMMC.

PHIL1 792134-1

Finally, it appears plaintiffs will argue that purported coercion directed at Creekside Mushrooms, Ltd. ("Creekside"), a Mushroom Alliance member, abrogates the EMMC's Capper-Volstead immunity. The Mushroom Alliance is unaware of any alleged coercion against Creekside and does not agree that any coercion occurred. However, as discussed more fully below, if the Court finds Creekside was coerced, that alleged coercion was the direct result of the Mushroom Alliance's withdrawal from the EMMC. The Mushroom Alliance should not be punished for alleged coercive threats made as a result of the Mushroom Alliance's withdrawal from the EMMC.

## II. BACKGROUND

The Mushroom Alliance is a Capper-Volstead agricultural cooperative incorporated in the State of Washington in 1997. Declaration of Daniel Lucovich dated July 1, 2008 (the "Lucovich Decl.") filed contemporaneously herewith under seal at ¶ 2. During the period at issue in this litigation, the Mushroom Alliance had six members: Creekside, Country Fresh Mushroom Co. ("Country Fresh"), J-M Farms, Inc. ("J-M"), Kaolin Mushroom Farms, Inc. ("Kaolin"), Franklin Farms, Inc. ("Franklin"), and Kitchen Pride Mushroom Farms, Inc. ("Kitchen Pride"). Lucovich Decl. at ¶ 3.

Every member of the Mushroom Alliance is a mushroom farmer/grower. Lucovich Decl. at ¶ 3. Deposition of Roger Claypoole dated May 14, 2008 (Borger Decl., Ex. B) at 13-14.[1] Country Fresh is itself a Capper-Volstead agricultural cooperative composed of mushroom farmer/growers. Lucovich Decl. at ¶ 3; Claypoole Tr. at 14. Deposition of Edward Leo dated May 13, 2008 (Borger Decl., Ex. C) at 84:13-19 ("And I can tell you at no time did we [Country Fresh] have anybody as a shareholder who was never growing mushrooms.")

---

[1] All deposition testimony cited herein is attached to the Declaration of Matthew J. Borger dated July 1, 2008 (the "Borger Decl.") being filed contemporaneously herewith under seal.

2

The Mushroom Alliance was formed to market and supply mushrooms to retailers and foodservice distributors operating on a national level. Lucovich Decl. at ¶ 4. During the period at issue, the Mushroom Alliance had agreements with two national organizations: Wal-Mart – one of the country's largest retailers – and Pro*Act – a national food purchasing cooperative. Lucovich Decl. at ¶ 4.

Through its farmer members, the Mushroom Alliance has a presence in Texas (Kitchen Pride), Oklahoma (J-M), Western Pennsylvania (Creekside), Connecticut (Franklin), and Eastern Pennsylvania (Country Fresh and Kaolin). Lucovich Decl. at ¶ 5. Because of its extensive geographic coverage, the Mushroom Alliance is able to service the Wal-Mart and Pro*Act accounts throughout the country. Lucovich Decl. at ¶ 5.

The Mushroom Alliance joined the EMMC in early 2001. Lucovich Decl. at ¶ 6. Beginning in September 2001, several months later, the Mushroom Alliance began a process of withdrawing from the EMMC. Lucovich Decl. at ¶ 6. One of the Mushroom Alliance members, Creekside, determined that it did not want the Mushroom Alliance to be an EMMC member. Lucovich Decl. at ¶ 6. The Mushroom Alliance members discussed the issue at a September 10, 2001 Special Board Meeting. Lucovich Decl. at ¶ 6. Dan Lucovich, president of the Mushroom Alliance explained Creekside's position regarding EMMC membership the following day at a September 11, 2001 EMMC meeting. Lucovich Decl. at ¶ 6.

On October 26, 2001, Michael Finio, the EMMC's counsel, wrote to the Mushroom Alliance through Mr. Lucovich regarding Creekside's concerns, the Mushroom Alliance's membership in the EMMC, and the Mushroom Alliance's potential withdrawal. Mr. Finio explained that "the [Mushroom] Alliance, and not Creekside [wa]s a member of the EMMC." Lucovich Decl., Ex. D at 2. Mr. Finio continued by explaining that pursuant to the EMMC's

PHIL1 792134-1

membership agreement, the Mushroom Alliance could only withdraw from the EMMC by giving notice between June 15 and July 1, and such withdrawal would be effective the following September 1. In other words, Mr. Finio explained if the Mushroom Alliance was going to withdraw it would have to give notice between June 15, 2002 and July 1, 2002 and the withdrawal would take effect on September 1, 2002. Lucovich Decl. at ¶ 7, Ex. D. The Mushroom Alliance would not be allowed to withdraw prior to September 1, 2002. Id.

The Mushroom Alliance voted to formally withdraw from the EMMC at its February 21, 2002 Annual Meeting. Lucovich Decl. at ¶ 8; Deposition of Darrell McLain dated April 18, 2008 (Borger Decl., Ex. D) at 109-110. The Mushroom Alliance gave notice to the EMMC and withdrew from the EMMC effective September 1, 2002. Lucovich Decl. at ¶ 8. McLain Tr. at 109-110.

### III. ARGUMENT

Phase 1 discovery has closed and it is now apparent that the Mushroom Alliance is entitled to summary judgment.

#### A. Legal Standard

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. "Where the nonmoving party bears the burden of proof at trial, the moving party may meet its burden by showing that the nonmoving party has

not offered evidence sufficient to establish the existence of an element essential to its case." Matthews v. Lancaster Gen. Hosp., 87 F.3d 624, 639 (3d Cir. 1996) (citing, Celotex, 477 U.S. at 322).

In an antitrust case such as this, the plaintiff must establish the defendant entered into an illegal conspiracy that caused plaintiff to suffer a cognizable injury. Cosmetic Gallery, Inc. v. Schoeneman Corp., 495 F.3d 46, 51 (3d Cir. 2007). Once a motion for summary judgment is made, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The nonmoving party cannot oppose summary judgment by relying solely on conclusory unsupported allegations in its complaint. Celotex, 477 U.S. at 324; In re Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) (A party opposing summary judgment must do more than "merely mak[e] allegations."). Rather, when "the nonmoving party will bear the burden of proof at trial on a dispositive issue," that party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

In an antitrust case in which a defendant alleges Capper-Volstead immunity, summary judgment should be granted where "the prohibitions . . . of the Sherman Act are inapplicable . . . because the cooperative's activities fall squarely within the antitrust exemptions of the Clayton and Capper-Volstead Acts." Bell v. Fur Breeders Agricultural Cooperative, 348 F.2d 1224, 1235 (10th Cir. 2003).

PHIL1 792134-1

B.  **The Mushroom Alliance Is A Valid Capper-Volstead Cooperative**

There can be no genuine issue of material fact regarding the Mushroom Alliance's qualification as a valid Capper-Volstead cooperative. Every member of the Mushroom Alliance is a mushroom farmer/grower. Lucovich Decl. at ¶ 3.[2] The Mushroom Alliance By-Laws require that only entities "engaged in the production of agricultural products, may be members" of the cooperative. Lucovich Decl., Ex. B, Section 2.1. Pursuant to its By-Laws, if any member of the Mushroom Alliance ceased being a mushroom grower, that entity's membership in the Mushroom Alliance would automatically terminate. Lucovich Decl., Ex. B, Section 2.5(b). Cf. Nat'l Farmers Org. v. Assoc. Milk Producers, Inc., 687 F.2d 1173, 1185 (8th Cir. 1982) (upholding Capper-Volstead immunity and noting that the cooperative's by-laws "ma[de] clear that any member who quits farming 'shall automatically cease to be a member, and his or her membership agreement shall become null and void.' Such bylaws also restrict membership to those engaged in actual production of agricultural products.")

It is well-established that a cooperative of farmer/growers may, in turn, be a member of a Capper-Volstead agricultural cooperative. Nat'l Farmers Org., 687 F.2d at 1182 (8th Cir. 1982) citing Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co., 370 U.S. 19, 29 (1962) (Sunkist I); Fairdale Farms, Inc. v. Yankee Milk, Inc., 635 F.2d 1037, 1039-40 (2d Cir. 1980) citing Sunkist I (granting summary judgment against plaintiff on its Section 1 claim and holding defendant Regional Cooperative Marketing Agency, Inc. to be a valid agricultural marketing cooperative formed by Yankee Milk, Inc. – itself a Capper-Volstead agricultural cooperative – and six other area cooperatives).

---

[2] Country Fresh, one of the Mushroom Alliance members, is also a Capper-Volstead cooperative composed of mushroom farmer/growers. Lucovich Decl. at ¶ 3; Leo Tr. at 84.

6

Thus, the Mushroom Alliance was a proper member of the EMMC and Country Fresh is a proper member of the Mushroom Alliance. Nat'l Farmers Org., 687 F.2d at 1182; Fairdale Farms, 635 F.2d at 1039-40.

### C. Members of A Cooperative Cannot Conspire With The Cooperative Or With Themselves

Plaintiffs' conspiracy claims must fail to the extent they are predicated on internal EMMC acts. As a matter of law, a conspiracy cannot be based on an agreement between a corporation and its officers, agents, members or employees. Green v. Assoc. Milk Producers, Inc., 692 F.2d 1153, 1156-57 (8th Cir. 1982). The Mushroom Alliance is entitled to summary judgment on plaintiffs' conspiracy claims.

Plaintiffs' conspiracy claims require proof of concerted action between two more actors. As the Court observed in its April 25, 2007 Memorandum Decision on defendants' motions to dismiss,

> "Concerted action is established where two or more distinct entities have agreed to take action against the plaintiff. Accordingly, it requires proof of a causal relationship between pressure from one conspirator and an anticompetitive decision of another conspirator." Gordon v. Lewistown Hosp., 423 F.3d 184, 207 (3d Cir. 2005). "Mere unilateral or independent activity, whatever its motivation, cannot give rise to an antitrust violation." Arnold Pontiac-GMC, Inc. v. Gen. Motors Corp., 786 F.2d 564, 572 (3d Cir. 1986).

4/25/2007 Mem. Dec. at 20.

But, a cooperative and its members are considered a single entity for purposes of the antitrust laws. Green, 692 F.2d at 1157 ("AMPI and its members are considered a single entity for purposes of the antitrust laws and, consequently, incapable of conspiring with each other."). Thus, "[c]ooperatives, like corporations, do not have the plurality of actors necessary for a Section 1 conspiracy." Bell, 348 F.3d at 1233. See also, Copperweld Corp. v. Independence

7

Tube Corp., 467 U.S. 752, 769 (1984) ("[I]t is perfectly plain that an internal 'agreement' to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police.").

The same analysis applies to Capper-Volstead agricultural cooperatives. Bell, 348 F.3d at 1232-33; United Egg Producers v. Bauer Int'l Corp., 312 F. Supp. 319, 320 (S.D.N.Y. 1970). In short, the Mushroom Alliance is entitled to summary judgment because plaintiffs' conspiracy claims appear to be predicated on internal EMMC acts. There is absolutely no evidence in the discovery record that the Mushroom Alliance conspired with any third-party or was an active participant in any conspiracy.

### D. The Mushroom Alliance Cannot Be Liable For The EMMC's Conduct Simply Because It Was An EMMC Member

Even if plaintiffs could establish a conspiracy between the EMMC and some third-party (which they cannot), the Mushroom Alliance is still entitled to summary judgment. The Mushroom Alliance cannot be held liable for acts of the EMMC simply because it was an EMMC member.

It is beyond peradventure that members of a cooperative, like shareholders of a corporation, are shielded from personal liability for the acts of the cooperative or the corporation. See, e.g., 15 Pa. C.S. §§ 1526 (shareholder of corporation not liable for debts of corporation); 5552(a) (members of a nonprofit corporation not personally liable for the debts of the corporation).

In this case, the EMMC is a not-for-profit agricultural cooperative incorporated in the Commonwealth of Pennsylvania. Amended Compl at ¶ 21. Pursuant to Pennsylvania law, the Mushroom Alliance cannot be liable for the debts of the EMMC. 15 Pa. C.S. § 5552(a) ("The members of a nonprofit corporation shall not be personally liable for the debts, liabilities or

obligations of the corporation."). The Mushroom Alliance is entitled to summary judgment on plaintiffs' conspiracy claims because it simply cannot be held liable for the acts of the EMMC.

To establish a conspiracy claim against the Mushroom Alliance, plaintiffs must come forward with specific evidence that the Mushroom Alliance conspired with a third-party. Anderson, 477 U.S. at 250; Cosmetic Gallery, 495 F.3d at 51; In re Ikon Office Solutions, 277 F.3d at 666. The Mushroom Alliance cannot be liable for acts of the EMMC.

### E.  The Mushroom Alliance Should Not Be Punished For Alleged Coercive Acts Directed At Creekside

Finally, it appears plaintiffs will argue that the EMMC is not entitled to Capper-Volstead immunity based on purported coercive or retaliatory acts that were allegedly directed at Creekside. For instance, plaintiffs may allege the EMMC or its members attempted to coerce Creekside to join the EMMC after the Mushroom Alliance began the process of withdrawing from the EMMC.

Even if plaintiffs allege issues of material fact exist regarding such purported Creekside coercion, the Mushroom Alliance is still entitled to summary judgment. The alleged coercion upon which plaintiffs may rely all occurred (if at all) after the Mushroom Alliance began the process of withdrawing from the Mushroom Alliance in September 2001. The Mushroom Alliance should not be punished now for alleged coercion or threats of coercion that were prompted by the Mushroom Alliance's withdrawal from the EMMC.

The EMMC addresses these alleged coercive acts in its brief and questions whether they, in fact, occurred. See EMMC Brief Section VII.B. The Mushroom Alliance joins in the EMMC's motion. For purposes of this motion, the Mushroom Alliance simply highlights the fact that, these purported threats all allegedly were made after September 2001 when Creekside

expressed its dissatisfaction with the EMMC and the Mushroom Alliance began the process of withdrawing from the EMMC.

For instance, in his declaration, Roger Claypoole, former President of Creekside alleged that in 2001 and 2002, he

> received repeated telephone calls from John Pia and Charles Ciarocchi urging Creekside to join the EMMC. In these calls messrs. Pia and Ciarocchi threatened to "isolate" growers outside of the EMMC and to undercut non-members through predatory pricing in the non-members' primary markets.

Declaration of Roger Claypoole dated December 20, 2007 (Borger Decl., Ex. A) at ¶ 3. At his deposition, Mr. Claypoole explained that the phone calls and purported threats he received were the result of and occurred after Creekside explained its dissatisfaction with the EMMC and the Mushroom Alliance started the process of withdrawing from the EMMC. Claypoole Tr. at 108. Simply put, after it was clear that the Mushroom Alliance was going to withdraw, the EMMC wanted Creekside to join individually. Cf. Deposition of Jurgersmeyer dated February 18, 2008 (Borger Decl., Ex. E) at 108:16-19 ("So when the Alliance - - we walked away from it, they [the EMMC] then turned around to each individual company and said, 'would you join,' to that company.").

In short, the Mushroom Alliance was only a member of the EMMC for a short time. It appears plaintiffs will attempt to argue that the EMMC and its members are not entitled to Capper-Volstead immunity because of certain alleged coercive acts taken by the EMMC against Creekside. If those acts occurred, they were in retaliation to the Mushroom Alliance's withdrawal from the EMMC and Creekside's subsequent refusal to join the EMMC. The Court should not punish the Mushroom Alliance for withdrawing from the EMMC and it should not abrogate the Capper-Volstead protection to which the Mushroom Alliance would otherwise be entitled based on the alleged Creekside coercion.

10

## IV. CONCLUSION

For the reasons set forth above, the Mushroom Alliance respectfully requests that its motion for summary judgment and that the Court enter the proposed form of order.

Dated: July 1, 2008                                KLEHR, HARRISON, HARVEY,
                                                   BRANZBURG & ELLERS LLP


By: _____
Matthew J. Borger, Esquire
260 S. Broad Street, 4th Floor
Philadelphia, PA  19102-5003
(215) 569-4159
Attorneys For Defendant
Mushroom Alliance, Inc.

PHIL1 792134-1

## CERTIFICATE OF SERVICE

I, Matthew J. Borger hereby certify that on July 1, 2008, I served a copy of defendant Mushroom Alliance, Inc.'s Motion for Summary Judgment, the Declaration of Matthew J. Borger, the Declaration of Daniel Lucovich, and the Memorandum of Law in Support Thereof, upon the following parties as follows:

Bruce E. Gerstein
Noah H. Silverman
Kevin S. Landau
Stuart E. Desroches
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, NY 10036
(212) 398-0055       Fax: (212)764-6620
bgerstein@garwingerstein.com
nsilverman@garwingerstein.com
klandau@garwingerstein.com
sdesroches@garwingerstein.com

H. Laddie Montague, Jr.
Martin I. Twersky
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
hlmontague@bm.net
mtwersky@bm.net

William A. DeStefano
Joseph R. Loverdi
Rudolph Garcia
BUCHANAN INGERSOLL, P.C.
1835 Market Street, 14th Floor
Philadelphia, PA 19103
(215) 665-8700       Fax: (215) 664-8760
destefanowa@bipc.com
loverdijr@bipc.com
pawelskita@bipc.com
garciar@bipc.com

Francis P. Newell
David W. Engstrom
Neil C. Kling
HARKINS CUNNINGHAM, LLP
2800 One Commerce Square
2005 Market Street
Philadelphia, PA 19103
(215) 851-6700       Fax: (215) 851-6710
fnewell@harkinscunningham.com
dengstrom@harkinscunningham.com
nkling@harkinscunningham.com

Barry L. Refsin
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200       Fax: (215) 568-0300
brefsin@Hangley.com

D. Richard Funk
Jason S. Taylor
CONNER & WINTERS LLP
4000 Williams Center
Tulsa, OK 74172-0148
(918) 586-5711
rfunk@cwlaw.com
jtaylor@cwlaw.com

PHIL1 792134-1

Donna M. Albani
LAW OFFICES OF DONNA M. ALBANI
11 Hampton Lane
Glen Mills, PA 19432
(610) 459-8858
dmaesq@comcast.net

Barbara T. Sicalides
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2799
sicalidb@pepperlaw.com

July 1, 2008

_____
Matthew J. Borger

PHIL1 792134-1