IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE MUSHROOM DIRECT PURCHASER ANTITRUST LITIGATION : : : THIS DOCUMENT RELATES TO: : All Actions. : : : : | Master File No. 06-0620<br><br>Nos.  06-0638; 06-0657; 06-0677; 06-0861; 06-0932; 06-1464; 06-1854; 06-4829 06-3523<br>Electronically Filed |

# NON-PARTY BASCIANI FOODS, INC.'S RESPONSE IN OPPOSITION TO DIRECT PURCHASER PLAINTIFFS' MOTION FOR SANCTIONS FOR SPOLIATION AND CROSS-MOTION FOR CONTEMPT OF THE COURT'S JANUARY 31, 2012 ORDER AND <u>FOR THE IMPOSITION OF SANCTIONS AGAINST PLAINTIFFS</u>

Basciani Foods, Inc. ("BFI"), a non-party in this action, by its undersigned counsel, hereby submits this Response in Opposition to the Direct Purchaser Plaintiffs' Motion for Sanctions for Spoliation and files this Cross-Motion for Contempt of the Court's January 31, 2012 Order and for the Imposition of Sanctions against Plaintiffs.

For the reasons set forth in BFI's Memorandum, which is incorporated by reference, BFI respectfully requests that the Court deny Direct Purchaser Plaintiffs' Motion for Sanctions for Spoliation and grant BFI's Cross-Motion for Contempt of the Court's Order dated January 31, 2012 and to Impose Sanctions upon Direct Purchaser Plaintiffs and enter an Order in the form submitted herewith.

Respectfully submitted,

DIORIO & SERENI, LLP

BY: __/s/Mark A. Sereni_____

_/s/Lisanne L. Mikula_____
MARK A. SERENI, ESQUIRE
Attorney I.D. No. 50090
LISANNE L. MIKULA, ESQUIRE
Attorney I.D. No. 59146
Front & Plum Streets
Media, PA 19063
Tele.: (610) 565-5700
Fax: (610) 891-0652

Dated: April 27, 2012

Attorneys for Non-Party
Respondent/Movant
Basciani Foods, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE MUSHROOM DIRECT PURCHASER ANTITRUST LITIGATION : : : THIS DOCUMENT RELATES TO: : All Actions. : : : : | Master File No. 06-0620<br><br>Nos.  06-0638; 06-0657; 06-0677; 06-0861; 06-0932; 06-1464; 06-1854; 06-4829 06-3523<br>Electronically Filed |

### NON-PARTY BASCIANI FOODS, INC.'S MEMORANDUM IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO DIRECT PURCHASER PLAINTIFFS' MOTION FOR SANCTIONS FOR SPOLIATION AND IN SUPPORT OF ITS CROSS-MOTION FOR CONTEMPT OF THE COURT'S JANUARY 31, 2012 ORDER AND FOR THE IMPOSITION OF SANCTIONS

Basciani Foods, Inc. ("BFI"), a non-party in this action, by its undersigned counsel, hereby submits this Memorandum in support of its Response in Opposition to the Direct Purchaser Plaintiffs' Motion For Sanctions for Spoliation ("Motion for Sanctions") and in support of BFI's Cross-Motion for Contempt of the Court's January 31, 2012 Order and for the Imposition of Sanctions against Plaintiffs ("Motion for Contempt").

### I.   INTRODUCTION

In addition to being wholly without merit, the Motion for Sanctions seeks two things to which Plaintiffs are not entitled – a declaration by this Court that essentially imposes judgment against non-party BFI and an escape from complying with this Court's mandate that Plaintiffs pay for the cost of copying the documents which BFI is producing in response to Plaintiffs' subpoena.

Plaintiffs' Motion for Sanctions seeks to divert this Court's attention from the unassailable fact that Plaintiffs' case is unraveling and their resources are rapidly depleting.

BFI has just learned, through the recently filed Motion for Sanctions and to Remove Plaintiff William Rosenstein & Sons, Inc. as a Putative Class Representative (Document 405) filed by defendant M.D. Basciani & Sons, Inc. ("M.D. Basciani"), that following the trend begun by former plaintiff and putative class representative All American Mushrooms, Inc.'s abandonment of its claims, over the past several weeks, two putative "representative" class plaintiffs refused to go forward with their noticed depositions, two others have indicated their desire to withdraw as class representatives rather than be deposed, and several more are considering withdrawing their claims to avoid being deposed. Furthermore, the only putative class representative who has been deposed testified that it is possible it suffered no damages at all.

In a desperate gambit to energize the few remaining plaintiffs who might have some residual interest in pursuing this action, Plaintiffs seek in their Motion for Sanctions a declaration that certain "facts" be established for the purpose of all future proceedings: (1) that the quantities of fresh agaricus mushroom sold by BFI for the period January 1, 2001 through January 1, 2003 are the annual quantities reported by M.D. Basciani to the EMMC for the purposes of calculating its dues; and (2) from on or about February 4, 2001 through January 1, 2003, all fresh agaricus mushrooms sold by BFI were sold at or above the minimum prices set by the EMMC. In derogation of BFI's due process rights, Plaintiffs' Motion for Sanctions seeks an assessment of liability against BFI on the claims which Plaintiffs assert in this action, despite the fact that BFI has <u>never</u> been (and can never be) named as a defendant.

To compound the problems of the Plaintiffs who remain in this markedly diminished class, during the same time period the plaintiff class began its rapid disintegration, Plaintiffs'

2

obligation to make a significant financial outlay to cover copying costs for documents produced by BFI pursuant to the Court's January 31, 2012 Order, has ripened. As discussed in detail below, despite having vociferously advocated their alleged need for BFI's documents—which BFI has consistently, and accurately, represented to both Plaintiffs and the Court consists of hundreds of boxes of documents—Plaintiffs are now refusing to move forward with the Court-ordered production. Before Plaintiffs filed the instant Motion for Sanctions, BFI had attempted several times to develop a workable means of facilitating a cost efficient plan to produce relevant documents to Plaintiffs. Without any rational basis, Plaintiffs resisted every attempt BFI made to streamline the production of documents – an accommodation recommended by the Court to lessen the burden of production on non-party BFI. Well prior to the filing of Plaintiffs' instant Motion for Sanctions, BFI informed Plaintiffs that because Plaintiffs had refused to agree to a reasonable means of streamlining production, BFI would produce every responsive document requested in their subpoena and BFI's counsel would begin the review of documents to be produced. Faced with the significant expense of copying BFI's documents, and knowing that the plaintiff class and its available resources are rapidly shrinking, Plaintiffs filed their frivolous Motion for Sanctions for Spoliation.

## II.   FACTUAL BACKGROUND

By Order dated January 31, 2012, the Court denied BFI's Motion for Protective Order and required non-party BFI to produce documents requested in a Subpoena which Plaintiffs had served on BFI on March 23, 2010. (A copy of the Court's Memorandum and Order dated January 31, 2012 is attached as Exhibit "A".) The March 23, 2010 Subpoena

was identical to a subpoena which had been served on non-party BFI on October 6, 2009, but which had been quashed pursuant to the Court's Order dated December 4, 2009.

Pursuant to the January 31, 2012 Order, BFI was compelled to produce the following categories of documents for the relevant time period January 1, 1999 to the present (unless otherwise stated):

> 1. Documents, in computer readable form if available, sufficient to show Your daily sales of Mushrooms to each of Your customers, including customer name and address, EMMC region, date of sale, product sold, unit selling price, any discount, net unit price, quantity sold, and total price.
>
> 2. Documents, in computer readable form if available, sufficient to show Your daily purchases of Mushrooms from each seller, including seller name and address, EMMC region, date of purchase, product purchased, unit purchase price, any discount, net unit price, quantity purchased, and total price.
>
> 3. Documents Relating to Mushroom price increases, including all Communications and Documents used to notify Your customers of such price increases.
>
> 4. For the period 1999 through 2008 in any geographic territory, documents Relating to Your actual or estimated share of Mushroom sales or the actual or estimated share of Mushroom sales of all EMMC members individually or collectively.
>
> 5. Documents sufficient to show: (a) the total dollar value of Mushrooms sold by You for each year beginning 1999 through 2008; (b) the total pounds of Mushrooms sold by You for each year beginning 1999 through 2008; (c) Your top ten customers by dollar value for each year beginning 1999 through 2008; (d) the revenue generated by You from Mushrooms sold to each of Your top ten customers for each year beginning 1999 through 2008; (e) the top ten grades (e.g. 10 lb medium, 10 lb sliced, 10 lb food service etc.) of Mushrooms sold by dollar value by You for each year beginning 1999 through 2008; (f) the revenue generated for You by each of the top ten selling Mushroom grades for each year beginning 1999 through 2008.
>
> 6. Any periodic report, profit and loss statement or similar statement of analysis that sets forth any or all of the following information: (a) revenues; (b) costs of goods sold; (b) expenses; or (c) earnings generated by You during the period 1999 through 2008.

4

9. Documents sufficient to show all legal and business relationships between You and M.D. Basciani & Sons, Inc.

10. All price lists for mushrooms that You sold during the period 1999 through 2008.

11. All documents relating to or reflecting the process by which Your selling prices for mushrooms were determined during the period 1999 through 2008.

(See Exhibit "A", Memorandum at p. 3-4.)

The Court ordered Plaintiffs to pay for the costs of copying responsive documents based upon Plaintiffs' express offer to the Court to do so. (Exhibit "A", Memorandum at p. 12.) In response to non-party BFI's concern that the voluminous nature of the responsive documents made compliance burdensome on BFI, the Court instructed the parties "to cooperate to minimize the costs of retrieval and duplication, while providing documents within reasonable dispatch." (Exhibit "A", Memorandum at p. 14.)

Pursuant to the Court's directive, counsel for BFI and for Plaintiffs held a telephone conference on February 6, 2012 to discuss streamlining the production of BFI's voluminous documents. As confirmed in his letter dated February 16, 2012 (attached as Exhibit "B"), during the February 6, 2012 telephone call, Mark A. Sereni, Esquire, counsel for BFI, proposed a reasonable limitation on the documents to be produced. Although non-party BFI had never been a member of the EMMC, Plaintiffs' alleged need for BFI's documents was based upon the fact that defendant M.D. Basciani, who had been a member of the EMMC, sold mushrooms to BFI, and M.D. Basciani did not have certain documents which Plaintiffs had requested from M.D. Basciani. Accordingly, Mr. Sereni proposed that a reasonable limitation on production of relevant documents would be to limit production to those years in which M.D. Basciani was a member of the EMMC. Because M.D. Basciani had ended

5

its membership in the EMMC in 2004, Mr. Sereni suggested that it would be logical to limit the timeframe for responsive documents to end as of the date M.D. Basciani ceased its affiliation with the EMMC, or a short time thereafter. At the conclusion of the February 6, 2012 call, counsel for Plaintiffs, Scott Fisher, Esquire, stated that he would confer with his co-counsel, Barry L. Refsin, Esquire, to discuss Mr. Sereni's proposal and would report back to Mr. Sereni in a follow up phone call on February 9, 2012.

In order to control attorneys' fees, as of the date of the February 6, 2012 telephone conference, BFI had not conducted an in-depth review of BFI's documents. In preparation for the February 9, 2012 follow up telephone call, BFI's counsel had a discussion with BFI's representative to gauge the approximate volume of documents responsive to the subpoena. During that discussion, BFI's counsel learned for the first time that BFI had a standard document retention practice. Specifically, the accountant for BFI since its creation had advised BFI that business records needed to be maintained for only a period of seven years for IRS purposes. (See Affidavit of Jon Walheim (attached as Exhibit "C") at ¶8). Accordingly, BFI had periodically purged its records of documents older than seven years, which is a standard document retention policy for many companies due to storage space restraints. (Exhibit "C", Affidavit of Jon Walheim at ¶¶ 8-9.)

During the February 9, 2012 telephone conference, BFI's counsel advised Plaintiffs' counsel that, like many businesses, BFI had a standard document retention policy, and, and in Summer 2009, months prior to receiving the first subpoena on October 6, 2009, BFI had purged its records of documents which were seven or more years old pursuant to its regular practice. As such, BFI no longer had documents for the time period prior to 2003. Mr. Sereni then asked, several times, for the promised report from Plaintiffs' counsel regarding

6

whether documents could be limited to the time period up to M.D. Basciani's withdrawal from the EEMC. (See Exhibit "B".)

Completely ignoring Mr. Sereni's repeated requests regarding a temporal limitation on the production of documents, Plaintiffs' counsel instead launched a tirade of accusations that BFI had intentionally "destroyed" documents which BFI "knew" Plaintiffs were seeking in this litigation. (Id.) Mr. Sereni emphasized that although BFI filed a Motion for Protective Order promptly after receiving the subpoena in October 2009 (which was granted), BFI suspended its standard document retention policy upon receiving the subpoena on October 6, 2009, and no potentially responsive documents have been purged since that date. Accordingly, BFI has maintained all of its records dated January 2003 forward.

Ignoring the fact that BFI's purging of old documents in accordance with its standard retention policy occurred months before BFI's receipt of the subpoena on October 6, 2009, during the February 9, 2012 telephone conference, and in Plaintiffs' counsel's letter of February 10, 2012 (attached as Exhibit "D"), Plaintiffs nonsensically accused BFI of wrongfully destroying documents in the Summer of 2009 which BFI knew were relevant in a case in which BFI was not, is not, and never will be a party. Specifically, without any basis, Plaintiffs claim that non-party BFI knew Plaintiffs were seeking BFI's documents "since at least September 24, 2007, when [Plaintiffs] served document requests on M.D. Basciani." (Exhibit "D" at p. 2.)[1]

As stated by the companies' corporate counsel since the date of each company's incorporation and their accountant since the companies' creation, BFI and M.D. Basciani are

---

[1] To further "support" their assertion that non-party BFI should have known its documents were relevant to this litigation, Plaintiffs insist that they moved to compel M.D. Basciani to produce responses to documents requests (Exhibit "—" at p. 2), BFI's review of the docket in this matter, however, reveals that no motion to compel was ever filed against M.D. Basciani.

7

separate and distinct corporate entities. (Affidavit of Joseph Walheim (attached as Exhibit "E") at ¶ 6; Exhibit "C", Affidavit of Jon Wallheim at ¶ 4.) While the shareholders of BFI and M.D. Basciani may be the same, the two corporations are and have always been separate and distinct legal entities, and each maintains, and has always maintained, its own corporate books and records. (Exhibit "E", Affidavit of Joseph Walheim at ¶ 6.) BFI and M.D. Basciani do not, and have never had, had an ownership interest in the other corporation. (Exhibit "E", Affidavit of Joseph Walheim at ¶ 7.)  BFI maintains and has always maintained its own business records, which are and have always been separate and distinct from the business records of M.D. Basciani. (Exhibit "C", Affidavit of Jon Walheim at ¶ 5.) BFI does not have and has never had possession, custody, or control over the business records of M.D. Basciani. . (Exhibit "C", Affidavit of Jon Walheim at ¶ 6.) M.D. Basciani does not have and has never had possession, custody, or control over the business records of BFI.  (Exhibit "C", Affidavit of Jon Walheim at ¶ 7.)

Intentionally and improperly blending these separate and distinct corporate entities, Plaintiffs claim that in response to document requests served on M.D. Basciani in 2007, "M.D. Basciani … refused to produce the corresponding data from [BFI]." (Exhibit "D" at p. 2.)  Plaintiffs do not, as they cannot, supply any support for their assertion that M.D. Basciani had the obligation, authority, or ability to force a separate corporation to produce documents in a litigation in which that corporation is not a defendant.  Plaintiffs also fail to explain why they neglected to serve a subpoena on BFI until nearly two years after M.D. Basciani informed Plaintiffs that they did not have possession, custody or control over BFI's documents.

8

Despite BFI's attempts to facilitate the production of documents pursuant to the Court's January 13, 2012 Order, Plaintiffs refused to discuss the means of production of any documents by BFI. Given Plaintiffs' refusal to express any willingness to reach a compromise on limiting the scope of the documents to be produced, by letter dated February 16, 2012, BFI's counsel stated that BFI "intends to produce non-privileged documents in its possession which are responsive to the subpoena for the years 2003 through 2008" and advised that an attorney review of the documents would commence within days. (Exhibit "B" at p. 2.)

In response to BFI's statement that it would produce all responsive, non-privileged documents for the requested time period, in their counsel's letter dated February 17, 2012 (Exhibit "F"), Plaintiffs instead chose to harp on BFI's document retention policy, despite BFI's counsel's full explanation of that policy, and demanded written responses to a number of questions outlined in the letter. Plaintiffs' insistence that BFI provide written information in response to their counsel's letter did not fall within the parameters of BFI's obligations under the Court's January 31, 2012 Order nor did it represent a good faith effort by Plaintiffs to cooperate in the production of documents.

Accordingly, in another attempt to abide by the Court's Order and its direction that BFI and Plaintiffs cooperate in limiting the scope of production, BFI's counsel sent a letter dated February 21, 2012 (Exhibit "G"), which refuted Plaintiffs' unfounded accusations of wrongdoing and made another suggestion for a reasonable limitation on the number of documents to be copied. Specifically, BFI suggested that it provide a "sample" production – all non-privileged responsive documents for the year 2003—which Plaintiffs could copy at their expense and then review that "sample" year to determine whether they believed

9

production of any or all documents for calendar years 2004 through 2008 was required. (Exhibit "G" at p. 2.) In short, BFI offered Plaintiffs an opportunity to limit the number of copies initially made without prejudice to Plaintiffs' right to seek production of all documents from 2003 to 2008. Importantly, the year which BFI suggested as the "sample" year – 2003 – was a year in which M.D. Basciani was a member of the EMMC.

Inexplicably, Plaintiffs' counsel's letter dated February 23, 2012 (Exhibit "H"), characterizes BFI's good-faith suggestion to utilize a "sample" year as a guideline for further production as a "significant step backwards" and bizarrely viewed BFI's cooperative gesture as a ploy to escape BFI's obligations under the Court's January 13, 2012 Order. Not once did Plaintiffs' counsel's communications express a willingness to go forward with the copying of documents at their expense – the precise relief they were granted in the Court's January 13, 2012 Order. Astonishingly, Plaintiffs then demanded that BFI produce all responsive documents for review and inspection at the offices of BFI or its counsel – a form of relief Plaintiffs never requested that the Court provide them, and one which is not authorized by the Court's January 31, 2012 Order. (Exhibit "H" at p. 2.)

Review and inspection creates a new set of difficulties for BFI such as the necessity to spend counsel fees not only for pre-production review but also for monitoring Plaintiffs' counsel's review, increased cost of transporting documents to a location for inspection (as BFI's counsel's offices lack the space to accommodate such a large volume of documents), rental fees for an inspection location, and disruption to BFI's business operations due to the removal of its vital business documents to an off-site location. Although Plaintiffs could have sought an Order from the Court permitting inspection and review when they filed their Motion to Compel Compliance with Subpoena, they did not. Instead, in their zeal to obtain

10

documents from BFI which they deemed vital to their case, Plaintiffs freely volunteered to assume the costs of production. The Court, in entering the January 31, 2012 Order, relied upon, and accepted, Plaintiffs' offer to bear the costs of reproducing BFI's records.

Plaintiffs' counsel's communications throughout February 2012 clearly signaled to BFI that Plaintiffs were refusing to do what they told the Court they would do and which the Court required them to do—pay for the copying costs of the document production. Giving Plaintiffs one last opportunity to comply with the Court's January 31, 2012 Order, by letter dated February 28, 2012 (Exhibit "I"), BFI's counsel again set forth the alternatives it had offered, making clear that BFI was intending to comply with its obligations under the Order. This letter was met with complete silence, until the filing of the instant Motion for Sanctions more than a month later.

In the meantime, BFI's counsel commenced, and completed, its inspection of responsive documents, and the documents are ready for reproduction. (Exhibit "J".)  As anticipated, BFI has expended significant attorneys' fees and costs in preparing the documents for reproduction. It appears unlikely that, absent the entry of an Order finding them in contempt of the Court's January 13, 2012 Order, Plaintiffs will actually comply with their obligation to arrange and pay for the costs of copying documents which, mere months ago, Plaintiffs deemed critically important.

### III.  LEGAL ARGUMENT

#### A.  Plaintiffs' Motion for Sanctions for Spoliation Should Be Denied.

##### 1. BFI Did Not Intentionally Destroy Responsive Documents.

Plaintiffs' request for sanctions rests entirely on its unfounded assertion that BFI intentionally destroyed documents which it knew Plaintiffs were seeking in a litigation in

which BFI has never been a party. This is nonsensical. As a non-party, BFI was unaware of the claims and defenses asserted by the parties in this litigation, did not participate in answering pleadings and did not conduct or respond to discovery. Absent fantastical clairvoyant abilities, as a non-party to this action, and as an entity which had <u>never</u> been a member of the EMMC, BFI had no way of knowing that Plaintiffs might form a belief several years into this litigation that BFI has documents Plaintiffs deem to be relevant. The first time BFI was notified that Plaintiffs believed it possessed relevant documents was its receipt of Plaintiffs' first subpoena on October 6, 2009. Despite its belief that Plaintiffs were not entitled to the production of the requested documents, BFI nonetheless suspended its normal business practice of purging documents seven or more years old the moment it was served with the subpoena in October 2009. Hence, BFI did not participate in the spoliation of relevant documents, but, rather, since it received the first subpoena, BFI has preserved all documents which could be potentially responsive to the subpoena.

Not surprisingly, Plaintiffs attempt to hide their own incompetence in conducting discovery by claiming that despite having never been named a defendant in this action, BFI knew its documents were being sought by Plaintiffs "since at least September 24, 2007, when [Plaintiffs] served document requests on M.D. Basciani" to which "M.D. Basciani … refused to produce the corresponding data from [BFI]." (Exhibit "D" at p. 2.)

As a threshold matter, Plaintiffs' assertion highlights Plaintiffs' gross negligence in conducting discovery. If Plaintiffs believed in 2007 that BFI's documents were relevant to their claims, why did they wait until October 6, 2009 to serve a subpoena for documents on BFI? If Plaintiffs could not project their need for BFI's documents until three years into the litigation and more than two years after propounding written discovery, how could BFI, a

12

non-party, possibly foresee that its documents would be sought by Plaintiffs? Plaintiffs know that their failure to properly evaluate their discovery needs and serve a subpoena on BFI when they first formed the belief that BFI had relevant documents has resulted in the loss of at least two years worth of records under BFI's standard document retention policy. Had Plaintiffs competently conducted discovery, they would have served a subpoena on BFI in 2007 or early 2008, and BFI would have immediately suspended its document retention policy, as it did when it received the subpoena in October 2009. Had Plaintiffs taken the requisite steps to obtain from a non-party documents which Plaintiffs believed were relevant in this litigation, records from calendar years 2000 or 2001 through the end of 2002 would not have been purged as old business records under BFI's standard business practice.

Realizing their obvious carelessness, Plaintiffs attempt to shift the blame to non-party BFI by claiming that because discovery was sought against M.D. Basciani -- who is a defendant -- BFI should have known its documents would be relevant. In trumpeting their far-fetched theory, Plaintiffs ignore the fact that M.D. Basciani and BFI are separate and distinct corporate entities. (Exhibit "E", Affidavit of Joseph Walheim at ¶ 6; Exhibit "C", Affidavit of Jon Wallheim at ¶ 4.) While the shareholders of BFI and M.D. Basciani may be the same, the two corporations are and have always been separate and distinct legal entities, and each maintains, and has always maintained, its own corporate books and records. (Exhibit "E", Affidavit of Joseph Walheim at ¶ 6.) BFI and M.D. Basciani do not, and have never had, an ownership interest in the other corporation. (Exhibit "E", Affidavit of Joseph Walheim at ¶ 7.)

Furthermore, the companies do not have possession or control over one another's business records. BFI maintains and has always maintained its own business records,

which are and have always been separate and distinct from the business records of M.D. Basciani. (Exhibit "C", Affidavit of Jon Walheim at ¶¶ 5-7.) BFI does not have and has never had possession, custody, or control over the business records of M.D. Basciani. (Exhibit "C", Affidavit of Jon Walheim at ¶ 6.) M.D. Basciani does not have and has never had possession, custody, or control over the business records of BFI. (Exhibit "C", Affidavit of Jon Walheim at ¶ 7.) Accordingly, BFI and M.D. Basciani cannot be deemed "one and the same" such that knowledge M.D. Basciani may have had regarding documents Plaintiffs believed were relevant can equally be ascribed to BFI, who is not a defendant in this action.

The absurdity of Plaintiffs' position is highlighted by the extreme relief it seeks in their Motion for Sanctions. Specifically, Plaintiffs seek a declaration that certain "facts" be established for the purpose of all future proceedings: (1) that the quantities of fresh agaricus mushroom sold by BFI for the period January 1, 2001 through January 1, 2003 are the annual quantities reported by M.D. Basciani to the EMMC for the purposes of calculating its dues; and (2) from on or about February 4, 2001 through January 1, 2003, all fresh agaricus mushrooms sold by BFI were sold at or above the minimum prices set by the EMMC. Such an assessment of liability against BFI in a lawsuit in which BFI has <u>never</u> been (and can never be) named as a defendant, would constitute a clear violation of its due process rights.

    2. **Plaintiffs Have No Grounds to Demand Review and Inspection of BFI's Documents.**

With absolutely no basis for doing so, after asking the Court to compel BFI to produce documents and volunteering to pay the copying costs, Plaintiffs now seek an Order

14

permitting Plaintiffs' counsel to review and inspect documents at the offices of BFI or its counsel, so that Plaintiffs can test whether or not they want to copy the documents. At no time prior to the Court's entry of the January 31, 2012 Order did Plaintiffs request the right to review and inspect prior to copying. Despite knowing the vast volume of documents they were requesting, Plaintiffs vehemently insisted that nothing less than receipt of copies of all responsive documents would suffice. Plaintiffs wanted BFI's documents so badly that they made the unusual offer that they would pay for the cost of copying what they knew were hundreds of boxes of responsive documents—an offer upon which this Court relied in ordering BFI to comply with the subpoena.

Now, Plaintiffs have done an abrupt about-face, asking for the right to review and inspect BFI's documents so they can select those to be copied. Review and inspection would significantly increase the costs and fees of production which BFI would incur. Specifically, in addition to the attorneys' fees incurred in BFI's counsel's review of documents to ensure that no privileged, confidential or irrelevant documents are included in the production, review and inspection would require BFI's counsel to be present to monitor Plaintiffs' review. Moreover, such a review and inspection cannot be conducted at BFI's place of business, and BFI's counsel's offices cannot accommodate the presence of so many boxes of documents and additional personnel during the inspection period. As such, BFI would be forced to rent space for the review, and BFI would be deprived of its critical business documents for an extended period of time.

The information which BFI learned from M.D. Basciani's recently filed Motion for Sanctions and to Remove Plaintiff William Rosenstein & Sons, Inc. as a Putative Class Representative (Document 405) makes it clear that Plaintiffs must be concerned that their

case is crumbling and sheds light on Plaintiffs' sudden refusal to comply with the Court's Order. Over the past several weeks, two putative "representative" class plaintiffs refused to go forward with their noticed depositions, two others have indicated their desire to withdraw as class representatives rather than be deposed, and several more are considering withdrawing their claims to avoid being deposed. Furthermore, the only putative class representative who has been deposed testified that it is possible it suffered no damages at all.

Given the jeopardy Plaintiffs' case is in, it is not surprising that they now seek to avoid the very thing they asked for – production of BFI's documents. Plaintiffs know that the copying costs the Court has ordered them to cover will be substantial, and their chances of recovery in this case have greatly diminished and quite likely are non-existent. It is little wonder that Plaintiffs have resisted BFI's good faith efforts to produce its documents and are now seeking a different Order which will relieve them of the significant costs of document reproduction. The Court, respectfully, should not cater to Plaintiffs' underhanded attempt to shift virtually all of the financial burden of production onto non-party BFI simply because Plaintiffs are suddenly concerned that their coffers are not deep enough to cover the expense of complying with the Court's January 31, 2012 Order.

### B.     BFI's Cross-Motion for Contempt Should Be Granted.

As set forth above, BFI has complied with its obligations under the January 31, 2012 Order by making numerous attempts to cooperate with Plaintiffs to facilitate the document production and completing its pre-copying review of documents. Then, at significant expense, BFI has collected and reviewed its documents and have readied them to be tendered to a copy service for a copy cost estimation (Exhibit "J"). Plaintiffs, on the other

hand, are abjectly refusing to comply with the Court's January 31, 2012 Order and, in fact, are now seeking to change the terms of that Order simply to accommodate their fear that the costs of paying for what they asked for will far outweigh any potential benefit to them.

The Court has already issued an Order compelling BFI to produce responsive documents, and BFI has complied with that Order at great expense. Plaintiffs should not be permitted to ignore the very terms which they requested that the Court include in its January 31, 2012 Order. As such, Plaintiffs should be held in contempt of the Court's Order and ordered to pay as a sanction BFI's counsel fees and expenses incurred with complying with the Court's January 31, 2012 Order, as well as all counsel fees incurred by BFI in connection with the instant Motion for Sanctions and Cross-Motion for Contempt.

## IV. CONCLUSION

For all of the foregoing reasons, non-party BFI respectfully requests that the Court deny Plaintiffs' Motion for Sanctions for Spoliation and grant BFI's Cross-Motion for

Contempt of the Court's January 31, 2012 Order and enter an Order in the form attached to BFI's Response to the Motion for Sanction and BFI's Cross-Motion for Contempt.

Respectfully submitted,

DIORIO & SERENI, LLP

BY: /s/Mark A. Sereni

/s/Lisanne L. Mikula
MARK A. SERENI, ESQUIRE
Attorney I.D. No. 50090
LISANNE L. MIKULA, ESQUIRE
Attorney I.D. No. 59146
Front & Plum Streets
Media, PA 19063
Tele.: (610) 565-5700
Fax: (610) 891-0652

Dated: April 27, 2012

Attorneys for Non-Party Movant/Respondent
Basciani Foods, Inc.