IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE MUSHROOM DIRECT PURCHASER ANTITRUST LITIGATION | : : : | Master File No. 06-0620 |
| THIS DOCUMENT RELATES TO: | : : | Nos.   06-0638; 06-0657; 06-0677; 06-0861; 06-0932; 06-1464; |
| ALL ACTIONS | : | 06-1854; 06-4829 |

**DEFENDANT M.D. BASCIANI & SONS, INC.'S SUR-REPLY BRIEF
IN SUPPORT OF ITS MOTION TO EXCLUDE THE REPORTS,
DEPOSITION AND TRIAL TESTIMONY OF EINER R. ELHAUGE, ESQUIRE
AND IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant M.D. Basciani & Sons, Inc. ("M.D. Basciani") submits this Sur-Reply Brief in support of its Motion to Exclude the Reports, Deposition and Trial Testimony of Einer R. Elhauge, Esquire, and in support of its Motion for Summary Judgment.

    A.    **Motion to Exclude**

Since M.D. Basciani filed its Motion to Exclude on January 10, 2014, the audio link to Professor Elhauge's address to the American Antitrust Institute ("AAI") discussed therein has been moved and changed on the AAI website. The audio recording of Professor Elhauge's remarks can now be found and heard at http://www.antitrustinstitute.org/events/2nd-annual-future-private-antitrust-enforcement-symposium under the heading "Luncheon Address."[1]

Significantly, plaintiffs' submission of Einer R. Elhauge, Esquire's Declaration does nothing to change the clear content and purpose of his words to the members of the plaintiffs' antitrust bar at the 2008 AAI's Second Annual Future of Private Enforcement Symposium at the National Press Club in Washington, D.C. Professor Elhauge's own remarks – offering his

---

[1] The original audio link to Professor Elhauge's luncheon address was http://www.antitrustinstitute.org/~antitrust/content/2nd-annual-future-private-antitrust-enforcement-symposium.

audience access to data that he was collecting in order to document price increases from alleged "**anticompetitive mergers**" in the health insurance industry which, in his words, represented a "**private enforcement opportunity**" that "**you guys may be actually in a position to utilize**" and encouraging his audience of attorneys to "**get on the stick**" and "**embrace the opportunity**" -- were echoed by the introductory remarks of the sponsor of the luncheon and Professor Elhauge's address, Katherine Kinsella, President of Kinsella/Novak Communications, LLC, a company that provides notice and administration services in antitrust class action cases. According to Ms. Kinsella:

> Today, **I'm looking forward to hearing [Professor Elhauge's] remarks on a new area of inquiry – the extent to which the lax merger approval standards of the last eight years may give rise to private causes of action and how those theories might be proven up. He argues that because merger enforcement has moved away from an incipiency standard and allowed many mergers that increased prices, <u>there is now a greater opportunity for post-merger class actions seeking recovery for anticompetitive increase in prices. Professor Elhauge is currently pursuing a study documenting this effect in certain insurance company mergers.</u>** I'm therefore very honored to introduce him today as our speaker and to note that **we at Kinsella/Novak and Rust Consulting look forward to assisting you with legal notice and settlement administration <u>of this forthcoming flood of merger pricing cases.</u>** Thank you.

Following this introduction, Einer R. Elhauge, Esquire advised his audience that the "<u>**recent period of lax antitrust enforcement should be embraced as an opportunity.**</u>" In Professor Elhauge's words, "just to sort of whet your appetite for this," he advised the attendees of some preliminary results of a study that he was doing of health insurance mergers based on data he obtained from the National Association of Insurance Commissioners. Noting that he had obtained state by state data on price, costs and market share, Professor Elhauge concluded that the not-yet-final results of his study revealed that "**these mergers are causing and did cause price increases**." He stated that "<u>**this kind of results [sic] do suggest this private enforcement opportunity**</u>" and "<u>**you guys may be actually in a position to utilize this information.**</u>"

Conceding that there have been a paucity of cases seeking damages for consummated mergers, Professor Elhauge nonetheless reassured the group that "this laxer enforcement period though **creates the opportunity for class actions that would seek damages for price increases from consummated anticompetitive mergers**," warning the group "[h]owever, the **window of opportunity** may close if the Obama Department of Justice actually restores prior enforcement periods." Rallying the audience to seize the opportunity and pursue lawsuits against this industry, Professor Elhauge stated "**So you'd better get on the stick soon and some of you may be sorry you voted for Obama because this opportunity could be ending**." Professor Elhauge concluded his presentation by **offering ideas on how to prove liability and damages in these potential antitrust class action cases against health insurers**.

Whether or not his remarks related to mushrooms, and whether or not any law firm actually hired him as an "expert" to use the data he was collecting are beside the point. Einer R. Elhauge, Esquire's recorded remarks to the audience of plaintiffs' antitrust lawyers, encouraging them to "get on the stick" and "embrace the opportunity" to bring private class actions against an industry based on data that he conceived of and collected, dramatically demonstrates the precise lack of objectivity and bald partisanship in a proffered expert that *Daubert* was designed to stop at the gate. And the very real prejudice to M.D. Basciani of allowing a partisan advocate and practicing attorney to express opinions and testify as an alleged expert "economist" against it cannot be overstated. The Court in *Hall v. Central Intelligence Agency* said it best:

> [E]xperts are permitted to express opinions that laypersons may not because, on balance, the possibility that the finder of fact may be unfairly influenced by that opinion is outweighed by the help the expert will provide on an issue that is beyond the ken of a layperson. Thus, the necessity of having the expert testify is driven by the need to have the benefit of his specialized expertise. Central to that equation is the presumed objectivity of the expert; an expert with a partisan axe to grind

3

> is of no use to the finder of fact and becomes just another advocate for a party.
>
> One would be hard pressed to imagine a case where a court, confronted with a partisan disguised as an expert, would not preclude the so-called-expert's testimony on the grounds that what little probative value it has is outweighed by its hopelessly partisan nature. It is to permit advocacy to wear the clothes of objective scientific analysis.

538 F. Supp.2d at 73.

In addition, despite yet another opportunity to do so, plaintiffs fail to address the undisputed fact that Einer R. Elhauge, Esquire is a *practicing* attorney. The long list of high-profile reported cases in which he has represented plaintiffs spans decades. Since filing its Motion to Exclude, M.D. Basciani has discovered yet another lawsuit in which Professor Elhauge is Counsel of Record for plaintiff/petitioner in the United States Supreme Court – *PSKS, Inc., d/b/a Kay's Kloset v. Leegin Creative Leather Products, Inc.,* No. 10-653. The first two pages of Professor Elhauge's Petition for a Writ of Certiorari, as well as a copy of the United States Supreme Court's docket in the case, are attached to M.D. Basciani's Motion for Leave to File a Sur-Reply as Exhibit A.

For these reasons and all of the reasons more fully set forth in its opening and Reply Briefs, M.D. Basciani's Motion to Exclude the Expert Reports, Deposition and Trial Testimony of Einer R. Elhauge, Esquire must be granted.

    **B.**    <u>**Motion for Summary Judgment**</u>

In their Sur-Reply, plaintiffs continue to ignore -- and fail to address -- the Third Circuit's holding in *In re Hypodermic Products Antitrust Litigation*, 2012 U.S. App. LEXIS 11293 (3d Cir. 2012) which requires the entry of summary judgment in favor of M.D. Basciani. As more fully set forth in M.D. Basciani's opening and Reply Briefs, as in the *Hypodermic Products* case, plaintiffs are indirect purchasers from M.D. Basciani because they are one step removed along

4

the vertical market channel. That is, plaintiffs neither buy nor take title or possession of mushroom products from M.D. Basciani.

In addition, the *Hypodermic Products* case involved simple reselling of identical products. (Lopez Reply Decl. at 8). Here, non-party BFI sells quite distinct products than M.D. Basciani. (Lopez Reply Decl. at 9). M.D. Basciani sells *generalized* raw mushrooms while non-party BFI sells fresh mushroom *products at the wholesale level*, which are differentiated horizontally (types, grades, quality, packaging, and shop-keeping units) and vertically (quality, service, and terms of trade). **Simply stated, the products that plaintiffs buy are not what M.D. Basciani sells.** (Lopez Reply Decl. at 10).

Plaintiffs thus have no standing to sue M.D. Basciani, and the Third Circuit's holding in *In re Hypodermic Products* mandates the entry of summary judgment in its favor.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ Thomas K. Schindler, Esquire<br>Thomas K. Schindler, Esquire<br>Attorney I.D. No. 52279<br>SCHINDLER LAW GROUP, LLC<br>818 East Baltimore Pike<br>Kennett Square, PA 19348<br>(610) 444-6216 |
|  | Donna M. Albani, Esquire<br>Attorney I.D. No. 37297<br>DONNA M. ALBANI, ESQUIRE, P.C.<br>11 Hampton Lane<br>Glen Mills, PA 19342<br>(610) 459-8858 |
|  | Attorneys for Defendant |
| Dated: March 26, 2014 | M.D. Basciani & Sons, Inc. |