IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE MUSHROOM DIRECT PURCHASER ANTITRUST LITIGATION | : : : : | Master File NO. 06-0620 |
| THIS DOCUMENT RELATES TO: All Actions | : : : | |
| O'NEILL, J. | : | August 20, 2015 |

### MEMORANDUM

Presently before me in this antitrust litigation are putative class plaintiffs'[1] motion to exclude the expert testimony of Dr. Rigoberto Lopez offered on behalf of defendant M.D. Basciani (Dkt. No. 584), M.D. Basciani's response (Dkt. No. 591) and plaintiffs' reply (Dkt. No. 596). On May 19 and 20, 2015, I held a Daubert hearing regarding this and other related Daubert motions. For the reasons that follow, I will grant plaintiffs' motion in part and deny it in part.

### BACKGROUND

Plaintiffs claim that defendants committed antitrust violations when they agreed to set minimum prices for fresh agaricus mushrooms and to restrict the supply of fresh agaricus mushrooms by purchasing and deed restricting mushroom farms. See Dkt. No. 670 at 2. M.D. Basicani is a defendant in this antitrust litigation and has offered the expert opinions of Dr. Rigoberto Lopez in opposition to plaintiffs' motion for class certification and in response to plaintiffs' expert Professor Einer Elhauge's report.[2] See Lopez Rpt. at ¶¶ 31-85. Although not at

---

[1] I will refer to putative class plaintiffs as "plaintiffs" throughout.
[2] On July 29, 2015, I denied defendants' motions to exclude Prof. Elhauge's opinions. See Dkt. Nos. 693, 694. On August 11, 2015, I also denied plaintiffs' motion to exclude EMMC defendants' expert Dr. John Johnson's opinions. See Dkt. Nos. 709, 710.

issue in the instant motion, Dr. Lopez also opines in his report on the expert opinions by Dr. Keith Leffler and Dr. Paul Prentice offered on behalf of opt-out plaintiffs. See id. at ¶¶ 86-97, ¶¶ 98-101. Dr. Lopez is a professor and the head of the Department of Agricultural and Resource Economics at the University of Connecticut. See id. at ¶¶ 1, 2. He is also the director of the Zwick Center for Food and Resource Policy at the University of Connecticut, specializes in the economics of food systems and has a Ph.D. in Food and Resource Economics from the University of Florida. Id.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When faced with expert testimony, the district court acts "as a gatekeeper to ensure that the expert's opinion is based on the methods and procedures of science rather than on subjective belief or unsupported speculation." ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 290 (3d Cir. 2012) (internal quotations omitted). Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; **(b)** the testimony is based on sufficient facts or data; **(c)** the testimony is the product of reliable principles and methods; and **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In short, Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003).

First, expert qualification "refers to the requirement that the witness possess specialized expertise." Id. The Court of Appeals has "interpreted this requirement liberally, holding that a

2

broad range of knowledge, skills, and training qualify an expert." Id. Second, the Court of Appeals has "made clear" that "the reliability analysis required by Daubert applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, and the link between the facts and the conclusion." ZF Meritor, 696 F.3d at 291 (internal quotations omitted). Third, the requirement of "fit" means that "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Schneider, 320 F.3d at 404. The party offering the testimony bears the burden of demonstrating compliance with Rule 702. See Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd., 362 F. App'x 332, 335 n.2 (3d Cir. 2010).

Under Daubert and Rule 702, "[p]roponents of expert testimony do not have to prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." In re DVI, Inc. Sec. Litig., No. 03-5336, 2014 WL 4634301, at *5 (E.D. Pa. Sept. 16, 2014) (emphasis in original), citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994). Thus, Daubert "focuses on principles and methodology, not on the conclusions generated by principles and methodology." In re TMI Litig., 193 F.3d 613, 665 (3d Cir. 1999), amended, 199 F.3d 158 (3d Cir. 2000).

## DISCUSSION

Plaintiffs argue that Dr. Lopez's testimony should be excluded because he: (1) is not qualified to opine on issues of class certification; (2) failed to consider key evidence; (3) compared the wrong prices and output; (4) altered Prof. Elhauge's agnostic periods[3] based on

---

[3] Prof. Elhauge remained "agnostic" about whether there was anticompetitive conduct from ▬▬ until ▬▬ and the period after ▬▬ to reflect his conclusion that evidence of anticompetitive conduct during those periods is "murky." Elhauge Rpt. at ¶¶ 90-91. Practically speaking, Prof. Elhauge's use of agnostic periods means not including sales data in his regression that exists for those periods. See Dkt. No. 693 at 16.

3

unsupported assumptions and (5) that his opinions are inconsistent with economic principles of demand elasticity. See Dkt. No. 586 at 3-4.

## I. Dr. Lopez's Qualifications

Plaintiffs argue that Dr. Lopez is not qualified to opine on issues of class certification because he does not have any legal background or previous experience with the requirements of Federal Rule of Civil Procedure 23. In particular, plaintiffs take issue with Dr. Lopez's qualification to make legal conclusions in his report such as that the class should not be certified. See Dkt. No. 586 at 10. Plaintiffs do not contend that Dr. Lopez is unqualified to testify as to issues of antitrust economics or econometrics. Defendants respond that Dr. Lopez is qualified to offer an opinion from an economic perspective that certification of a class is inappropriate. See Dkt. No. 591 at 11. The critical question regarding Dr. Lopez's opinion that the class should not be certified is not about qualification, however, but rather about the distinction between expert testimony regarding factual versus legal questions.

"[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1212-13 (D.C. Cir. 1997). Courts should exclude expert testimony that goes solely to whether the legal standard for class certification has been satisfied. Woodard v. Andrus, No. 03-2098, 2009 WL 140527, at *2 (W.D. La. Jan. 20, 2009) (excluding the expert opinion of a law professor as to whether each prong of the class certification standard under Rule 23 had been met in that case). That exclusion, however, does not rest "on the ground that [the expert] is unqualified or his testimony is unreliable." Id. "There are, of course, circumstances where a legal expert's opinion can be offered as factual evidence." Bowman v. Burroughs, No. No. 07-

4

185, 2008 WL 5427910, at *11 (W.D. Pa. Dec. 30, 2008), citing Schmidt v. Currie, 470 F. Supp. 2d 477, 483-484 (E.D. Pa. 2005). This is not one of those cases, however, and it should be noted that "[e]ach courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." Burkhart, 112 F.3d at 1213, citing Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 509-10 (2nd Cir. 1977).

There is no dispute that Dr. Lopez is qualified to provide factual opinions regarding the statistical analysis underlying plaintiffs' motion for class certification. Plaintiffs' arguments that Dr. Lopez is unfamiliar with Rule 23 and lacks previous experience testifying on legal issues regarding class certification are not relevant to his qualification to testify because Dr. Lopez is not offered as a legal expert. Thus, Dr. Lopez is appropriately precluded from offering legal conclusions such as whether the class should or should not be certified, as these are conclusions reserved to the Court. I will grant plaintiffs' motion in part and exclude Dr. Lopez's expert opinion to the extent that it includes legal conclusions such as "in my opinion, certification of the putative class is inappropriate in this case." Lopez Rpt. at ¶ 102. That legal conclusion is distinct from Dr. Lopez's proper expert opinions offered to show that "plaintiffs have failed to provide an analytical framework that can be used to demonstrate with common evidence . . . the proposed class suffered antitrust injury." Id.

**II.     Reliability and Fit**

    **A.     Failure to Consider Key Evidence**

Plaintiffs argue that Dr. Lopez's opinions do not satisfy the "fit" requirement under Rule 702 because he ignores several pieces of evidence when he (1) uses Mushroom Council price data instead of data produced by the defendants, (2) fails to consider the EMMC Grower's

Association (EMMCGA) agreement and (3) fails to consider the spoliation order entered against M.D. Basciani. Dkt. No. 586 at 11-22.

First, plaintiffs argue that in his report Dr. Lopez utilizes average mushroom price data from the Mushroom Council rather than the data produced by the defendants. Dkt. No. 586 at 11-14. Plaintiffs criticize the use of this publicly available data because it includes prices for mushrooms outside the product market definition. Id. M.D. Basciani argues that Dr. Lopez in fact uses USDA data, not Mushroom Council data and that he only uses this data for the purpose of providing background information on the mushroom market rather than as a substantive critique of Prof. Elhauge's report. Dkt. No. 591 at 14. The parties' dispute over Dr. Lopez's use of this sales data centers on paragraph 19 in the background section of his report. See Dkt. No. 586 at 12; Dkt. No. 591 at 14. I am satisfied that Dr. Lopez uses publicly available data in that paragraph simply to provide background information on price movements in the mushroom industry. See Lopez Rpt. at ¶ 19. Thus, to the extent plaintiffs argue Dr. Lopez's use of publicly available data does not "fit" the case I will deny their motion to exclude his opinions.

Second, plaintiffs argue that in his report Dr. Lopez fails to consider a document creating the EMMCGA. Dkt. No. 586 at 15-18. The EMMC helped "organize the EMMCGA which was to benefit pure growers." In re Mushroom Direct Purchaser Antitrust Litig., 621 F. Supp. 2d 274, 285 (E.D. Pa. 2009). In his report, Prof. Elhauge opines that the EMMC formed the EMMCGA to help control supply and increase prices above but-for levels for all or nearly all putative class members. See Elhauge Rpt. at ¶ 37. Prof. Elhauge's analysis of the EMMCGA occupies a single paragraph in Elhauge's 132 paragraph initial report. See id. While the EMMCGA is a relevant aspect of the supply control issues in this case, it is not so central that Dr. Lopez's failure to consider the EMMCGA in his report renders it unreliable or unhelpful to

6

the factfinder. Thus, I find that Dr. Lopez's failure to consider the EMMCGA in his report does not justify excluding the entirety of his testimony and rather goes to the weight that should be accorded to his opinions.

Third, plaintiffs argue that in his report Dr. Lopez fails to consider Magistrate Judge Rice's spoliation order entered against M.D. Basciani. Dkt. No. 586 at 18-22. As a sanction for M.D. Basciani's spoliation of evidence, Judge Rice held that "[a]n adverse inference instruction" would be provided "to allow the jury to find the destroyed evidence would have been unfavorable to M.D. Basciani." Dkt. No. 452 at 7. Plaintiffs contend that Dr. Lopez was thus required to apply an adverse inference against M.D. Basciani in the formulation of his expert opinion but instead makes beneficial inferences, such as adding accounting statement figures regarding M.D. Basciani's promotional spending as a variable to his regression analysis which "gave Basciani the benefit of the doubt." Dkt. No. 586 at 20. Plaintiffs do not contend that Dr. Lopez makes improper assumptions about the spoliated data at issue in Judge Rice's order. Indeed, plaintiffs have not illustrated any logical connection between the spoliation order and the analysis Dr. Lopez conducts in his report. Thus, I find that Dr. Lopez has not improperly ignored Judge Rice's spoliation order in the formulation of his expert opinion and I will deny plaintiffs' motion to that extent.

### B. Wrong Price Comparison

Plaintiffs argue that Dr. Lopez compares the wrong prices and output in his report. Dkt. No. 586 at 22-24. Dr. Lopez opines in his report that Prof. Elhauge's conclusion that the EMMC raised but-for prices and restricted output "ignores the fact that in Pennsylvania and other non-Western states, fresh agaricus mushroom production actually increased in the alleged period(s) of the alleged conspiracy, which cannot result solely from either restricting output or raising

prices in the relevant market." Lopez Rpt. at ¶ 6. Plaintiffs contend that this opinion is unreliable because only a comparison of output that existed during the alleged conspiracy versus but-for output absent the alleged conspiracy are relevant for determining the impact of alleged anticompetitive conduct on prices. Dkt. No. 586 at 23. Indeed, Dr. Lopez acknowledged in his deposition that a but-for comparison is the proper economic comparison here. See id., citing Ex. 6. The other experts in this litigation agree that the relevant comparison is between the actual prices or output and the but-for prices or output. See Elhauge Reply at ¶ 6; Johnson Rpt. at ¶ 26. Unlike Dr. Johnson's opinions in his report comparing actual prices rather than but-for prices, the paragraph that plaintiffs' object to in Dr. Lopez's report is not directly responding to a statement by Prof. Elhauge about the actual prices paid by defendants. See Dkt. No. 709. Rather, Dr. Lopez's actual output comparison responds directly to Prof. Elhauge's but-for pricing and output analysis. See Lopez Rpt. at ¶ 6. M.D. Basciani responds to this issue by simply repeating its attacks on Prof. Elhauge's analysis and stating that the opinion in question appeared in the background section of Dr. Lopez's report. See Dkt. No. 591 at 19-21. Paragraph 6 of Dr. Lopez's report appears in the introduction summarizing his substantive expert opinions, not simply in the factual background section and addresses Prof. Elhauge's opinion that the "EMMC effectively raised but-for prices and effectively restricted output." Lopez Rpt. at ¶ 6. Thus, I will grant plaintiffs' motion in part and exclude Dr. Lopez's opinion as unreliable only to the extent he improperly uses actual output data to rebut Prof. Elhauge's but-for price and output analysis.

C. **Agnostic Period Assumptions**

Plaintiffs argue that Dr. Lopez made unsupported assumptions when he tested the effect of Prof. Elhauge's agnostic periods. Dkt. No. 586 at 24-27. Plaintiffs acknowledge this is the

same argument they made against Dr. Johnson's sensitivity analysis. Id. at 24-25. I have found that Prof. Elhauge's use of agnostic periods is reliable. See Dkt. Nos. 693, 694. I have also declined to exclude Dr. Johnson's sensitivity analysis attempting to test the statistical impact of Prof. Elhauge's agnostic periods. Dkt. Nos. 709, 710. Similar to Dr. Johnson, Dr. Lopez opines that Prof. Elhauge's use of agnostic periods improperly lowers the conduct variable coefficient. See Lopez Rpt. at ¶ 63. Dr. Lopez's opinion, while it is based on an assumption that there was no conduct during the agnostic periods, is not based upon an assumption divorced from the facts of the case because Prof. Elhauge also acknowledges that whether there is anticompetitive impact during his agnostic periods is unclear. Elhauge Rpt. at ¶¶ 90-91. Thus, to the extent plaintiffs contend Dr. Lopez's criticism of Prof. Elhauge's agnostic periods should be excluded I will deny plaintiffs' motion.

### D. Demand Elasticity

Plaintiffs argue that Dr. Lopez makes a fundamental error of economics when he opines regarding demand elasticity. Dkt. No. 586 at 27-29. In his report, Dr. Lopez states that:

> one important mitigating factor in the exercise of market power is the price elasticity of demand . . . when demand price is elastic, an increase in price will lead to a decrease in revenue because the percentage increase in price will cause a larger percentage reduction in quantity sold. Thus, a price-elastic demand constrains the seller from exerting market power.

Lopez Rpt. at ¶ 25. Plaintiffs contend that this statement regarding price elasticity is contradicted by the principle that monopolists "price somewhere on the elastic portion of the demand curve." Dkt. No. 586 at 28. Dr. Lopez acknowledged during his deposition that "a monopoly will always operate on the elastic portion if you have linear demand curve." Id., citing Ex. 55. Plaintiffs contend that Dr. Lopez's two statements are a "fundamental contradiction," Dkt. No. 586 at 29, while M.D. Basciani distinguishes Dr. Lopez's statement about the effect of

9

price elasticity on market power in general from the specific context of an absolute monopolist. Dkt. No. 591 at 24-25. I am satisfied that Dr. Lopez's statements were not contradictory. His first statement was made in the background section of his report addressing general market conditions and was not absolute in nature – it merely noted that price elasticity of demand is a relevant constraint on market power. That this statement may be qualified in the hypothetical situation of an absolute monopolist does not provide a sufficient basis upon which to exclude Dr. Lopez's testimony. Thus, to the extent they argue Dr. Lopez has provided unreliable testimony on price elasticity of demand I will deny plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, I will grant plaintiffs' motion to exclude Dr. Lopez's testimony in part to the extent that Dr. Lopez improperly compares actual rather than but-for output to rebut Prof. Elhauge's but-for analysis and to the extent he opines on the legal conclusion of whether the class should be certified. I will deny plaintiffs' motion in all other respects.

An appropriate Order follows.