IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE MUSHROOM DIRECT PURCHASER ANTITRUST LITIGATION | : : : : | Master File NO. 06-0620 |
| THIS DOCUMENT RELATES TO: All Actions | : : | |

O'NEILL, J.                                                                 August 31, 2015

## **MEMORANDUM**

Plaintiffs in this antitrust litigation – who are purchasers of mushrooms – seek reconsideration of my determination that the rule of reason should be applied to plaintiffs' claim that defendants violated Section 1 of the Sherman Act by conspiring among themselves and in conjunction with nonmember distributors to set artificially-inflated prices for mushrooms. See Dkt. No. 676. Defendants include the Eastern Mushroom Marketing Cooperative and other entities that were members of the EMMC or were affiliates of members of the EMMC. Before me are: plaintiffs' motion for reconsideration of the Court's May 26, 2015 Order (Dkt. Nos. 676 and 678), defendants' opposition thereto (Dkt. No. 682), plaintiffs' reply (Dkt. No. 689), defendants' reply to plaintiffs' reply (Dkt. No. 692), plaintiffs' sur-reply (Dkt. No. 698) and defendants' sur-reply (Dkt. No. 701).

Additionally, defendants[1] seek reconsideration of my determination that per se liability should be applied to plaintiffs' claim that defendants violated Section 1 of the Sherman Act

---

[1] Defendants' motion was filed by counsel for the following defendants: EMMC, Robert A. Feranto, Jr. t/a Bella Mushroom Farms; Brownstone Mushroom Farms, Inc.; Brownstone Farms, Inc.; Brownstone Mushroom Farm; To-Jo Fresh Mushrooms, Inc.; Country Fresh Mushroom Co.; Gaspari Mushroom Co., Inc.; Kaolin Mushroom Farms, Inc.; South Mill Mushroom Farms, Inc.; South Mill Mushroom Sales, Inc.; Modern Mushroom Farms, Inc.; Sher-Rockee Mushroom Farm, LLC; C&C Carriage Mushroom Co.; Oakshire Mushroom Farm, Inc.; Phillips Mushroom Farms, Inc.; Louis M. Marson, Jr., Inc.; Monterey Mushrooms, Inc.; and John Pia. See Dkt. No. 677 at ECF p. 1-2.

through the EMMC's implementation of a supply control scheme – purchasing and leasing mushroom farms in order to place deed restrictions on the properties prohibiting the conduct of business related to the production of mushrooms.  See Dkt. No. 677.  Also before me are defendants' motion for reconsideration of the Court's May 26, 2015 Order (Dkt. No. 677) and plaintiffs' opposition thereto (Dkt. No. 683).

      The issue of which rule of decision to apply to plaintiffs' price-fixing and supply control claims was extensively briefed and argued by the parties prior to the Court's May 26, 2015 decision.  In effect, in their motions for reconsideration both sides argue that the same rule should apply to both the price fixing claims and the supply control claims.  The parties continue to differ, however, as to which rule should prevail.  As is further set forth below, I find that neither side has met its burden on reconsideration and I will deny both motions.

## STANDARD OF REVIEW

      Local Civil Rule 7.1(g) allows parties to file motions for reconsideration.  E.D. Pa. Loc. R. 7.1(g).  "Because of the interest in finality . . . courts should grant motions for reconsideration sparingly."  Rottmund v. Cont'l Assurance Co., 813 F. Supp. 1104, 1107 (E.D. Pa. 1992).  "In a motion for reconsideration, the burden is on the movant . . . ."  Egervary v. Rooney, 80 F. Supp. 2d 491, 506 (E.D. Pa. 2000) (citation omitted).  Reconsideration is warranted where there is a need "to correct manifest errors of law or fact or to present newly discovered evidence."  Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999), citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).  A finding of clear error requires a "'definite and firm conviction that a mistake has been committed.'"  Johnson v. SmithKline Beecham Corp., 724 F.3d 337, 345 (3d Cir. 2013), quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 855 (1982).  "[A] motion for reconsideration addresses only factual and legal matters that the Court

may have overlooked.  [It is improper] to 'ask the Court to rethink what [it] had already thought through – rightly or wrongly.'"  Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citation omitted).

## DISCUSSION[2]

**I.      Plaintiffs' Motion:  Price Fixing Claims**

In their motion, plaintiffs contend that their "allegations that horizontal distributors used the EMMC to fix prices and restrict the supply of fresh agaricus mushrooms are subject to the per se rule of illegality."  Pls.' Recons. Mem. (Dkt. No. 676) at 13.  Plaintiffs do not base their request for reconsideration on the availability of new evidence that was unavailable when the Court issued its prior opinion.  Nor do they argue that an intervening change in controlling law has occurred.  Rather, they base their motion on "facts that Plaintiffs believe the Court may have overlooked in reaching its decision," id. at 1, and argue that "[r]econsideration is necessary to correct the Court's clear legal error and prevent the manifest injustice that would result from application of the rule of reason to naked price fixing by horizontal competitors."  Id. at 3.  Defendants argue that "the so-called facts that the Court allegedly overlooked are nothing more than Plaintiffs' alternative characterization of the EMMC's minimum pricing policy as being an alleged horizontal pricing restraint among distributors rather than or as well as a horizontal pricing restraint among growers."  Defs.' Recons. Opp'n Mem. (Dkt. No. 682) at 2.

On reconsideration, plaintiffs assert that "[t]he gravamen of [their] case is that the EMMC was created so that agaricus mushroom distributors representing a majority of the market could horizontally fix the prices of agaricus mushrooms."  Pls.' Reconsideration Mem.  (Dkt. No. 676) at 3.  Plaintiffs argue that "the EMMC was a front for distributor level price fixing."

---

[2]      The factual background of this litigation is set forth in detail in the Court's prior decisions and is discussed in this memorandum only to the extent necessary to explain the Court's decision on reconsideration.

Pls.' Reconsideration Reply (Dkt. No. 689) at 4. They maintain that "[t]he presence of vertical relationships between some of the grower members [of the EMMC] and their own affiliated distributors does not alter the primarily horizontal character of the EMMC to fix distribution prices nor create an argument that the agreement was designed to foster interbrand competition." Pls.' Reconsideration Mem. (Dkt. No. 676) at 9. They contend that "the Court misunderstood the evidence when it concluded that 'absent cooperation from the vertically oriented distributors, integrated and not, the EMMC's agreement to fix mushroom distribution prices would be meaningless.'" Pls.' Reconsideration Reply (Dkt. No. 689) at 3, citing May 26, 2015 Mem. Op. (Dkt. No. 670) at 30. Plaintiffs assert that "[t]en of the EMMC members were integrated grower distributors who sold to direct purchasers at the distribution prices fixed by the EMMC" and maintain that "it was clearly erroneous for the Court to ignore this undeniable horizontal price fixing because other distributors agreed to those prices through related distributors who belonged to the EMMC." Pls.' Reconsideration Reply (Dkt. No. 689) at 3.

Plaintiffs previously made arguments similar to the ones they here make and I considered them in reaching my prior decision. See, e.g., May 26, 2015 Mem. Op. (Dkt. No. 670) at 23-24 (noting plaintiffs' argument that "[w]hile the 'vertical' relationships of some EMMC members with non-member distributors destroyed the EMMC's Capper-Volsted immunity, . . . the growers, packagers and shippers in the EMMC are horizontal competitors, not parts of a vertical distribution chain") (internal quotations omitted). On reconsideration I disagree with plaintiffs' contentions that my prior decision misunderstood or overlooked evidence or ignored that there is a horizontal element to plaintiffs' price fixing claim.

Plaintiffs maintain that there is an "incorrect statement in the Court's opinion that none of the EMMC members sold at the prices set by the EMMC" which "suggests that the Court

overlooked" the fact "that some of the EMMC members were both distributors and growers." Pls.' Reconsideration Reply (Dkt. No. 689) at 5.  Their citation to the statement in the May 29, 2015 opinion is incomplete – omitting the Court's recognition that agreement among members of the EMMC was to fix "the prices charged by vertically oriented distributors – some of whom are integrated with EMMC members and some of whom are not."  May 26, 2015 Mem. Op. (Dkt. No. 670) at 29.[3]  EMMC members who were integrated grower/distributors effectively agreed to fix their distribution prices through the EMMC agreement.[4]  But plaintiff's citation does not demonstrate that the Court overlooked the integrated nature of some EMMC members, particularly when the Court's statement is read in its entirety.  Moreover, I also clearly explained in my May 26 opinion that "I cannot ignore the presence in the claimed conspiracy of the EMMC-member defendants with integrated growing and distribution operations."  May 26, 2015 Mem. Op. (Dkt. No. 670) at 30.

---

[3] Plaintiffs' reconsideration reply states that "[t]he Court held that the rule of reason should apply because the EMMC involved an agreement 'by the members of the EMMC to fix not the prices which they themselves charged, but rather the prices charged by vertically oriented distributors.'"  Pls.' Reconsideration Reply (Dkt. No. 689) at 4, quoting May 26, 2015 Mem. Op. (Dkt. No. 670) at 29.  Plaintiffs' citation to the Court's opinion lacks an ellipsis to show that language has been omitted from the end of the quoted sentence.  In full, the Court's prior opinion said:  "[b]ut the conspiracy alleged here involves an agreement by the members of the EMMC to fix not the prices which they themselves charged, but rather the prices charged by vertically oriented distributors – some of whom are integrated with EMMC members and some of whom are not."  May 26, 2015 Mem. Op. (Dkt. No. 670) at 29 (emphasis added).  The conspiracy plaintiffs here claim involves an agreement by the members of the EMMC (including grower-only, distributor-only and integrated grower/distributor members of the EMMC) to fix the prices charged by distributors – including prices charged by non-EMMC member distributors.  The EMMC's agreement to fix mushroom prices required cooperation from vertically oriented non-EMMC member distributors.  See May 26, 2015 Mem. Op. (Dkt. No. 670) at 30 (finding that "absent cooperation from the vertically oriented distributors, integrated and not, the EMMC's agreement to fix mushroom distribution prices would be meaningless") (emphasis added).

[4] Plaintiffs' price fixing claim is based on the agreement by members of the EMMC "not to sell or otherwise dispose of mushrooms except as provided under the terms of [the membership] Agreement and the articles of Incorporation and Bylaws of the Cooperative."  May 26, 2015 Mem. Op. (Dkt. No. 670) at 4, citing Dkt. No. 497, Ex. 50 (Executed Membership Agreement for Bella Farms) at 4, ¶ 6.  Each member of the EMMC agreed that it was "one of numerous producers engaged in the production and marketing of mushrooms."  Id. at 1.

Nor do I find that any horizontal elements of the claimed price-fixing conspiracy are sufficient to make the claimed price fixing conspiracy into a naked, horizontal restraint of trade that should be subject to per se liability. By plaintiffs' own argument, not all distributors were members of the EMMC[5] and therefore not all distributors were party to the EMMC's agreement – horizontal or otherwise – which required EMMC members – integrated and not – to follow the fixed distribution prices for fresh agaricus mushrooms. As defendants argue, "[f]or plaintiffs here to be injured, the separate vertical agreements between growers and distributors have to be relevant." Defs.' Reconsideration Reply (Dkt. No. 692) at 7. Nothing that plaintiffs now argue convinces me that it was clear error to conclude that "there are both horizontal and vertical elements in play in the alleged conspiracy in this case . . . ." May 26, 2015 Mem. Op. (Dkt. No. 670) at 26.

Plaintiffs also argue that the decision of the Court of Appeals for the Second Circuit in United States v. Apple, Inc., 791 F.3d 290 (2d Cir. 2015)[6], supports a finding that "the vertical

---

[5] At the February 4, 2015 oral argument, counsel for plaintiffs argued that "_____ . . . is one of these distributors. . . . _____ . . . it was a conspirator to the EMMC. The testimony shows that _____ agreed to sell at the prices that were set by the EMMC . . . ." Rule of Reason Arg. Trans. (Dkt. No. 628) at 94:22-95:3. But, plaintiffs' counsel also said that "[w]e didn't sue _____ , but the conduct of these distributors has always been in these cases." Id. at 94:22-24. In their sur-reply, plaintiffs' explain that "the ten integrated members of the EMMC were themselves distributors and undeniably participated in a horizontal conspiracy among distributors including those who participated in the EMMC through related growers." Pls.' Reconsideration Sur-Reply (Dkt. No. 698) at 2 (emphasis added).

[6] In Apple, an appeal from a decision which followed a three-week bench trial, the plaintiffs claimed "that Apple, in launching the iBookstore, had conspired with the Publisher Defendants to raise prices across the nascent ebook market." 791 F.3d at 296. The Court concluded that it "believe[d] that per se condemnation [was] appropriate" but "assume[d], for the sake of argument, that it [was] appropriate to apply the rule of reason and to analyze the competitive effects of Apple's horizontal agreement with the Publisher Defendants" because it was "mindful of Apple's argument that the nascent ebook industry has some new and unusual features and that the per se rule is not fit for 'business relationships where the economic impact of certain practices is not immediately obvious.'" Id. at 329, quoting Leegin, 551 U.S. at 887. Defendants argue that "the Second Circuit majority did not need to affirm under a rule of reason standard because it had already effectively weighed all rule of reason elements, including pro-

relationships of some EMMC members to distributors does not warrant application of the rule of reason." Pls.' Reconsideration Reply (Dkt. No. 689) at 3. Plaintiffs contend that Apple "directly contradicts the Court's conclusion that a vertical participant in a horizontal price fixing conspiracy exempts the horizontal price fixing conspiracy from the per se rule." Pls.' Reconsideration Sur-Reply (Dkt. No. 698) at 1. I disagree.

First, as the Court in Apple and the dissenting judge both acknowledged, the Second Circuit's decision creates a circuit split with our Court of Appeals. United States v. Apple, Inc., 791 F.3d 290, 325 n.20 (2d Cir. 2015) (acknowledging that, in Toledo Mack, the Third Circuit reached a different conclusion regarding whether plaintiffs can establish a per se violation of the Sherman Act under a hub and spoke theory) (Livingston, J.); id. at 347("[t]he majority's holding in this case therefore creates a circuit split, and puts us on the wrong side of it") (Jacobs, J. dissenting). As the dissent explains,

> In Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc., 530 F.3d 204, 225 (3d Cir. 2008), a manufacturer used its contracts with distributors to facilitate and enforce a horizontal conspiracy (among the distributors) that was itself illegal per se. . . . The Third Circuit held that Leegin's instruction—that the vertical arrangement "would need to be held unlawful under the rule of reason" – prescribed the rule of reason as the proper analysis for whether the vertical conduct violated § 1.

United States v. Apple, Inc., 791 F.3d 290, 346-47 (2d Cir. 2015), citing Toledo Mack, 530 F.3d at 210, 225. The dissenting judge explained that, in contrast, the Second Circuit majority opinion in Apple "insists that a vertical facilitator of a horizontal conspiracy is liable per se even after Leegin." Apple, 791 F.3d at 347.

In rendering my May 26 decision, I considered the Court of Appeals' decision in Toledo Mack. I also considered the Court of Appeals' decision in In re Insurance Brokerage Antitrust

---

competitive benefits under its per se analysis." Defs.' Reconsideration Sur-Reply (Dkt. No. 701) at 2.

Litigation, 618 F.3d 300, 336 (3d Cir. 2010), a decision which the majority opinion in Apple characterized as having "cast doubt on" the decision in Toledo Mack. Apple, 791 F.3d at 325 n.20. I found that "[n]either Toledo Mack nor Insurance Brokerage provide a perfect analogy to the facts" in this litigation. May 26, 2015 Mem. Op. (Dkt. No. 670) at 29. Ultimately I concluded that "[t]he presence of the integrated defendants prevents me from simply bifurcating my consideration of the claimed agreement to fix mushroom distribution prices into horizontal and vertical components with the former being subject to per se liability and the latter subject to consideration under the rule of reason." Id. at 31. Apple does not change my prior conclusion that, on the record now before me and under the law in this Circuit, it is not possible to sufficiently untangle the vertical and horizontal aspects of the defendants' conduct (whether grower-only, distributor-only or integrated) to permit the conclusion that per se liability should govern plaintiffs' price fixing claim. Accordingly, I do not find that it was a clear error of judgment to conclude that the rule of reason is the appropriate rule of decision to apply to plaintiffs' price fixing claim and I will deny plaintiffs' motion for reconsideration.

## II.     Defendants' Motion: Supply Control Claims

As defendants explain in their response to plaintiff's reconsideration motion, "[t]he Minimum Pricing Policy and the Supply Control [Program] were separate and different activities that Plaintiffs alleged in their complaint to have, separately or together, the same anticompetitive purpose or effect." Defs.' Reconsid. Opp'n Mem. (Dkt. No. 682) at 5 n.5. On May 26, 2015, I held that "plaintiffs claim that the supply control program violated Section 1 of the Sherman Act is . . . subject to per se antitrust liability." I found that "the claimed agreement to purchase or lease properties in order to remove them from mushroom production is a straightforward agreement among the members of the EMMC" and concluded that the claimed supply control

agreement "facially appears to be one that would always or almost always tend to restrict competition and decrease output." May 26, 2015 Mem. Op. (Dkt. No. 670) at 35, citing Broad. Music, Inc., 441 U.S. at 19-20.

Defendants contend that reconsideration of my decision is warranted because . . . "it was error to conclude that the EMMC Supply Control Program would always or almost always tend to restrict competition and decrease output." Defs.' Reconsideration Mem. (Dkt. No. 677) at 4. Defendants argue that the agreement underlying plaintiffs' supply control claim is analogous to the agreement in In re Sulfuric Acid Antitrust Litig., 703 F.3d 1004, 1011 (7th Cir. 2012), which, in defendants' words, the Seventh Circuit found to be "a novel agreement that might not lead to a long-term price increase and was arguably pro-competitive" and thus subject to analysis under the rule of reason. Defs.' Reconsideration Mem. at 3-4. Defendants also "submit that the elimination of the handful of dilapidated, disease-prone and unprofitable mushroom farms that had been already closed by virtue of the Money's bankruptcy resulted in efficiencies and increased productivity by all of the remaining competitors in the market for fresh agaricus mushrooms." Defs.' Reconsideration Mem. (Dkt. No. 677) at 8. They contend that "this allowed all producers of this highly perishable agriculture product to increase their production and sales volume and . . . it also had the arguable pro-competitive effect of preventing or forestalling further industry consolidation resulting from additional bankruptcies or farm closures." Id.

Plaintiffs argue that their claim is not analogous to the claim in Sulfuric Acid because,

> [w]hile the challenged agreements in Sulfuric Acid had some
> similarities to classic output restrictions, the Court recognized that
> they had certain "novel" potentially procompetitive features that
> required application of the rule of reason. In particular, the
> agreements could be interpreted as facilitating the entry of a new
> product, which the Canadian Producers were compelled to produce

> because of Canadian regulations. The introduction of this new product into the U.S. was likely to increase competition and lower prices.

Pls.' Opp'n (Dkt. No. 683) at 4. Plaintiffs previously argued that defendants cannot "make any argument that they increased competition from new market entrants like the agreements at issue in Sulfuric Acid." Pls.' Rule of Reason Reply (Dkt. No. 508).

On reconsideration I find that defendants have not shown that the claimed supply control agreement achieved arguable competitive efficiencies which "are the type of pro-competitive conditions that the Third Circuit held can render an industry practice 'substantially different from the classic' horizontal restraints subjected to per se treatment." Behrend v. Comcast Corp., No. 03-6604, 2012 WL 1231794, at *12 (E.D. Pa. Apr. 12, 2012) (concluding that the rule of reason governed plaintiffs' claims because of "the ability of cable companies to provide new and advanced services, achieved through clustering their systems"), quoting Eichorn v. AT & T Corp., 248 F.3d 131, 139 (3d Cir. 2001). Despite their arguments, defendants have not identified how the claimed supply control agreement arguably increased productivity or resulted in efficiencies nor have they shown how, by removing land from mushroom production, other producers were able to increase their production and sales volume. I am not left with the "definite and firm conviction" that my previous decision was mistaken. Johnson, 724 F.3d at 345. Accordingly I will deny defendants' motion.

An appropriate Order follows.