IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE MUSHROOM DIRECT PURCHASER ANTITRUST LITIGATION | : : : : | CIVIL ACTION |
| THIS DOCUMENT RELATES TO: Giorgi Mushroom Co. and Giorgio Foods, Inc. | : : : | Master File No. 06-0620 |

## MEMORANDUM

**Schiller, J.**                                                                                                             **December 17, 2018**

Class Plaintiffs and Defendants Giorgi Mushroom Co. and Giorgio Foods, Inc. (collectively, "Giorgi") have reached a settlement in this complex antitrust litigation. The Class has moved for final approval of the settlement with Giorgi and reimbursement of out-of-pocket litigation expenses. For the reasons that follow, the motion for final approval is granted. However, the Court will leave the issue of out-of-pocket costs for another day.

**I. BACKGROUND**

    **A. Facts**

Class Plaintiffs contend that Giorgi, along with more than twenty other defendants, violated both the Sherman and Clayton Acts. Class Plaintiffs allege that the Eastern Mushroom Marketing Cooperative, Inc. ("EMMC") and its members, including Giorgi, was formed "solely as a front and pretext for a naked price-fixing and anticompetitive supply control scheme." (Revised Consol. Am. Class Action Compl. [Revised Compl.] ¶ 3.) Beginning in 2001, Class Plaintiffs assert that the EMMC and its members conducted a "Supply Control" campaign to reduce competition from non-EMMC mushroom producers. (*Id.* ¶ 6.) Specifically, they allege that the EMMC and its members bought at least five mushroom farms, placed permanent deed restrictions on the farms,

and then resold the properties at a loss. (*Id.* ¶¶ 6–7.) They contend that the EMMC and its members also purchased lease options and placed deed restrictions on other mushroom farms. (*Id.* ¶ 7.) As a result of these deed restrictions, Class Plaintiffs assert that the EMMC and its members reduced the overall land available for mushroom production in the United States. (*Id.* ¶ 8.)

Additionally, Class Plaintiffs allege that the EMMC and its members, including Giorgi, "agreed to set increased minimum prices at which its members and nonmembers would sell fresh mushrooms in six different geographic regions, covering the entire continental United States." (*Id.* ¶ 66.) They contend that, on average, the agreed upon prices were higher than the prices of fresh mushrooms in the geographic regions before the EMMC was formed. (*Id.*)

### B. History of the Litigation

The first class action complaint in this litigation was filed on February 10, 2006. The Court consolidated that complaint with five other class actions asserting similar antitrust violations by the EMMC and appointed lead counsel for the consolidated class action. (Order of June 5, 2006.) Following consolidation, Class Plaintiffs filed a Revised Amended Consolidated Class Action Complaint on November 13, 2007, asserting three separate counts: (1) anticompetitive conspiracy in violation of Section 1 of the Sherman Act; (2) conspiracy to monopolize, monopolization, or attempted monopolization in violation of Section 2 of the Sherman Act; and (3) unlawful acquisition in violation of Section 7 of the Clayton Act. (Revised Compl. ¶¶ 93, 103–104, 109.)

Between 2009 and 2016, the parties engaged in extensive litigation. During that time, the parties filed motions to dismiss, summary judgment motions, motions concerning the applicable antitrust standards, and *Daubert* motions; completed fact and expert discovery; and filed several appeals in the Third Circuit. In 2016, the Court certified the following class:

> All persons and entities in the non-Western United States who purchased fresh
> agaricus mushrooms directly from an Eastern Mushroom Marketing Cooperative

(EMMC) member or one of its co-conspirators or its owned or controlled affiliates, agents, or subsidiaries at any time between February 4, 2001 and August 8, 2005 (the "Class Period"). For group buying organizations and their members, direct purchasers are either: (1) members who have a significant ownership interest in or functional control over their organizations; or (2) if no member has such interest or control, the organizations themselves. The Class excludes the EMMC, its members and their parents, subsidiaries and affiliates.

(Order of Nov. 22, 2016.) Upon certification, the Court appointed Wm. Rosenstein & Sons Co.; Associated Grocers, Inc.; M.L. Robert, II, L.L.C.; and Market Fare, LLC as representative plaintiffs for the Class. (Order of Dec. 5, 2016.)

On January 29, 2018, Class Plaintiffs asked the Court to certify a settlement class; grant preliminary approval of three settlements, including the settlement with Giorgi; and direct Class Plaintiffs to provide notice of the preliminary settlements to class members. (Pls.' Mot. for Prelim. Approval of Settlements, Approval of Form of Notice, and Setting Final Fairness Hr'g [Pls.' Prelim. Mot.] at 1.) Certain non-settling Defendants ("MFN Defendants") objected to a Most Favored Nation ("MFN") provision within the Giorgi settlement. (Certain Defs.' Resp. in Opp'n to Pls.' Mot. for Prelim. Approval at 1.)[1] Following oral argument, the Court granted preliminary approval of the Giorgi settlement and directed Class Plaintiffs to provide notice to members of the Class. (Order of Mar. 14, 2018.)

The Court-appointed claims administrator provided two forms of notice of class certification and settlement: (1) direct mailing sent on April 23, 2018, and (2) publication in the May 2018 edition of the industry trade magazine *Progressive Grocer*. (Pls.' Mem. of Law in Supp. of Mot. for Final Approval of Settlements [Pls.' Br.] at 4.) The notices included information

---

[1] The following Defendants subject to the MFN provision object to the Giorgi settlement: Kaolin Mushroom Farms/South Mill Mushroom Sales; Modern Mushroom Farms; Monterey Mushrooms; Phillips Mushroom Farms; and To-Jo Foods/Brownstone Mushroom Farms. Cardile Mushrooms is also subject to the MFN clause, but it does not join the objection. (Certain Defs.' Resp. in Opp'n to Pls.' Mot. for Preliminary Approval at 1.)

regarding: (1) class certification; (2) settlement terms; (3) procedures and deadlines for opting out of the Class; (4) procedures and deadlines for objecting to the settlement; and (5) the location, date, and time of the Court's final fairness hearing. (*Id.* at 4.) A small number of plaintiffs opted out of the Class: Publix Super Markets, Inc. and Giant Eagle, Inc. opted out of the Class by filing their own individual actions early in the litigation; Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC jointly filed an individual action on December 7, 2015 and then opted out of the Class during the exclusion period following the Court's grant of Class Certification.

No Class members objected to the proposed settlement with Giorgi. However, MFN Defendants renewed their objection to the MFN provision within the settlement. (Notice of Objection of Non-Settling Defs. to the Settlement Agreement Reached with Defs. Giorgi Mushroom Co. and Giorgio Foods, Inc. [MFN Defs.' Obj.])

On September 24, 2018, the Court held a final fairness hearing. The same non-settling MFN Defendants were the sole objectors to appear at the hearing. Because Class Plaintiffs and Giorgi failed to notify the relevant state and federal officials of their proposed class action settlement, *see* 28 U.S.C. § 1715(b), the Court has held its decision on final approval of the Giorgi settlement in abeyance until on or after November 28, 2018. (Order of Sept. 11, 2018.)

**C. Settlement Terms**

The proposed settlement between Giorgi and Class Plaintiffs, entered into on April 27, 2011, defines the "Direct Purchaser Class" as:

> All persons or entities who purchased Agaricus mushrooms directly from an EMMC member or one of its co-conspirators or its owned or controlled affiliates, agents, or subsidiaries at any times during the period January 1, 2001 through December 31, 2008. The term "Agaricus mushrooms" shall mean all varieties and strains of the species Agaricus bisporus, including, among others, both brown and white varieties. The Direct Purchaser Class excludes the EMMC, its members and their parents, subsidiaries and affiliates. The Class also excludes Giant Eagle and Publix Super Markets, Inc. and their parents, subsidiaries and affiliates.

4

(Settlement Agreement ¶ 1.)[2]

In exchange for the Direct Purchaser Class's release of its claims, Giorgi paid $11,500,000 into an escrow account to be distributed to the Class, along with any interest earned. (*Id.* ¶¶ 5–6, 14–15.) The Settlement Agreement provides that any reimbursement or indemnification for the costs of notice, administration of the Settlement Fund, or other expenses for the prosecution of the case that the Court approves shall be made from the Settlement Fund. (*Id.* ¶ 12.) Similarly, any requests for attorneys' fees, costs and expenses, and incentive awards to the named Plaintiffs shall be sought solely from the Settlement Fund. (*Id.* ¶ 13.) Giorgi agrees to take no position on the award of any such reimbursements or payments. (*Id.* ¶¶ 12–13.)

The Settlement Agreement also provides that Giorgi will receive "most favored nation" status for any settlements reached by Class Plaintiffs with the following defendants: Cardile Mushrooms, Kaolin Mushroom Farms/South Mill Mushroom Sales, Modern Mushroom Farms, Monterey Mushrooms, Phillips Mushroom Farms, and Tojo Foods/Brownstone Mushroom Farms. (*Id.* ¶ 21.) Pursuant to this provision, Lead Counsel for the Class and Giorgi will create "a schedule (the 'Schedule') setting forth with respect to Giorgi and each MFN defendant the estimated pounds and/or dollar sales of Agaricus mushrooms to the Direct Purchaser Class from February 1, 2001 to December 31, 2008 (the 'Agreed-to Class Sales for Purposes of MFN')." (*Id.*) The Schedule will also include Giorgi's "Settlement Percentage," defined as "the percentage resulting when the settlement consideration paid by any defendant in settling the Class Action is divided by that defendant's Agreed-to Class Sales for Purposes of MFN." (*Id.*) Should Class Plaintiffs enter into

---

[2] This time period is longer than that identified in the definition of the class already certified in this case. However, as Class Counsel represented at the final fairness hearing, the Giorgi settlement class is the same as the class already certified; the settlement agreement simply provides for a longer release of claims. (Fairness Hr'g Tr. at 4.) Thus, the Court need not again articulate that the requirements of Rule 23 are met for the purposes of this settlement.

5

a settlement agreement with any MFN defendant that "results in that MFN defendant's Settlement Percentage being less than Giorgi's"—or, in the event of a multi-defendant settlement, "the combined MFN defendants' Settlement Percentage being less than Giorgi's Settlement Percentage"—then the Class Plaintiffs "must reduce Giorgi's settlement obligation by an amount . . . sufficient to lower Giorgi's Settlement Percentage so that it is equal to the subsequently settling MFN defendant's Settlement Percentage." (*Id.*) The Settlement Agreement provides a mechanism for the parties to adjust the Schedule and for the Court to intervene if the parties cannot agree to such changes themselves. (*Id.*)

Any settlement agreement with an MFN defendant is subject to the Court making one of three findings, after Lead Counsel for the Class Plaintiffs petitions the Court: (1) the MFN provision has been satisfied; (2) Giorgi has agreed in writing to waive the MFN provision; or (3) an exception to the MFN provision applies. (*Id.* ¶ 22.) The two exceptions to the MFN provisions are that: (1) an MFN defendant is unable to pay the settlement amount based on the Settlement Percentage or (2) "a material adverse change in the legal position of the Direct Purchaser Plaintiffs' case has occurred that materially alters the negotiating position of Direct Purchaser Plaintiffs' counsel." (*Id.*)

## II. DISCUSSION

### A. Settlement

The Federal Rules of Civil Procedure require court approval of any settlement, voluntary dismissal, or compromise of "[t]he claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e). If class members will be bound by a proposed settlement, "the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." *Id.* "[T]he district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. . . . [T]he court

cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). However, class action settlements are favored for their efficient use of judicial resources and may even be entitled to a presumption of fairness when four factors are met: "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

To assess whether a settlement is fair, reasonable, and adequate, courts apply the nine-factor test established in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). The *Girsh* factors include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater settlement; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157.

In the Third Circuit, courts may consider several other factors: (1) the maturity of the underlying substantive issues; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorney's fees are reasonable; and (6) whether the procedure for

processing individual claims under the settlement is fair and reasonable. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

### 1. Presumption of Fairness

The Court finds that the settlement is presumptively fair, because all four factors for the presumption are met. First, the parties engaged in several mediation sessions, which is strong evidence of arm's-length negotiations. *See Gates v. Rohm and Hass Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008) (considering fact that the settlement was produced after "two full days of mediation before an experienced mediator" as evidence that settlement negotiations took place at arm's-length). Second, the settlement was reached after considerable fact and expert discovery, and this motion for final approval comes after extensive litigation, including motions to dismiss, motions for summary judgment, motions regarding the applicable antitrust standard, *Daubert* motions, and class certification. (Pls.' Br. at 6.) Third, counsel for both Class Plaintiffs and Giorgi are experienced in antitrust litigation. (Pls.' Br. at 7; Order of Mar. 14, 2018 at 3.) And, fourth, no members of the Class have objected to the settlement. (Pls.' Br. at 7; Fairness Hr'g Tr., Sept. 24, 2018.)

### 2. Application of Girsh *Factors*

#### a. Complexity, expense, and duration of litigation

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001). In considering this factor, courts recognize that "[a]n antitrust class action is arguably the most complex action to prosecute" as "the legal and factual issues involved are always numerous and uncertain in outcome." *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003).

Plaintiffs assert that further litigation "would mean going to trial," which would require "the presentation of detailed factual evidence and complex economic theory, likely over the course of a multi-week trial." (Pls.' Br. at 8.)

The Court agrees that this factor favors approval of the settlement. While Class Plaintiffs have already spent considerable resources during the last twelve years of this litigation, the additional cost of trial would be high. Indeed, Class Counsel currently estimates the liability phase of the trial alone would take four weeks. (Fairness Hr'g Tr. 49–50.) Trial will require further involvement of Plaintiffs' expert witnesses plus weeks of Class Counsel's time preparing for and conducting the trial. Moreover, the Court has determined that Class Plaintiffs' price-fixing claim will be subject to the rule of reason antitrust standard, which heightens Class Plaintiffs' evidentiary burden on that claim. (Mem. of May 26, 2015.) Since the Defendants have already twice appealed to the Third Circuit, it is also likely that post-trial motions and appeals would follow trial. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."). Given the cost of trial plus the factual and legal complexity of this large antitrust case, involving the application of two different antitrust standards, the Court finds that this factor supports approval of the settlement.

### b. *Reaction of the class to the settlement*

The second *Girsh* factor focuses on class members' support of the settlement. *Prudential*, 148 F.3d at 318. Although courts generally accept that class members' silence indicates agreement with the settlement, "the practical realities of class actions ha[ve] led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *Gen. Motors*, 55 F.3d at 812.

Here, 2,239 potential class members were mailed long form notices, of which 586 remain undeliverable. (Gerstein Decl. of Sept. 7, 2018 at Ex. 1 ¶¶ 8, 12.) Summary notice was also published in the May 2018 issue of a monthly trade magazine for food retailers, *Progressive Grocer*. (*Id.* ¶ 14.) Only one request for exclusion was received by the due date. (*Id.* ¶ 15.) The request asked that Winn-Dixie Stores, Inc., Bi-Lo Holdings, LLC, Southeastern Grocers, LLC, and seven other associated entities and brand names (collectively, "Winn-Dixie") be excluded from the Class litigation and settlement. (*Id.*) Winn-Dixie and Bi-Lo Holdings had previously filed an individual claim in a separate civil action in 2015, which was stayed until these plaintiffs opted out of the Class during the exclusion period. Early in this litigation, two other opt-out plaintiffs, Publix Super Markets, Inc. and Giant Eagle, Inc., filed their own class complaints and ever since, have been prosecuting their individual claims alongside Class Plaintiffs.

Following notice, no class members objected to the proposed settlement with Giorgi. (*Id.* ¶ 16.) Nor did any class members appear at the final fairness hearing to object to the settlement. Rather, the only objectors to the settlement with Giorgi are five of the MFN Defendants: Kaolin Mushrooms Farms/South Mill Mushroom Sales, Modern Mushroom Farms, Monterey Mushrooms, Phillips Mushroom Farms, and Tojo Foods/Brownstone Mushroom Farms. Since Class Plaintiffs' motion for preliminary approval of the Giorgi settlement, the MFN Defendants have vigorously opposed the MFN provision within the Giorgi settlement, as well as the Schedule developed by Giorgi and Class Counsel. Specifically, the MFN Defendants argue that the "MFN provisions [are] void as against public policy, in that [they] frustrate the parties' efforts to reach settlement with the MFN Defendants" or, "alternatively, that the Court should find the MFN provisions unenforceable under either or both of the 'inability to pay' or 'changed circumstances' exemptions set forth in the Giorgi Agreement." (MFN Defs.' Objection at 2.) In response, both the

Class Plaintiffs and Giorgi have argued that (1) the MFN Defendants lack standing to challenge the Giorgi settlement; (2) the MFN provision, which includes two exceptions, is reasonable, enforceable, and does not prevent settlement with the MFN Defendants; and (3) it is inappropriate at this time to find that one of the two exceptions to the MFN provision applies to the MFN Defendants. (Giorgi's Resp. to Certain Non-Settling Defs.' Objection Suppl. at 5–14; Class Pls.' Resp. to Non-Settling Defs.' Objection Suppl. at 3–12.)

Generally, non-settling defendants "lack standing to object to a partial settlement." *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). However, there is an exception "where [non-settling defendants] can demonstrate that they will suffer some formal legal prejudice as a result of the partial settlement." *Id.* For example, a non-settling defendant has standing "to object to a partial settlement which purports to strip it of a legal claim or cause of action," including "an action for indemnity or contribution," or "to invalidate its contract rights." *Id.* That some aspect of a settlement "undercut[s the non-settling defendants] through the loss of some practical or strategic advantage" does not amount to a "formal legal prejudice" and thus, does not confer standing. *See Bhatia v. Piedrahita*, 756 F.3d 211, 219 (2d Cir. 2014).

The MFN Defendants appear to argue that there is prejudice sufficient to confer standing because, if the Court does not find that one of the exceptions to the MFN provisions apply, "most if not all of the MFN Defendants will be forced to undertake the risks and substantial expenses associated with a trial and possible appeals, which will potentially weaken them as competitors or even lead to bankruptcy." (Suppl. to Objection of Non-Settling Defs. at 3–4.) But this does not amount to a "formal legal prejudice." Rather, this "prejudice" is simply the result of the serious antitrust claims brought by Class Plaintiffs. As the Court stated in its preliminary approval of the Giorgi Settlement, "the terms of the Giorgi Agreement may work a hardship upon the MFN

11

defendants' ability to negotiate their own settlements with the class." (Order of Mar. 14, 2018.) But this "strategic disadvantage" does not give the MFN Defendants standing to challenge the Giorgi settlement. *See, e.g.*, *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, Civ. A. No. 08-42, 2013 WL 4525323, at *12 (E.D.N.Y. Aug. 27, 2013) (finding that MFN provisions "do not result in legal prejudice to non-settling . . . defendants" because the provisions' establishment of a settlement ratio "best describes a tactical disadvantage" for the non-settling defendants).[3]

Thus, because the Court finds that the MFN Defendants do not have standing to challenge the Giorgi settlement and no class members themselves have objected, the second *Girsh* factor favors approval of the settlement.

### c. *Stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813.

The Court finds that this factor weighs substantially in favor of approval of the settlement. At the time this settlement agreement was reached in 2011, Class Counsel had already litigated this claim for approximately five years. Substantial factual discovery had been completed as well as significant motion practice. (Pls.' Br. at 12.) The Court had decided that Defendants were not entitled to Capper-Volstead immunity. (*Id.*) Given the length of time that had passed when

---

[3] Even if the MFN Defendants had standing, they have not demonstrated that the MFN provisions in the Giorgi settlement render the settlement unfair or unreasonable to the Class. The MFN provisions do not prohibit the MFN Defendants from settling. Moreover, the Court has the power to determine whether two exceptions to the provisions apply to a particular MFN defendant. While the MFN provision may change Class Plaintiffs' calculus for settling with the remaining MFN Defendants, it does not render the Giorgi settlement unfair to the Class.

Plaintiffs negotiated this settlement, the extent of discovery completed, and the motions litigated, Class Counsel was in a strong position to understand the merits of the case. Thus, this factor supports approval of the settlement.

### d. Risks of establishing liability and damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319. "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *Gen. Motors*, 55 F.3d at 814. In assessing this factor, the court may "give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997).

The Court finds that these two factors support approval of the settlement. While Class Plaintiffs acknowledge that they are continuing to move toward trial with the non-settling Defendants—and thus remain confident in their ability to prove both liability and damages—they also recognize that successfully establishing both liability and damages in a complex antitrust case against seasoned defense counsel is no short order. (Pls.' Br. at 13–16.) The fact that Class Plaintiffs' price-fixing claim is subject to the rule of reason makes their job of establishing liability on that claim even more difficult.

As Class Plaintiffs acknowledge, even assuming they are able to establish Defendants' liability, their award of damages will ultimately depend on a battle of experts. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002) ("Damages would likely be established

at trial through a battle of experts, with each side presenting its figures to the jury and with no guarantee whom the jury would believe."), *aff'd*, 391 F.3d 516 (3d Cir. 2004). While Class Plaintiffs "remain confident that they will be able to show with respect to the remaining Defendants that the explicit price-fixing and supply control conspiracy caused the class to suffer some amount of overcharges," they also note that the Defendants' expert has argued that Class Plaintiffs "were not damaged at all." (Pls.' Br. at 15.) Class Plaintiffs' argument that the fourth and fifth factors favor approval are somewhat undercut by their asserted confidence in prevailing at trial against the non-settling defendants. Nonetheless, given the complexity of this antitrust claim and Class Plaintiffs' heavy reliance on experts to prove their damages, the Court finds that these two factors favor approval of the settlement.

### e. *Risk of maintaining the class action through the trial*

The sixth *Girsh* factor considers the risks of maintaining a class action throughout the litigation. Rule 23 of the Federal Rules of Civil Procedure allows district courts to "decertify or modify a class at any time during the litigation if it proves to be unmanageable." *Prudential*, 148 F.3d at 321. Thus, "[t]here will always be a 'risk' or possibility of decertification." *Id.*

Beyond the invariable risk of decertification, Class Plaintiffs do not point to any specific reasons that it is likely in this case. Thus, the Court agrees with Class Plaintiffs that this factor is neutral with respect to final approval of the settlement.

### f. *Ability of Giorgi to withstand greater judgment*

The seventh *Girsh* factor assesses "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *Cendant*, 264 F.3d at 240. This factor is most important in cases in which the defendant's ability to pay translates into a smaller financial

settlement than would ordinarily be awarded. *Krimes v. JP Morgan Chase Bank, N.A.*, Civ. A. No. 15-5087, 2017 WL 2262998, at *9 (E.D. Pa. May 24, 2017.)

Class Plaintiffs argue that this factor is neutral. They assert that the settlement with Giorgi is fair not because Giorgi "could not withstand a greater judgment" but because they reached a settlement considering "the volume of mushrooms sold [by Giorgi] during the class period, the size of [Giorgi], and the risks of litigation." (Pls. Br. at 17.) The Court agrees. While Giorgi may be able to pay more, this does not affect the fairness of the settlement given all the relevant considerations by Class Plaintiffs. Thus, the Court finds that the seventh *Girsh* factor is neutral.

> g. *Range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation*

The eighth and ninth *Girsh* factors consider "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . compared with the amount of the proposed settlement." *Prudential*, 148 F.3d at 322. Together, these factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Warfarin*, 391 F.3d at 538. "Notably, in conducting the analysis, the court must guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 324 (3d Cir. 2011). In the context of antitrust claims eligible for the award of treble damages, "[r]ecovery of [treble] damages is purely speculative . . . and need not be taken into account when calculating the reasonable range of recovery." *Warfarin*, 212 F.R.D. at 257–58. The Third Circuit more recently affirmed that it "know[s] of no authority that *requires* a district court to assess the fairness of a settlement in light of the potential for trebled damages." *In re Cmty. Bank of N. Va*, 622 F.3d 275, 312 (3d Cir. 2010).

15

Class Plaintiffs' expert economist estimated that the class's aggregate damages were $167.3 million if the Class Plaintiffs were able to prove price fixing alone or price fixing and the supply control violation. (Pls.' Br. at 18.) If Class Plaintiffs were to prove only their supply control claim, Class Plaintiffs' expert economist estimated that damages were $82.5 million. (*Id.*)

The Court finds that the eighth and ninth *Girsh* factors favor approval of the settlement. Giorgi's $11.5 million settlement is approximately 7% of Plaintiffs' expert's estimated damages for both the price fixing and supply control claims and approximately 14% of Plaintiffs' expert's estimated damages for the supply control claim alone. However, the damage estimates provided by Plaintiffs are *aggregate* estimates for all defendants. While Giorgi sold a proportionally large volume of mushrooms to the class during the class period relative to some defendants, other defendants, including some who sold a larger volume of mushrooms than Giorgi, have not yet settled, giving Class Plaintiffs additional opportunities to increase the class's overall recovery. (Pls.' Br. at 18; Gerstein Decl. of Jan. 29, 2018 at Ex. 1.) Given that this settlement does not represent the class's only opportunity for recovery, the substantial monetary benefit that the settlement confers to the class, the likelihood that the class would recover less than its maximum possible damages, and all of the risks of continued litigation, the settlement is within the range of reasonableness.

    3. Prudential *factors*

The Third Circuit has reiterated that the factors "identified in *Prudential* are illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). Here, the applicable *Prudential* factors support approval of the settlement. First, at the time of settlement, extensive discovery and motion practice had been completed, meaning that the "underlying

substantive issues" were "matur[e]" and Class Counsel had a strong "ability to assess the probable outcome of a trial on the merits." *See Prudential*, 148 F.3d at 323. Second, class members were allowed to opt out of and object to the settlement. *Id.* Only four plaintiffs have opted out of the Class and no Class members filed objections to the settlement.

### B. Out-of-pocket Litigation Expenses

"[A]n attorney who creates a common fund through settlement of a class action under Rule 23 may recover all of the costs of litigation, including taxable costs." *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 497 (3d Cir. 2017). Nonetheless, "[a]n award of costs in a common fund case must be subject to the same thorough judicial review as an award of attorneys' fees, because costs, like fees, reduce the recovery of the absent class members." *Id.*

Class Plaintiffs here have asked to recover $3,576,612.82 for out-of-pocket costs incurred in prosecuting all of the defendants in this case. (Gerstein Decl. of Sept. 7, 2018 ¶ 7.) These costs would be deducted from the funds recovered from the Giorgi, Kitchen Pride, and Creekside settlements, for which Class Plaintiffs simultaneously moved for final approval in September 2018. The total value of these funds is $11.875 million, of which Giorgi will have paid $11.5 million. In other words, in costs alone, Class Counsel have petitioned the Court to award more than 31% of the Giorgi, Creekside, and Kitchen Pride settlement funds.

The Court recognizes that Class Counsel has pursued this case with risk of non-payment for many years. However, without knowing the ultimate attorneys' fees, other expenses of claims administration, or total value of recovery to the class, the Court does not believe that it can carry out the required "thorough judicial review" of these requested costs. *See Halley*, 861 F.3d at 497; *Prudential*, 148 F.3d at 333. Thus, the motion to reward costs will be deferred, and the Court will

wait to consider Class Counsel's request for costs along with requests for attorneys' fees and any other expenses that would reduce the overall recovery of absent class members.

## III. CONCLUSION

The Court concludes that the Giorgi settlement is fair, reasonable, and adequate. Thus, the Court grants the motion for final approval of the Giorgi settlement. However, for the reasons provided, the Court will wait to decide Class Counsel's request for costs. An Order will be docketed separately.