```
1                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF PENNSYLVANIA
2
                                        )
3    IN RE:                             )    2:06-CV-00620-BMS
                                        )
4                                       )    Philadelphia, PA
                                        )    February 22, 2019
5    MUSHROOM DIRECT PURCHASER          )    9:59 AM
     ANTITRUST LITIGATION               )
6

7

8
                      TRANSCRIPT OF DISTRICT COURT
9            BEFORE THE HONORABLE BERLE M. SCHILLER
                   UNITED STATES DISTRICT JUDGE
10

11
     APPEARANCES:
12
     For the Plaintiffs:         BARRY L. REFSIN
13                               HANGLEY ARONCHICK SEGAL PUDLIN &
                                 SCHILLER
14                               One Logan Square
                                 27th Floor
15                               Phila, PA 19103-6933

16   For the Plaintiffs:         BRUCE E. GERSTEIN
                                 GARWIN GERSTEIN AND FISHER, L.L.P.
17                               88 Pine Street
                                 10th Floor
18                               New York, NY 10005

19   For the Plaintiffs:         ANDREW WILLIAM KELLY
                                 ODOM & DES ROCHES, L.L.P.
20                               650 Poydras St.
                                 Suite 2020
21                               New Orleans, LA 70130

22   For the Plaintiffs:         ALBERTO RODRIGUEZ
                                 SPERLING & SLATER, P.C.
23                               55 W. Monroe Street
                                 Suite 3200
24                               Chicago, IL 60603

25
```



```
 1    For the Plaintiffs:        MOIRA E. CAIN-MANNIX
                                 MARCUS & SHAPIRA
 2                               One Oxford Centre, 35th Floor
                                 301 Grant Street
 3                               Pittsburgh, PA 15219

 4
      For the Plaintiffs:        PATRICK J. AHERN
 5                               AHERN AND ASSOCIATES, P.C.
                                 8 South Michigan Avenue
 6                               Suite 3600
                                 Chicago, IL 60603
 7

 8
      For the Defendants,        H. LADDIE MONTAGUE, JR.
 9    Group of 15 Defendants:    BERGER & MONTAGUE, P.C.
                                 1818 Market Street
10                               36th Floor
                                 Philadelphia, PA 19103
11
                                 WILLAM A. DESTEFANO
12                               STEVENS & LEE
                                 1818 Market Street
13                               29th Floor
                                 Philadelphia, PA 19103
14

15    For the Defendants,        JAMES RODGERS
      Franklin Farms, Inc.:      DILLWORTH PAXSON
16                               1500 Market Street
                                 Suite 3500
17                               Philadelphia, PA 19102

18
      For the Defendants,        DONNA M. ALBANI
19    M.D. Basciani & Sons,      LAW OFFICES OF DONNA M. ALBANI
      Inc.:                      11 Hampton Lane
20                               Glen Mills, PA 19432

21
      For the Defendants,        BARBARA T. SICALIDES
22    Creekside Mushrooms,       PEPPER HAMILTON, L.L.P.
      Ltd.:                      3000 Two Logan Square
23                               18th & Arch Streets
                                 Philadelphia, PA 19103
24

25
```



```
 1    For the Defendants,        MAXWELL A. H. KOSMAN
      Giorgi Mushroom Company:   PAUL, WEISS, RIFKIND, WHARTON &
 2                               GARRISON, L.L.P.
                                 1285 Avenue of the Americas
 3                               Room 2841
                                 New York, NY 10019-6031
 4
      For the Defendants,        MATTHEW J. BORGER
 5    Mushroom Alliance, Inc.:   KLEHR HARRISON HARVEY BRANZBURG,
                                 L.L.P.
 6                               1835 Market Street
                                 Suite 1400
 7                               Philadelphia, PA 19103

 8    ECR OPERATOR:              ESR: CHRIS CAMPOLI

 9    Proceedings recorded by electronic sound recording.

10                        Amanda G. Stockton
                                eScribers
11                        7227 North 16th Street
                                Suite #207
12                          Phoenix, AZ 85020
                             (973) 406-2250
13

14

15

16

17

18

19

20

21

22

23

24

25
```



Colloquy

```
 1            THE COURT:  This is case In Re: Mushrooms, civil

 2   number 06-620.

 3            Be seated.

 4            I want everyone here, in order, stand up and announce

 5   yourself for the record and who you represent.

 6            MR. BARRY L. REFSIN:  Yes, Your Honor.  Barry Refsin

 7   of Hangley Aronchick Segal Pudlin & Schiller for the Direct

 8   Purchaser Class.

 9            THE COURT:  Is there anyone else from your firm --

10            MR. REFSIN:  Well not --

11            THE COURT:  -- here?

12            MR. REFSIN:  Yes, but not -- I don't think they'll

13   speak.  I have Maureen Lawrence and --

14            THE COURT:  They won't -- no, I don't care.  They

15   going to speak?

16            MR. REFSIN:  No.

17            THE COURT:  Okay.

18            Go ahead, next.

19            MR. BRUCE E. GERSTEIN:  It's Bruce Gerstein, Your

20   Honor, from Garwin Gerstein & Fisher for the Direct Purchaser

21   Class.

22            THE COURT:  Anyone else from your firm here that may

23   speak?

24            MR. GERSTEIN:  Yes, but I don't expect them to be

25   speaking either.
```



Colloquy

1          THE COURT:  Okay.

2          MR. ANDREW WILLIAM KELLY:  Andrew Kelly, Odom & Des

3   Roches, from New Orleans, also for the --

4          THE COURT:  Where?

5          MR. KELLY:  -- Direct Purchaser Class.

6          THE COURT:  Say that again?

7          MR. KELLY:  Andrew Kelly.  Law firm is Odom & Des

8   Roches in New Orleans.

9          THE COURT:  That's what I mean.  You're from New

10  Orleans?

11         MR. KELLY:  Yes, sir.

12         THE COURT:  You came all the way up here?

13         MR. KELLY:  It's a pleasure, every time.

14         THE COURT:  Why don't you bring some oysters with you?

15         All right.  Go ahead.  Who else?

16         MR. ALBERTO RODRIGUEZ:  Alberto Rodriguez --

17         THE COURT:  Don't hide back there.  Come on up.

18         MR. RODRIGUEZ:  My apologies, Your Honor.  Alberto

19  Rodriguez from Sperling & Slater on behalf of Publix

20  Supermarkets, Inc.

21         THE COURT:  Okay.

22         MS. MOIRA E. CAIN-MANNIX:  Moira Cain-Mannix, Your

23  Honor --

24         THE COURT:  What?

25         MS. CAIN-MANNIX:  Moira Cain-Mannix from Marcus &



Colloquy

1    Shapira in Pittsburgh on behalf of Giant Eagle, Inc.

2              THE COURT:  All right.

3              MR. PATRICK J. AHERN:  Your Honor, Patrick Ahern on

4    behalf of the Winn-Dixie plaintiffs.  Patrick Ahern on behalf

5    of the Winn-Dixie.

6              THE COURT:  Winn-Dixie, okay.  We'll have some more to

7    say about that later.

8              Anybody else from the plaintiffs' side?

9              All right, let's do the defendants' side.

10             MR. WILLIAM A. DESTEFANO:  William DeStefano, Stevens

11   & Lee, on behalf of a group of approximately fifteen

12   defendants, which are identified in our pleadings.

13             THE COURT:  Okay.

14             MR. H. LADDIE MONTAGUE:  Laddie Montague from Berger

15   Montague, representing the same defendants, Your Honor.

16             THE COURT:  The same defendants --

17             MR. MONTAGUE:  Same defendants.

18             THE COURT:  -- as DeStefano?

19             MR. MONTAGUE:  Yes.

20             THE COURT:  Okay.

21             No other defendants have lawyers here?

22             MR. JAMES RODGERS:  James Rodgers representing

23   Franklin Mushrooms.

24             MS. DONNA M. ALBANI:  Donna Albani for M.D. Basciani &

25   Sons, Inc.


(973) 406-2250 | operations@escribers.net | www.escribers.net

Colloquy

1              THE COURT:  Okay.

2              MS. BARBARA T. SICALIDES:  Barbara Sicalides of Pepper

3      Hamilton for Creekside Mushrooms.

4              MR. MAXWELL A.H. KOSMAN:  Maxwell Kosman from Paul

5      Weiss for Giorgi Defendants.

6              MATTHEW J. BORGER:  Matt Borger from Klehr Harrison on

7      behalf of the Mushroom Alliance, Your Honor.

8              THE COURT:  Why aren't these defense lawyers moved up

9      front here?  Why you sitting out there?  You're not observers.

10     You're part of this trial, or somewhat depending on what

11     happens.

12             Is there any other lawyer who represents a defendant

13     that hasn't been announced?

14             Okay.  Now all you lawyers who represent defendants,

15     there are other people from your firm that are here.  Am I

16     right?

17             UNIDENTIFIED SPEAKER:  No one else for me, Your Honor.

18             UNIDENTIFIED SPEAKER:  No one else.

19             THE COURT:  And anyone else from your firm going to

20     speak?

21             MR. MONTAGUE:  There are two more from my firm, Your

22     Honor, but they are not going to speak today.

23             THE COURT:  Okay.  All right.  If they're going to

24     speak, I want to know -- I want their name on the record.  If

25     not, they can be happily ensconced where they're sitting.

8

Colloquy

1          Okay.  I appreciated you sending me the material that

2     I asked for.  I want to talk about first the structure of the

3     class trial.

4          It seems as though everyone is in agreement there

5     should be separate trials for the class plaintiffs and the opt-

6     outs, with the class trial to begin on May 20th.  I agree with

7     that, so we will start the class trial on May 20th.

8          We will come back to the structure of the opt-out

9     trial when all three opt-outs will be on the same or separate

10    tracks in a moment.  I haven't decided yet.

11         Regarding the class trial, I have reviewed your

12    competing proposals for the structure of the class trial.  Let

13    me hear the arguments for a single, unphased trial versus

14    phasing of the class trial.

15         MR. REFSIN:  Yes, Your Honor.  Barry Refsin for the

16    Direct Purchaser Class, and we think that the agreement by all

17    the parties to have a class trial first followed by the opt-out

18    separately really controls whether there should be phases.

19    Because the standard in a case -- the standard way to proceed

20    with a trial is to have an unphased case with all issues

21    decided at one time.  You only depart from that standard when

22    there's some reason.

23         And one typical reason for departing from an unphased

24    trial is when you have multiple parties with conflicting

25    positions where the conflicting evidence would confuse the

Colloquy

```
 1   jury.  And once we eliminate the opt-outs from the class trial,

 2   that kind of conflict does not exist, and we believe there

 3   should be a single trial that addresses all the issues.  We

 4   think that's the simplest way to proceed.  We think that it's

 5   the least likely to cause prejudice to any of the parties.

 6   It's going to eliminate any of the arguments about what kind of

 7   evidence belongs in which phase, and it eliminates the

 8   potential for error if evidence related to one phase is

 9   excluded from that phase because all -- the jury will hear all

10   of the issues and will be able to decide all of the issues.

11           Now the defendants say that we should have three

12   phases.  They say --

13           THE COURT:  Wait a minute.  Let the defendants talk

14   for themselves.

15           MR. REFSIN:  Well, I want to address why those are not

16   appropriate --

17           THE COURT:  Oh, okay.

18           MR. REFSIN:  -- appropriate reasons to phase.

19           THE COURT:  You argue both sides, now.

20           MR. REFSIN:  Yeah.  I want to --

21           THE COURT:  Okay.

22           MR. REFSIN:  -- why it would not be appropriate --

23           THE COURT:  All right.

24           MR. REFSIN:  -- to have those phases, if Your Honor

25   wants to hear that --
```



Colloquy

1        THE COURT:  Go ahead.

2        MR. REFSIN:  Like I said, the standard way to do a

3   case is to have all the issues tried to the jury at the same

4   time.  The only way -- the only time that you depart from that

5   is if the defendants -- or if the parties seeking bifurcation

6   can establish that bifurcation would serve judicial economy,

7   that it would avoid inconvenience, and it wouldn't prejudice

8   any of the parties.

9        And phasing in this case, especially with a phase

10   dedicated just to market definition, we think would not --

11   would violate all of those principles.  There's no judicial

12   economy to phase with the market definition first.  That means

13   that we're going to have multiple openings and closings to the

14   jury.  We're probably going to have three of them with three

15   phases the way the defendants propose.  There are going to be

16   witnesses that are going to have to testify multiple times.  In

17   fact, the plaintiffs' expert witness would probably be called

18   three different times in such a trial.  Our expert witness

19   Professor Elhauge would have to testify about market

20   definition, he would testify in liability, and he would testify

21   in damages.

22        Like I said, we're going to have lots of disputes

23   about the kind of evidence that goes in which phase, and Your

24   Honor is going to have to resolve those disputes about what

25   evidence goes in what phase.  That's going to create



Colloquy

1    inconvenience.  I mean, we're going to have to schedule these

2    witnesses to come multiple times.  We're not just going to be

3    able to schedule them to come to trial once.  We're going to

4    have multiple sessions that the jury's going to hear from the

5    same witnesses.

6           But most importantly, and the biggest reason why we

7    shouldn't go down this road of phasing the class trial, is that

8    it's likely to create prejudice by limiting the plaintiffs'

9    evidence that would be offered in each of these phases.  And

10   the way that you can see that most clearly is with respect to

11   the first phase proposed by the defendants.  They say that we

12   should have a first phase that's limited to market definition,

13   and they say we should have that phase because that's relevant

14   to the rule of reason claims that the plaintiffs are pressing.

15          But the issue for our rule of reason claims is not

16   market definition.  The issue in a rule of reason case is that

17   the plaintiffs have to prove market power.  Market power is an

18   economic concept, and it's the power of the defendants to raise

19   prices above the competitive level.

20          Now, you can prove that in a number of different ways,

21   basically in two ways.  You can prove it directly, and when you

22   prove market power directly -- and the Supreme Court -- the

23   Third Circuit and the Supreme Court both have talked about

24   direct proof of market power.  You prove it by showing directly

25   that the conduct of the defendants raised prices above the

Colloquy

1    competitive level, and we intend to do that, and Judge O'Neill

2    in his class certification ruling and in his Daubert ruling

3    said that the plaintiffs can use direct proof of market power.

4             The second way to prove market power is indirectly,

5    and when you prove market power indirectly you prove that the

6    defendants have a dominant share of a relevant market; and

7    that's what the defendants say that we should do in the first

8    phase.  Just limit the evidence to that indirect proof of

9    market power by showing a relevant market and a share of the

10   relevant market.

11            THE COURT:  All right, let's -- anything else you want

12   to say on this?

13            MR. REFSIN:  Yeah, well, I do want to -- I want to say

14   that that would be highly prejudicial to do it that way.

15            THE COURT:  All right, you don't want phasing.  I got

16   it.

17            MR. REFSIN:  We don't want --

18            THE COURT:  I got it.

19            MR. REFSIN:  We don't want phasing.  We think that

20   that first phase would expand the cover of the entire case.

21            THE COURT:  You don't have to --

22            MR. REFSIN:  Okay.

23            THE COURT:  -- I understand your argument.

24            MR. REFSIN:  And I -- well, and I also think that if

25   the reason to do -- to phase that way is that it's going to

Colloquy

1    resolve the case that that's wrong because we have two

2    different claims.  We have some claims that are per se claims,

3    and some claims that are rule of reason.  And that means that

4    phasing is not going to dispose of all of our claims because

5    for the per se claims, the supply control agreement, that's a

6    per se claim where you don't need to prove market power.  So

7    even if the first phase were expanded to cover all of market

8    power, it wouldn't dispose of the claims that we don't have to

9    prove market power for.  So it's not going to shorten the

10   trial; it's going to lengthen the trial, and it's not even

11   going to dispose of all the claims.

12           Now, the defendants say that we also have to show

13   impact in order to maintain our class; common impact among all

14   the class members.  And they say that in order to prove impact

15   we need to establish a relevant market, but that's also not

16   right.

17           THE COURT:  You're arguing whether or not it should be

18   one phase or more than one phase.

19           MR. REFSIN:  Yes.

20           THE COURT:  That's why you're standing up there.

21           MR. REFSIN:  Yes.

22           THE COURT:  So don't make a speech.  You want one

23   phase.  I got it.

24           MR. REFSIN:  I do want one phase --

25           THE COURT:  Well, let me hear from the other side.

Colloquy

1          MR. REFSIN:  All right, and I think it would be

2     prejudicial to have multiple --

3          THE COURT:  I heard you.

4          Go ahead.

5          MR. DESTEFANO:  Morning, Judge Schiller.  We've fully

6     briefed this, so I don't want to repeat a lot of what is in our

7     briefs, but I think what it boils down to is this.  We have --

8     first argument that liability should be tried and then damages.

9     And Mr. Refsin says, well, that's not the usual case -- the

10    usual norm for this jurisdiction, but this is not the usual

11    case.  We're not dealing with the cases that you and I see all

12    the time, a one-week trial, a two-week trial.  A fairly

13    straight forward issue; was the light red, did the guy robbed

14    the bank.  We --

15         THE COURT:  I have a very weak trial.  How's that?

16         MR. DESTEFANO:  Right.  We're dealing with a complex

17    trial with multiple cases, with multiple clients.  And I point

18    to another case that we were involved in last year with Judge

19    Schiller of this Court -- I'm sorry, Judge Pratter of this

20    Court.  A very, very similar case, horizontal supply

21    restraints.  It was called In Re: Eggs --

22         THE COURT:  Eggs.  I know.

23         MR. DESTEFANO:  I know --

24         THE COURT:  I know about the Egg trial.

25         MR. DESTEFANO:  I know you know about the Egg trial.

Colloquy

1   But what Judge Schiller did in that trial --

2               THE COURT:  Judge Pratter.

3               MR. DESTEFANO:  Judge Pratter did in that trial,

4   excuse me, was she did bifurcate the liability including impact

5   and damages, and she did it for some very good reasons.  And

6   those reasons equally apply here, and we think that at minimum

7   the Court ought to follow that lead.

8               THE COURT:  And what's your suggestion then?

9               MR. DESTEFANO:  My suggestion would be -- first

10  suggestion, bifurcate liability and damages, but I do have a

11  second suggestion.  The second suggestion is --

12              THE COURT:  Well, isn't that the first phase,

13  liability, and then you do the damages?

14              MR. DESTEFANO:  Right.  Right.  Right.

15              THE COURT:  Isn't that what he's saying?

16              MR. DESTEFANO:  No, there's another wrinkle here.

17  It's the what I call, what everybody calls the relevant

18  geographic market issue phase.

19              THE COURT:  He didn't say anything about that.  He

20  said one phase.

21              MR. DESTEFANO:  Right, he said one phase --

22              THE COURT:  So I had a case write through liability

23  and then damages.

24              MR. DESTEFANO:  We're saying three phases.

25              THE COURT:  Isn't that what you said?



Colloquy

1          MR. DESTEFANO:  We're saying three phases.

2          MR. REFSIN:  No, Your Honor, I think that we should

3     have one trial --

4          THE COURT:  Yes.

5          MR. REFSIN:  -- with both liability and damages.

6          THE COURT:  Yes.  Okay --

7          MR. REFSIN:  Yes.

8          THE COURT:  -- I thought I heard that.  You're against

9     that.

10          MR. DESTEFANO:  Correct.

11          THE COURT:  Okay.

12          MR. DESTEFANO:  But he also criticized our suggestion

13     that the issue of relevant geographic market be tried initially

14     from the rest of the liability, and we think --

15          THE COURT:  Can't the jury decide all this during the

16     trial?  You have your evidence --

17          MR. DESTEFANO:  They --

18          THE COURT:  -- and you bring it in --

19          MR. DESTEFANO:  They --

20          THE COURT:  -- and when we come and ask the jurors,

21     you have appropriate questions to the jurors, and they'll

22     answer them.

23          MR. DESTEFANO:  But the issue boils down to this.

24     Yes, they can, but if they decide the relevant market issue

25     that Judge O'Neill identified, first it eliminates --



Colloquy

1          THE COURT:  Well, if he already identified it --

2          MR. DESTEFANO:  It eliminates the need --

3          THE COURT:  -- why does it have to be identified

4    again?

5          MR. DESTEFANO:  It does.  It eliminates the need for

6    anything following that.  It's case over --

7          THE COURT:  All right --

8          MR. DESTEFANO:  -- end of case.

9          THE COURT:  -- anyone else?  You want more than one

10   phase; I got you.

11         MR. DESTEFANO:  All right.  Do you understand the

12   reasons why?

13         THE COURT:  Yeah.  I --

14         MR. DESTEFANO:  Okay.

15         THE COURT:  -- read your material --

16         MR. DESTEFANO:  Okay.

17         THE COURT:  -- and I just heard you.

18         MR. DESTEFANO:  Thank you.

19         THE COURT:  Okay?  It's not going to take another

20   thirteen years to get this case over with.

21         UNIDENTIFIED SPEAKER:  We understand that.  Nobody's

22   asking --

23         THE COURT:  It won't even take thirteen months.

24         UNIDENTIFIED SPEAKER:  We're not -- we understand

25   that.



Colloquy

1          THE COURT:  May not take thirteen weeks.

2          UNIDENTIFIED SPEAKER:  Well --

3          THE COURT:  I'll make sure of that.  Okay.  I'm going

4    to issue an omnibus decision on this issue and other issues, so

5    you'll get that shortly after today.

6          Now, pre-trial schedule for class trial and the

7    anticipated motions in limine each other about a -- I told you

8    to talk to each other about a pre-trial schedule and begin to

9    identify specific legal issues you intend to raise with the

10   Court prior to trial.

11         Let me hear you on that.

12         MR. REFSIN:  Your Honor, we did propose a schedule to

13   the defendants, and we've discussed it, and it's a aggressive

14   schedule to get us ready by May 20th.  The defendants have

15   given us some comments.  I think the issue depends on whether

16   we phase the trial or not, whether how that schedule works.

17         THE COURT:  Assuming you don't phase it, what are the

18   issues, the legal issues you need to raise?

19         MR. REFSIN:  I don't think we have any legal issues

20   other than the ones that we'll raise in motions in limine.  I

21   mean, there are evidentiary issues.  I don't think you want to

22   hear about those now, do you?

23         THE COURT:  No, I don't.

24         MR. REFSIN:  So we don't have any particular legal

25   issues to raise other than those that we would raise by motion

Colloquy

1   in limine.

2          THE COURT:  Okay.  And motions in limine, what do you

3   want; do you have any idea what they are yet at this point?

4          MR. REFSIN:  I do have some ideas about what we would

5   file.  You want to hear what they are?

6          THE COURT:  How many ideas do you have?

7          MR. REFSIN:  I think that they're between five and ten

8   issues on motions in limine.

9          THE COURT:  Oh, really?  Good, you'll file them at the

10  right time.  I don't want to hear from them now.  All right?

11         MR. REFSIN:  Okay.

12         MR. DESTEFANO:  Yes, sir, we have been discussing the

13  pre-trial schedule.  I think after today or after when we hear

14  about the trial your omnibus order that you're going to be

15  issuing shortly, we can probably come to a joint agreement and

16  submit that to you as the --

17         THE COURT:  What the legal issues are?

18         MR. DESTEFANO:  No, no.  Well, first I'm in trials --

19  the pre-trial schedule, the phasing of the pre-trial schedule.

20  We can do that shortly after --

21         THE COURT:  You like that word phasing, don't you?

22         MR. DESTEFANO:  I don't mean phasing.  I mean the pre-

23  trial schedule for submitting the joint pre-trial order, the

24  witnesses, the exhibits, et cetera, et cetera, we've been

25  discussing at several times --



20

                           Colloquy

1              THE COURT:  He says he has about eight or ten motions

2     in limine.

3              MR. DESTEFANO:  We may have some ideas but probably

4     the same as his, so we'll wait until --

5              THE COURT:  When are you going to file those motions

6     in limine?

7              MR. REFSIN:  Well, we proposed a day, I mean -- we

8     proposed March -- filing the motions in limine on March 27th is

9     what we proposed in our schedule.

10             THE COURT:  Okay, that's close enough.  All right,

11    you'll file a response to it.

12             MR. DESTEFANO:  Well, we have a --

13             MR. REFSIN:  Yeah.

14             MR. DESTEFANO:  -- we have a slightly different

15    schedule for.  We have the motions in limine on April 12th.

16             THE COURT:  No, that's too long.

17             MR. DESTEFANO:  But --

18             THE COURT:  I want it earlier.

19             MR. DESTEFANO:  You want it earlier?

20             THE COURT:  Yes.

21             MR. DESTEFANO:  Okay.  All right.  We do have one

22    legal issue --

23             THE COURT:  I mean, you've had thirteen years to think

24    about this.

25             MR. DESTEFANO:  True, but --



Colloquy

 1            THE COURT:  Well --

 2            MR. DESTEFANO:  -- but that's not all we've been doing

 3    for the last thirteen years, but and anyway --

 4            THE COURT:  I hope not.  You're a very boring person,

 5    if that were the case.

 6            MR. DESTEFANO:  Your Honor, we do have one legal issue

 7    which we're prepared to file a brief on tomorrow or Monday --

 8            THE COURT:  What is it?

 9            MR. DESTEFANO:  -- I'll know shortly.  That is the

10    issue of the application of the rule of reason or per se rule

11    to the supply control agreement.

12            THE COURT:  That was already ruled on, wasn't it?

13            MR. DESTEFANO:  It is but we have --

14            THE COURT:  I'm not going to relitigate issues that

15    were already decided.  I'm telling you --

16            MR. DESTEFANO:  Well --

17            THE COURT:  -- that right now.

18            MR. DESTEFANO:  -- we're going to file the motion, and

19    then you can take a look at it.  And if you decide to deny it

20    out of hand, then so be it.

21            THE COURT:  It's already the law of this case.  It's

22    done.

23            MR. DESTEFANO:  Well, we think we have some --

24            THE COURT:  Don't waste your time.

25            MR. DESTEFANO:  -- very good reasons why there should

Colloquy

1   be --

2           THE COURT:  Okay, all right.  I hope so.

3           MR. DESTEFANO:  Yeah.

4           THE COURT:  There's always good reasons.  All right.

5           MR. REFSIN:  Your Honor, do you want a response to

6   that motion?  It has been litigated multiple times throughout

7   this case.

8           THE COURT:  I so said it was.

9           MR. REFSIN:  Yeah.

10          THE COURT:  It was litigated.

11          MR. REFSIN:  Right.

12          THE COURT:  I'm not going to relitigate issues in this

13  case.  We're moving on.  We're finally going to get a trial.

14          He's anxious to say something.

15          MR. REFSIN:  Yes.

16          MR. GERSTEIN:  I just wanted to --

17          THE COURT:  Who are you?

18          MR. GERSTEIN:  I'm Bruce Gerstein, Your Honor.

19          THE COURT:  Okay.  Not for me, I know --

20          MR. GERSTEIN:  Just for your edification --

21          THE COURT:  I know who you are, but I want the record

22  to know who you are.

23          MR. GERSTEIN:  Just for your edification, we've been

24  discussing with defendants about stipulations because there are

25  multiple defendants to try to -- basically with common evidence

Colloquy

1    to basically have stipulations as to their type of evidence,

2    and we hope to be successful and present those to you, also.

3    So --

4              THE COURT:  I hope so.

5              MR. GERSTEIN:  So I think that that will streamline

6    the case somewhat --

7              THE COURT:  I want this case to come in smoothly.

8              MR. GERSTEIN:  That's what we're working on --

9              THE COURT:  I don't want to confuse jurors.

10             MR. GERSTEIN:  Well, we recognize that --

11             THE COURT:  The basic allegations are price fixing.

12   Okay.  When jurors hear that, they say, okay, let's listen to

13   what they have to say.

14             MR. GERSTEIN:  That's great.

15             THE COURT:  Don't get them confused with a lot of

16   mumbo jumbo.

17             MR. GERSTEIN:  I just --

18             THE COURT:  I won't let you.

19             MR. GERSTEIN:  I just wanted to make you aware of that

20   we are working on that and cooperatively.

21             THE COURT:  Good.  I want the jurors to come out, get

22   a clear idea of what this case is about; not where the

23   mushrooms grow.  You understand?

24             MR. GERSTEIN:  Got it.

25             THE COURT:  Okay.  So you're going to file motions,



Colloquy

1    and you're going to get them done before March what?

2              MR. REFSIN:   March 27th for motions in limine --

3              THE COURT:   Okay.

4              MR. REFSIN:   -- Your Honor.

5              THE COURT:   And you have a week to respond, all right?

6              MR. DESTEFANO:   I thought we were going to give you a

7    joint proposal for all of these dates but we're doing it now, I

8    mean --

9              THE COURT:   Well, if you make a joint proposal and we

10   can eliminate all this stuff, that's fine.

11             MR. DESTEFANO:   Okay.   Well, we'll still --

12             THE COURT:   I'm always open to that.

13             MR. DESTEFANO:   Well, we'll still work on the joint

14   proposal --

15             THE COURT:   Good.

16             MR. DESTEFANO:   -- to be submitted after the --

17             MR. REFSIN:   And we had proposed that responses to

18   motions in limine would be due on April 17th

19             THE COURT:   Response on April 17th?

20             MR. REFSIN:   That's what we had proposed.   That's the

21   plaintiffs' proposal --

22             THE COURT:   Well, you're filing it when?

23             MR. REFSIN:   March 27 filing and April 17 was

24   response.

25             THE COURT:   April 17th a response?

Colloquy

1          MR. REFSIN:  That's what we proposed.

2          THE COURT:   What is that, two and a half, three

3   weeks?  These aren't new issues.  Come on, these are issues

4   you've had for years.  If you were going to file on April --

5   what is it?

6          MR. GERSTEIN:  March 27th.

7          THE COURT:  March 27th then I want a response by April

8   5th.  All right?  These aren't unique issues.  You've been

9   fighting about them for thirteen years.

10         Okay.

11         MR. GERSTEIN:  Judge, are you going to say anything

12  about the structure of the trial --

13         THE COURT:  I'm getting to that.

14         MR. GERSTEIN:  -- how you hold your days?

15         THE COURT:  I'm getting to that.

16         MR. GERSTEIN:  Okay.

17         THE COURT:  I like to do things in order.  It won't

18  take me thirteen years, believe me.

19         Okay.  I'll issue a pre-trial scheduling order

20  following this status conference dealing with these issues, and

21  the dates, and so forth.

22         Now, trial procedure, that's what you just -- Mr.

23  Gerstein, isn't that what you're talking about?

24         MR. GERSTEIN:  Yes, Your Honor.

25         THE COURT:  Okay.  Here are some of my ground rules.



Colloquy

1    There will be an eight-person jury.  Given the length of the

2    trial, there will also be several alternates; I'm thinking

3    maybe six alternates.  I plan to sit five days a week, from

4    9:30 to 4:30 and an hour break for lunch and ten-minute breaks,

5    one in the morning and one in the afternoon.

6              MR. DESTEFANO:  I'm sorry, Judge, those times again,

7    real quick?

8              THE COURT:  9:30 to 4:30, an hour for lunch, and a

9    ten-minute break, one in the morning and one in the afternoon.

10             MR. DESTEFANO:  Thank you.

11             THE COURT:  Given that the defendants are not all

12    represented by one lawyer, I expect the defense team to

13    coordinate in advance on which lawyer is asking what questions.

14    I don't want repeat questions and repeat testimony.  Same thing

15    with plaintiffs.

16             Everyone understand that?  So coordinate among

17    yourselves.

18             I'm not inclined to have lengthy open arguments.  Do

19    you anticipate having a lengthy opening argument?  Of course,

20    someone doesn't think two hours in lengthy.  I do.  I think

21    twenty minutes is all you need for an opening argument.

22             MR. REFSIN:  We do not intend to have lengthy opening

23    arguments, Your Honor.  We do intend to do an opening.

24             THE COURT:  Of course you do.  I said, I have

25    considered twenty minutes sufficient.  You're just telling the

Colloquy

1    jurors what the case is about.

2            How about you?

3            MR. DESTEFANO:  I think ours would be more than twenty

4    minutes, but significantly less than two hours.

5            THE COURT:  Well, let me tell you something.  It will

6    be twenty minutes.  You just -- it's an opening argument.

7            MR. DESTEFANO:  That --

8            THE COURT:  It's just what you intend to prove or

9    show.

10           MR. DESTEFANO:  With all due respect, Your Honor, we

11   have not just a price fixing claim here.  We have a

12   monopolization claim.  We have a violation of Section 7 of the

13   Clayton Act Claim.  We have a different iterations of the --

14           THE COURT:  So what do you think you need?

15           MR. DESTEFANO:  So we don't have --

16           THE COURT:  How much more --

17           MR. DESTEFANO:  -- did they raise prices, or didn't

18   they raise prices.  We have a lot more than that --

19           THE COURT:  How much more than twenty minutes do you

20   think you need?

21           MR. DESTEFANO:  I'd like to keep it within an hour.

22           THE COURT:  Good.  You have forty-five minutes.  You

23   can have forty-five minutes.  You don't need to take it all.

24           MR. REFSIN:  Thank you.

25           THE COURT:  All right, forty-five minutes, and you



Colloquy

1    divide it up whatever way you want.

2          Now, are there any issues you want to raise with me

3    now that we can talk about.  Maybe you want to file something,

4    and I got the rule on it.

5          MR. DESTEFANO:  Not right now, Your Honor.

6          THE COURT:  Okay.  Well, don't wait till May 20th --

7          MR. DESTEFANO:  Yeah.

8          THE COURT:  -- to do it.  Now --

9          MR. REFSIN:  Your Honor?

10         THE COURT:  Go ahead.

11         MR. REFSIN:  Do you have any particular procedures

12   that you use for jury selection and voir dire; who asks the

13   questions of the --

14         THE COURT:  Here's what I normally do.  Submit the

15   questions you'd like.  Me, I like to conduct the voir dire.

16   This isn't like CP Court where I leave you alone, and you can

17   spend forty days and forty nights and wait for the flood to be

18   over.

19         You submit the questions to me.  I'll decide which

20   questions I want to use.  I have a standard voir dire kind of

21   thing.  Now, when I asked the jurors questions, voir dire

22   questions, and they raise a hand; I call them to the side, and

23   that's when I want the lawyers over there with the particular,

24   prospective juror, so we can follow up on a question that maybe

25   they have an issue with.  And you can ask them in private.

Colloquy

1    That's the way I work on it.

2            If you don't like the prospective juror's answers, the

3    time to object to the juror being seated is then.  If you don't

4    have any objection to that juror for cause, then that juror

5    goes back and is being considered to the jury, and you'll have

6    to use your per emps.

7            Okay, so you're up here with me when the jurors

8    come -- perspective jurors come up.  I ask them certain

9    questions as follow up, and you can ask them questions of

10   follow up to detect any kind of bias or prejudice or anything

11   like that.  Based on those responses, if you don't like their

12   answer, that's the time to object to them being seated.  If you

13   don't, I'm assuming you have no problem with them.  Okay?

14           MR. REFSIN:  And is there any advance notification of

15   the members of the venire before we come that day?

16           THE COURT:  The first time I see their names is when

17   I -- you see the names.

18           MR. REFSIN:  Okay.

19           THE COURT:  That morning.

20           MR. REFSIN:  But they will have filled out the

21   standard questionnaire that --

22           THE COURT:  Oh, yeah.  Yeah, they do it downstairs or

23   before they come in.  I don't know.

24           MR. REFSIN:  Right.

25           MR. GERSTEIN:  Judge, have you decided how many per



Colloquy

 1  emps there are going to be?

 2          THE COURT:  Well, I'm open to discussion on that.

 3  Normally, you have, what, three, four, but since this is a --

 4  what's that?

 5          UNIDENTIFIED SPEAKER:  Both sides usually get three a

 6  piece, but in this case it's --

 7          THE COURT:  Yeah, I said you both --

 8          UNIDENTIFIED SPEAKER:  Well, we have a lot of

 9  defendants.

10          THE COURT:  -- usually get three, but because we have

11  so many counsel, in this case, maybe each side should get five.

12  All right?

13          UNIDENTIFIED SPEAKER:  Sounds reasonable.

14          THE COURT:  You have five.  Now --

15          MR. GERSTEIN:  Judge --

16          THE COURT:  -- the big question.  Go ahead, Mr.

17  Gerstein.

18          MR. GERSTEIN:  One last thing is are you going to be

19  trying this on a clock, a chess clock?

20          THE COURT:  What do you mean, on a clock?

21          MR. GERSTEIN:  Typically, time for both sides where we

22  get -- each side gets a --

23          THE COURT:  To present your case?

24          MR. GERSTEIN:  Right, the entire case.

25          THE COURT:  Well, I was just going to get to my last



Colloquy

1  question which is, how long do you anticipate the trial

2  lasting?

3          MR. GERSTEIN:  Well, our estimate could be something

4  like three weeks per side, but that would be overall.  So if

5  that was on a clock --

6          THE COURT:  Figure a six-week trial?

7          MR. GERSTEIN:  That's what I would --

8          THE COURT:  Is that what you're thinking?

9          MR. GERSTEIN:  That's what we're thinking.

10         THE COURT:  May 20th into before the end of June.  Is

11 that what you're anticipating?

12         MR. GERSTEIN:  Yes, Your Honor.

13         THE COURT:  I don't think you need three weeks a side.

14 You can each have twelve trial days.  That's a little more than

15 two weeks.  All right?

16         MR. GERSTEIN:  Okay.

17         THE COURT:  So that will -- it won't be a six-week --

18 it may be six weeks.  Who knows what could come up?

19         MR. GERSTEIN:  Are you going to be keeping a clock to

20 do this because, obviously, you have -- you overlap between the

21 two cases?  Which is what we've done in the past is have like a

22 chess clock.

23         THE COURT:  What do you mean?

24         MR. GERSTEIN:  Well, for example, if we have a direct,

25 there's a certain amount of time that they have a cross for the



Colloquy

1    same witness.  It comes out of their time if --

2              THE COURT:  You guys can work that out yourself.

3              MR. GERSTEIN:  Okay.

4              THE COURT:  And then let me know how you want to do

5    it.

6              MR. GERSTEIN:  That's fine.

7              THE COURT:  All right.  But we know that we're dealing

8    with twelve trial days.

9              MR. GERSTEIN:  Okay.

10             THE COURT:  Now, I want to talk about the opt-out

11   trials.  Giant Eagle and Publix are ready to proceed to trial

12   after the class trial is complete.  Winn-Dixie is far from that

13   stage.  Winn-Dixie filed its first amended complaint in

14   January, and there are now motions to dismiss pending.  Given

15   the different stage of Winn-Dixie's case, the defendants have

16   asked the Court to stay Winn-Dixie's case until the class and

17   other opt-out trials are completed.  Winn-Dixie has replied,

18   saying that it can be ready for trial alongside the other opt-

19   outs.

20             And yesterday, I received a submission from Creekside,

21   Giorgi Mushroom, and Giorgi Foods requesting that any Winn-

22   Dixie's remaining claims be tried in a separate trial after the

23   trials of the class and the other opt-outs.  I'm not sure how

24   realistic it is that Winn-Dixie can be trial-ready in a matter

25   of months.  And given that Winn-Dixie's claims mirror those of



Colloquy

1    the class, not the other opt-outs, I'm not sure why it would

2    make sense for Winn-Dixie to be part of a trial with Giant

3    Eagle and Publix.

4              Let me hear from all the relevant parties in turn.

5    First, I want to hear from the defendants about why they are

6    asking the Court to stay the Winn-Dixie matter.

7              Anybody?

8              MS. SICALIDES:  Your Honor, may I speak from here

9    because it's --

10             THE COURT:  Sure, you can.

11             MS. SICALIDES:  -- a little complicated to get around.

12             THE COURT:  First you have to state your name and who

13   you represent.

14             MS. SICALIDES:  Barbara Sicalides, Pepper Hamilton, on

15   behalf of Creekside Mushrooms.

16             THE COURT:  Okay.

17             MS. SICALIDES:  And we filed jointly a submission with

18   Paul Weiss on behalf of the Giorgi entities.

19             The Giorgi entities and Creekside settled with the

20   class and with the Giant Eagle and Publix a very long time ago

21   and --

22             THE COURT:  I remember.

23             MS. SICALIDES:  -- ten years or -- well the

24   settlements were recent --

25             THE COURT:  The settlement was recent.  I approved it.



                              Colloquy

1             MS. SICALIDES:  And some of you --

2             THE COURT:  Yes.

3             MS. SICALIDES:  But the actual agreements with the

4    plaintiffs were reached on behalf of, as far as Creekside is

5    concerned, it was ten years ago.  And we have not been

6    participating in the litigation since that time.  So in order

7    to prepare the Winn-Dixie case, we believe that not only that

8    it will take a substantial amount of time, but it's also a very

9    different case because it hasn't defendants in it.

10            THE COURT:  That's what I want to get at.  Why --

11            MS. SICALIDES:  Right.

12            THE COURT:  -- is it different?  You know I say, why

13   is this case so different from all other cases?  You know what,

14   why is Winn-Dixie different from all other defendants?

15            Go ahead.

16            MS. SICALIDES:  Well, it has different defendants in

17   it than the --

18            THE COURT:  There you go.

19            MS. SICALIDES:  -- other cases do.

20            THE COURT:  Okay.

21            MS. SICALIDES:  That's the principle reason.  And some

22   of those defendants are quite differently situated.  For

23   example, Creekside has never sold any mushrooms to Winn-Dixie.

24   Creekside was never a member of the Mushroom -- of the EMMC, et

25   cetera.  So there are different issues and different



Colloquy

 1    defendants, and therefore, we think it would be more

 2    complicated for the jury, and unnecessarily so, given the

 3    status of the Winn-Dixie case.

 4              THE COURT:  All right, let me hear from Winn-Dixie.

 5    What's your answer?

 6              MR. AHERN:  Your Honor, Patrick Ahern on behalf of the

 7    Winn-Dixie plaintiffs.  The core facts and the core legal

 8    issues are exactly the same as the other opt-out case.  And the

 9    fact that there may be some defendants who have settled doesn't

10    mean that they would be necessarily prejudiced or in any way of

11    appearing at a joint opt-out trial.

12              In terms of getting this case ready, we don't intend

13    to invent the -- re-invent the wheel.  We've been trying to get

14    access to the documents that were produced in the class action

15    and the depositions for two years, and we've been stonewalled

16    by the other side.

17              THE COURT:  Well, considering the fact that you waited

18    fifteen years --

19              MR. AHERN:  Your Honor, Your Honor found that our

20    claim was timely, and at that point --

21              THE COURT:  Yeah.

22              MR. AHERN:  -- we stand in the same shoes --

23              THE COURT:  Technically so, yes.

24              MR. AHERN:  Technically so.  And at that point, we

25    stand really in the same shoes as the other opt-out plaintiffs

Colloquy

 1   at this point.

 2          Honestly, we've been trying to get this information

 3   for two years, and we've been stonewalled by the other side.

 4   So for them to claim that it's going to take us too long to get

 5   ready or somehow puts us in a different position --

 6          THE COURT:  Well, I also have all those motions to --

 7          MR. AHERN:  Well, with respect to that, Your Honor --

 8          THE COURT:  -- to dismiss Winn-Dixie.

 9          MR. AHERN:  Right.  Well, with respect to that, Your

10   Honor, what we would suggest is when the briefing is completed

11   on that, we -- within a week after that -- have an oral

12   argument and get them done.  And we can be working on getting

13   the documents and depositions from the defendants during that

14   time.  That's a push of a button.  We can get those documents

15   on Monday -- we can get the depositions on Monday, if Your

16   Honor orders it or if they agree.

17          And in terms, so all we would really need to do to get

18   ready for this case, Your Honor, is to produce our documents

19   and our 30(b)(6) witness and any other individual witness, and

20   that won't take very long, and then to produce an expert report

21   and have that expert be at the post.  That's it.

22          And in terms when the other opt-out case would go to

23   trial, we don't have a sense of what Your Honor's thinking

24   about that, but if that the earliest --

25          THE COURT:  That's Giant Eagle and Publix.



                          Colloquy

 1                MR. AHERN:  Right.  If the earliest that's going to be

 2      is July, we have time to do this.

 3                THE COURT:  I don't think it will be July.

 4                MR. AHERN:  Well -- yeah, I mean, whatever Your

 5      Honor's guidance is on the issue.  If it's later than July,

 6      then we definitely have time to do it.

 7                THE COURT:  Anyone from Giant Eagle, Publix?  Any

 8      comment?

 9                Oh, you didn't have to make the trek all the way up.

10                MS. CAIN-MANNIX:  I'm a soft talker, so Your Honor --

11                THE COURT:  What?

12                MS. CAIN-MANNIX:  I said I'm a soft talker.  I wanted

13      to make sure you heard me.

14                THE COURT:  I'm just kidding.  Don't lose your sense

15      of humor.

16                MS. CAIN-MANNIX:  Sorry.

17                UNIDENTIFIED SPEAKER:  Got to state your name.

18                MS. CAIN-MANNIX:  Yes, my name is Moira Cain-Mannix.

19      I represent Giant Eagle.

20                The primary position of the opt-outs is if the Winn-

21      Dixie case isn't ready, we don't want it dragging our case and

22      delaying our case.  We've been here for thirteen years, and

23      it's time to --

24                THE COURT:  Really, thirteen years?

25                MS. CAIN-MANNIX:  -- have a trial.  Yeah.  We filed



Colloquy

1    shortly after the class filed their complaints.

2            Secondarily, I think Ms. Sicalides makes a good point

3    that if they have different additional defendants in their

4    trial, it does make for a slightly more confusing trial, I

5    think, for the jurors.

6            THE COURT:  There's I mean just three plaintiffs in

7    that case.

8            MS. CAIN-MANNIX:  Right, but we've settled with a

9    handful of defendants, and if those defendants are brought back

10   into the case, it creates an additional layer of complexity.

11           THE COURT:  Well, if you've settled with certain

12   clients, does it make sense then for Winn-Dixie to have a

13   separate trial?

14           MR. AHERN:  It does not because --

15           THE COURT:  Does not?

16           MR. AHERN:  -- if this is a situation where we were in

17   the case and then a few defendants settle out with other

18   parties but didn't settle with us, they'd be going to trial.

19           THE COURT:  Well, if you were in the case, they may

20   have.

21           MR. AHERN:  We've been here for almost three years.

22           THE COURT:  They've been here for what --

23           MR. AHERN:  I understand, Your Honor.

24           THE COURT:  Okay.  Anything else?

25           MS. CAIN-MANNIX:  That's all, Your Honor.



                                    Colloquy

1              THE COURT:  Okay.

2              MS. CAIN-MANNIX:  Thank you.

3              THE COURT:  Thank you.

4              MS. SICALIDES:  Your Honor?

5              THE COURT:  Yes?

6              MS. SICALIDES:  I'm sorry.  May I just briefly respond

7    to Mr. Ahern.

8              THE COURT:  Sure.

9              MS. SICALIDES:  One, I think that he keeps, uses

10   phrases like the core --

11             THE COURT:  It's Ms. Sicalides, right?

12             MS. SICALIDES:  Yes, excuse me --

13             THE COURT:  Okay, I just want to make sure it's on the

14   record.

15             MS. SICALIDES:  -- I'm sorry, Your Honor.  Ms.

16   Sicalides on behalf of Creekside.

17             Mr. Ahern uses phrases like core facts and core legal

18   issues, but that's just simply not true.  Again, you're talking

19   about at least one defendant that was never a member of the

20   EMMC.  You're going to have piercing through the corporate veil

21   issues.  We're going to have separate experts.  We're going to

22   have to have additional witnesses, and as Ms. Mannix -- Cain-

23   Mannix, excuse me, said we do believe that it will create a

24   level of confusion that's unnecessary.

25             THE COURT:  So you think that Winn-Dixie should have



Colloquy

1    its own separate trial?

2              MS. SICALIDES:  I do, Your Honor.

3              THE COURT:  Okay.

4              How do you feel about that, Mr. Ahern?

5              MR. AHERN:  I don't feel good about it.  I think we

6    should be in the same trial.  I think that Your Honor can, I

7    suppose, wait to decide whether or not you want to do that,

8    after you rule on the motions to dismiss.  There will still be

9    time.  We would like to have access to the information I

10   mentioned.

11             THE COURT:  That I understand and that's --

12             MR. AHERN:  But --

13             THE COURT:  I'm going to get to that in a minute.

14             MR. AHERN:  But we would -- but if the trial -- if the

15   Giant Eagle and Publix's trial doesn't look like it's going to

16   occur before, let's say, August, then Your Honor can wait to

17   make the decision after you rule on motions to dismiss.

18             THE COURT:  Now, as to Giant Eagle and Publix, how do

19   your claims differ from one another?

20             MS. CAIN-MANNIX:  I think --

21             THE COURT:  You talk softly.

22             MS. CAIN-MANNIX:  I think Giant Eagle has one

23   additional claim than does Publix.

24             THE COURT:  Same claims, but we got one extra one.

25             MS. CAIN-MANNIX:  Correct.

Colloquy

 1          THE COURT:  Think a jury --

 2          MS. CAIN-MANNIX:  And we have a State law claim, but

 3   it overlaps entirely --

 4          THE COURT:  You think a jury would be able to figure

 5   that out?

 6          MS. CAIN-MANNIX:  I do.

 7          THE COURT:  Okay.  So you don't differ that much.

 8          MS. CAIN-MANNIX:  No.

 9          THE COURT:  Except for the one.  And you represent?

10          MS. CAIN-MANNIX:  Giant Eagle.

11          THE COURT:  All right.  Publix, do you --

12          MR. RODRIGUEZ:  Yes, Your Honor?

13          THE COURT:  -- agree with that?

14          MR. RODRIGUEZ:  I'm sorry?

15          THE COURT:  You agree with that?

16          MR. RODRIGUEZ:  We do, Your Honor.

17          THE COURT:  Okay.  Wow, see?  We're moving ahead here.

18          MR. MONTAGUE:  Your Honor?

19          THE COURT:  What?

20          MR. MONTAGUE:  Laddie Montague.  May I say a word for

21   the defendants?

22          THE COURT:  Which defendants?

23          MR. MONTAGUE:  EMMC and certain of its members.

24          THE COURT:  Oh, okay.

25          MR. MONTAGUE:  We have a problem.  You can only do one



Colloquy

1    dance on one dance floor at a time, and --

2              THE COURT:  Oh.  You have a song in my youth.

3              MR. MONTAGUE:  But seriously, if we have to have -- we

4    have a pretty tight schedule preparing for this trial.  And to

5    have to deal with discovery from Winn-Dixie, answer their

6    questions, get discovery from them and -- it's really

7    interruptive to and disruptive of the trial that we're

8    preparing for and the trial that we're going to be --

9              THE COURT:  It's casus interruptus.  You don't want to

10   start that.  Okay.

11             MR. MONTAGUE:  Exactly.

12             THE COURT:  I understand the argument.  Okay.

13             So we're talking about when we schedule Giant Eagle

14   and Publix's trial.  Let me ask you -- I haven't decided when I

15   would schedule, but I can tell you that it won't be -- it might

16   be after Labor Day.  The question is, how long will that trial

17   last?  What do you anticipate?  I don't need an exact date.

18             MS. CAIN-MANNIX:  I would think it would be about six

19   weeks, Your Honor.

20             THE COURT:  Six weeks?

21             MS. CAIN-MANNIX:  I just want to mention that both

22   counsel for Giant Eagle and Publix are attached in the Eggs

23   case for the opt-out trial on October 28th.

24             THE COURT:  Okay.  It starts October 28th?

25             MS. CAIN-MANNIX:  It does.



Colloquy

1           THE COURT:  Okay.

2           MS. CAIN-MANNIX:  So if we went --

3           THE COURT:  That's good to know.

4           MS. CAIN-MANNIX:  -- after Labor Day, that would be a

5    lot to do.

6           THE COURT:  No, that's good information to know.  All

7    right.

8           MR. AHERN:  Your Honor, we're also in the Eggs case

9    going to trial on October 28th.

10          THE COURT:  Well, there you go.  That solves that

11   problem.  Why don't we just have them all together?

12          MS. CAIN-MANNIX:  We'll have an omelet.

13          THE COURT:  That's right.  If we could look in the egg

14   case.  You know when you go in the back of the store, there's

15   an egg case.  Okay.

16          All right.  Let me ask you a question.  This really is

17   going to be for you, Mr. Ahern, and everybody else.  You want

18   to get a hold of all the discovery that was done.  Are you

19   ready to compensate these parties for the many hours of work

20   they did and time they put in?

21          MR. AHERN:  Your Honor, the defendants produced

22   documents in response to document requests from the plaintiffs.

23   I wouldn't expect to compensate the defendants for just making

24   a --

25          THE COURT:  I'm not --



Colloquy

1              MR. AHERN:  -- copy of them.

2              THE COURT:  Do you anticipate in compensating anybody

3    for the work they've done --

4              MR. AHERN:  If they --

5              THE COURT:  -- that you want now?

6              MR. AHERN:  If the law requires it.

7              THE COURT:  Well, I don't want to say it, but I guess

8    I'm the law, huh?

9              MR. AHERN:  Well, I understand there may be case law

10   that governs this, if the --

11             THE COURT:  Those of you who are old enough to

12   remember Justice McDermott on the Supreme Court of

13   Pennsylvania.  When he was a trial judge, he used to charge the

14   jury, and he'd say, I am the law.  That's the way he would

15   refer to himself.  Well, I want -- I'm not that grandiose.

16             But I want everybody who may be in the case or may not

17   even in the case with Winn-Dixie.  If he wants material that

18   you put in time and effort and generated time to be

19   compensated, you out to think about it because I don't think he

20   should get a free ride.  But that's just me talking.

21             All right.  Are there any other issues anyone wants to

22   raise at this point, because I'm going to issue, as I said, an

23   omnibus order dealing with all these issues.

24             MR. REFSIN:  Your Honor, do you want to see a copy of

25   our proposed schedule, what we sent to the defendants with our

Colloquy

1    dates?  I mean, you've already changed one of them with respect

2    to the responses to motions in limine.

3                THE COURT:  Right.

4                MR. REFSIN:  But we have what we proposed, if it would

5    be useful to Your Honor.

6                THE COURT:  Sure, it would be useful.

7                MR. DESTEFANO:  Well, yeah, we do.  We have a marked

8    up --

9                THE COURT:  A counter proposal?

10               MR. DESTEFANO:  We have a counter proposal, but I

11   thought the whole deal was to try to come to some agreement

12   here and --

13               MR. REFSIN:  And get back.

14               MR. MONTAGUE:   -- and get back to you with the date.

15               THE COURT:  Well, why don't you get to an agreement?

16               MR. DESTEFANO:  Well --

17               MR. REFSIN:  We're willing to discuss it further, too.

18   It depends on when Your Honor is going to set the schedule.  I

19   mean, we'll either --

20               MR. DESTEFANO:  Well, I --

21               MR. REFSIN:  We're willing to share it with the Court

22   now --

23               THE COURT:  I'm going to set the schedule, and there

24   will be some holes in it.  You can fill them in with what you

25   agreed to, otherwise, we'll just go along with what I do.



Colloquy

 1         MR. DESTEFANO:  Well, why don't we do it that way,

 2    the?

 3         MR. REFSIN:  Do you have a date by which you'd want

 4    that schedule?

 5         THE COURT:  The date by which you should submit your

 6    joint schedule?

 7         MR. REFSIN:  That we submit our proposal, yes.

 8         THE COURT:  I'm going to send out an order, and there

 9    will be some general dates, and you can submit a joint

10    stipulation that these are the dates you want, and I'll amend

11    my order.

12         MR. REFSIN:  Okay.

13         MR. DESTEFANO:  Okay.

14         THE COURT:  I don't want to cause a hard time for you

15    guys.  I want you to be able to do what you think you're

16    comfortable doing.

17         MR. REFSIN:  Okay, thank you.

18         THE COURT:  All right.

19         MR. AHERN:  Your Honor, one other thing.  Mr. Montague

20    made the --

21         THE COURT:  You're like Columbo.  One more thing, oh

22    yeah, one more thing.

23         Go ahead.

24         MR. AHERN:  Mr. Montague made a comment about the

25    defendants wanting to have a stay.  Obviously, we oppose that



Colloquy

1    and --

2              THE COURT:  Having to -- what do you oppose?

3              MR. AHERN:  They wanted a stay of our case while

4    they're preparing for trial and going to trial.  Obviously,

5    we've opposed that in our papers, and I just wanted to make

6    sure that that was clear.

7              THE COURT:  Well, there are motions to dismiss that I

8    have to rule on.

9              MR. AHERN:  Right.

10             THE COURT:  Okay.  Is there anything else?  No?  Good.

11             Have a nice weekend, everybody.

12             IN UNISON:  Thank you, Your Honor.

13         (Proceedings concluded at 10:47 o'clock, a.m.)

14

15

16

17

18

19

20

21

22

23

24

25



1                         C E R T I F I C A T I O N

2

3              I, Amanda G. Stockton, court-approved transcriber, do

4      hereby certify the foregoing is a true and correct transcript

5      from the official electronic sound recording of the proceedings

6      in the above-entitled matter.

7

8

9                                               February 26, 2019

10     _____        _____

11     Amanda G. Stockton                      DATE

12

13

14

15

16

17

18

19

20

21

22

23

24

25


(973) 406-2250 | operations@escribers.net | www.escribers.net